## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CHRISTY J. MATHIS, individually, and PAUL J. MATHIS, individually, | CASE NO.: 3:22-cv-47 |
| Plaintiffs, | |
| v. | |
| MOSINEE SCHOOL DISTRICT, a municipality duly incorporated under the laws of the State of Wisconsin; KEVIN J. HERMENING, individually and in his capacity as President of the School Board of the Mosinee School District; DAVID MUÑOZ, individually and in his capacity as Superintendent of Mosinee School District; BRAD GRUBE, individually and in his capacity as Principal of the Mosinee Middle School; CITY OF MOSINEE, WISCONSIN; ERIC J. KRAUSE, individually and in his official capacity as a law enforcement officer with the Mosinee Police Department; KENNETH GRAMS, individually and in his official capacity as Chief of Police for the Mosinee Police Department; ANDREA REEDE & MARK REEDE, parents of minor E.R.; and E.R., a minor child; | **JURY DEMAND** |
| Defendants. | |

## COMPLAINT

**COMES NOW** the Plaintiffs, Christy J. Mathis, and Paul J. Mathis, by and through their undersigned counsel, and for this Complaint and Jury Demand, respectfully states to the Court as follows:

## INTRODUCTION

1.      Plaintiff Christy J. Mathis is a 25-year, tenured employee of the Mosinee School District in Mosinee, Wisconsin, where she has taught art at the Mosinee Middle School.

2.      As a part of her regular duties, Ms. Mathis was tasked with ensuring the safety and well-being of her art students at Mosinee Middle School, working diligently to create an environment free from distractions and interruptions.  From time to time, Ms. Mathis' duty of enforcing student discipline, including the School's cell phone policy, created an adversarial relationship with select students.

3.      In the last decade or more, cell phone technology, and in particular social networking sites on smart phones (i.e., Instagram, Tik Tok, and Snap Chat), have permitted students to not only distract themselves from their own schoolwork, but also to interfere with the ability of their classmates to receive an education.

4.      This civil action is necessary to expose and stop students, and their enablers, from inflicting grievous harm on teachers through false criminal accusations in order to retaliate against teachers, like Ms. Mathis, who seek only to maintain discipline and decorum in the classroom by enforcing the School's cell phone usage policy.

5.      Plaintiff Christy Mathis is the victim of vicious, false, and defamatory statements by E.R., a minor 12-year old child of Mark and Andrea Reede, who falsely accused her of inappropriately and sexually touching her during an art class on March 25, 2021. E.R.'s lies were part of a scheme, with her friends, A.B. and M.M., to express their dislike for, and anger against, Ms. Mathis for enforcing the School's cell phone policy.

6.      E.R.'s false and defamatory accusations about Ms. Mathis were aided and abetted by Defendants Mosinee School Board, School Board President Kevin J. Hermening, Superintendent David Muñoz, Principal Brad Grube, and School Resource Officer Eric J.

Krause, all of whom ignored or suppressed exculpatory evidence and inconsistencies in E.R.'s allegations in order to prosecute the case and terminate Ms. Mathis' employment with the School District. These Defendants perpetrated this malicious prosecution in violation of Ms. Mathis' civil rights and caused a loss of consortium for her husband, Paul J. Mathis.

7.      During the period in question, Defendant Krause was negligently trained and supervised in sexual assault investigations by Defendants Mosinee Police Chief Kenneth Grams and the City of Mosinee, Wisconsin.

8.      E.R.'s defamatory statements, aided by her parents Mark and Andrea Reede, and bolstered by the shoddy investigation and complaint by Defendants, caused Plaintiff Christy Mathis grievous harm to her reputation, emotional health, and professional career.

## JURISDICTION AND VENUE

9.      This court has federal subject matter jurisdiction over the federal civil rights claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, and supplemental jurisdiction over the state law claims arising out of the same case or controversy pursuant to 28 U.S.C. § 1367.

10.     Venue is appropriate in this court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions described herein took place in Marathon County, Wisconsin, which is located in the District Court for the Western District of Wisconsin.

## PARTIES

11.     Plaintiff Christy J. Mathis is an individual residing in Wausau, Marathon County, Wisconsin, at all times material hereto.

12.     Plaintiff Paul J. Mathis is an individual residing in Wausau, Marathon County, Wisconsin, at all times material hereto.

13.     Defendant Mosinee School District ("the District") was at all times material a school district organized and existing under the laws of the State of Wisconsin whose business

address is 146001 State Highway 153, Mosinee, Marathon County, Wisconsin. The District is governed by the Mosinee School Board (hereinafter "Board"), whose members acting in their official capacity constitute the District's final policymakers.

14.     The District is made a Defendant in this action on the ground of its direct liability for violations of Plaintiff Christy Mathis' civil rights and on the ground of its liability as indemnitor under Wis. Stat. § 895.46, to pay any judgment for damages and costs entered against School Board President Kevin J. Hermening, Superintendent David Muñoz, or Principal Brad Grube, for acts done within the scope of their employment while carrying out duties as a public officers or employees of Defendant District.

15.     Defendant, Kevin J. Hermening, is an adult resident of the State of Wisconsin, whose current address is 218404 County Road KK, Mosinee, WI 54455. All actions alleged in this Complaint to have been taken by Defendant Hermening were taken in both his individual capacity and his official capacity as President of the Board.  At all times relevant to this Complaint, Defendant Hermening was acting under color of state law within the meaning of 42 U.S.C. § 1983 and while carrying out his duties as a public officer or employee and within the scope of his employment by Defendant District.

16.     Defendant David Muñoz ("Superintendent Muñoz") was at all times material  a citizen of the United States, a resident of the State of Wisconsin, and the  Superintendent  of the Defendant Mosinee School  District. All actions alleged in this Complaint to have been taken by Defendant Muñoz were taken in both his individual capacity and his official capacity as Superintendent of Defendant District. At all times relevant to this Complaint, Defendant Muñoz was acting under color of state law within the meaning of 42 U.S.C. § 1983 and while carrying out his duties as an employee and within the scope of his employment by Defendant District.

4

17.     Defendant Brad Grube ("Principal Grube") was at all times material a citizen of the United States, a resident of the State of Wisconsin, Principal of the Mosinee Middle School, and Plaintiff Christy J. Mathis' direct supervisor. All actions alleged in this Complaint to have been taken by Principal Grube were taken in both his individual capacity and his official capacity as Principal of the Mosinee Middle School.  At all times relevant to this Complaint, Principal Grube was acting under color of state law within the meaning of 42 U.S.C. § 1983 and while carrying out his duties as an employee and within the scope of his employment by Defendant District.

18.     Defendant City of Mosinee, Wisconsin (hereinafter "Defendant City") is  a municipal corporation organized and authorized to operate under the laws of Wisconsin and is located at 225 Main Street, Marathon County, Mosinee, Wisconsin. Defendant City is responsible for maintaining and operating the Mosinee Police Department.

19.     Defendant Eric J. Krause is an adult resident of the State of Wisconsin, whose current address is 141322 Lenz Lane, Mosinee, WI 54455. At all times relevant to the events complained of herein, Officer Krause was employed as a Mosinee Police Officer by the City of Mosinee, Wisconsin, and acting as a School Resource Officer for the Mosinee Middle School in the Mosinee School District. All actions alleged in this Complaint to have been taken by Defendant Krause were taken in both his individual capacity and his official capacity as a Mosinee Police Officer.  At all times relevant to this Complaint, Defendant Krause was acting under color of state law within the meaning of 42 U.S.C. § 1983 and while carrying out his duties as a public officer or employee and within the scope of his employment by Defendant City.

20.     Defendant Kenneth Grams is an adult resident of the State of Wisconsin and at all times relevant to the events complained of herein, was employed as the Chief of Police for

5

the Mosinee Police Department in Mosinee, Wisconsin, and supervisor of Defendant Krause. All actions alleged in this Complaint to have been taken by Defendant Grams were taken in both his individual capacity and his official capacity as Police Chief of the Mosinee Police Department.  At all times relevant to this Complaint, Defendant Grams was acting under color of state law within the meaning of 42 U.S.C. § 1983 and while carrying out his duties as a public officer or employee and within the scope of his employment by Defendant City.

21.     Defendants Andrea and Mark Reede, parents of minor E.R., are adult residents of the State of Wisconsin, whose current address is 2022 Circle Drive, Kronenwetter, WI 54455.

22.     Defendant E.R., a minor child, is a resident of the State of Wisconsin, and at all times relevant to the events complained of herein, a Mosinee Middle School student, who was enrolled in Plaintiff Christy Mathis' art class during third hour in the spring of 2021.

## FACTUAL BACKGROUND

23.     Plaintiff Christy J. Mathis is the mother of two daughters and has been the wife of Plaintiff Paul J. Mathis for over twenty-five years.

24.     Ms. Mathis had been a middle school art teacher for twenty-five years, from August 13, 1996 through July 12, 202, at the Mosinee Middle School in Mosinee, Wisconsin.

25.     Over the course of her teaching career, Ms. Mathis performed her job competently and had never been disciplined for engaging in any type of inappropriate physical or sexual contact with students.

26.     On March 25, 2021, one of Ms. Mathis's former 7th grade art students, E.R., falsely accused Ms. Mathis of inappropriately touching her on her back and buttocks in her art classroom with thirty other students present during third hour class.

6

27.     E.R. and her close friends, A.B. and M.M., very much disliked Ms. Mathis because she strictly enforced a class cell phone policy.

28.     Ms. Mathis frequently chastised E.R. for her inappropriate use of her cell phone in Ms. Mathis' class and took her phone away previously and addressed classroom cell phone usage with her.

29.     On March 25, 2021, during third-hour art class, Ms. Mathis was walking around tables about ten to fifteen minutes into the class period. She noticed E.R. looking down at her lap. She had both hands in her lap, so Ms. Mathis suspected she was on her cell phone.

30.     Ms. Mathis walked up behind E.R., placed her left hand on E.R.'s right shoulder and looked over her shoulder and at E.R.'s lap. Ms. Mathis asked if E.R. was on her cell phone and E.R. stated, "Yes, I was just finishing up a text to my mom."

31.     Ms. Mathis told E.R. to put the phone away and that E.R. should be working on her art. E.R. did not immediately put the cell phone away, so Ms. Mathis reached over E.R. with her right hand and asked for the cell phone.

32.     Ms. Mathis does not remember if she kept her left hand on E.R.'s shoulder, Ms. Mathis was focused on taking the phone. E.R. gave the phone to Ms. Mathis, and Ms. Mathis placed it up at the top edge of the table.

33.     E.R. then stated she wanted to put the cell phone away, so E.R. started reaching for it and while she was reaching for the cell phone, E.R. partially stood up off of her stool. Ms. Mathis then told E.R. that it was ok to either leave the cell phone on the table or in E.R.'s pocket, but that E.R. should not take the cell phone out during class anymore. Ms. Mathis said she would take it away to the principal's office, and E.R. started to sit back down.

34.     Ms. Mathis ended the interaction with E.R. at that point by telling E.R. to keep the cell phone put away. E.R. seemed annoyed with Ms. Mathis and E.R. said, "Okay, I will!"

7

35.    At no point during this interaction, or any other time during this class period, did Ms. Mathis inappropriately touch E.R or grab, squeeze, or slap E.R.'s buttocks, as E.R. alleges. Rather, Ms. Mathis merely attempted to take away E.R.'s cell phone from her.

36.    It never crossed Ms. Mathis' mind that this incident was source of the allegations against her until she later understood that it was E.R. that filed the complaint against her some two weeks later.

37.    E.R. and her close friends, M.M. and A.B., reported the alleged incident after third hour class on March 25, 2021, to Mosinee Middle School Assistant Principal Paul Rheinschmidt, who took their statements and then brought the allegations to the attention of Principal Grube.

38.    Before discussing the incident with Ms. Mathis, Principal Grube investigated the complaint by interviewing students who claimed to be witnesses and then interviewed other students who were in art class during that same class period.

39.    Principal Grube's interviews occurred on March 25, 2021, March 26, 2021, and April 5, 2021, and students interviewed filled out written statements. Ms. Mathis was never provided with those student statements.

40.    Principal Grube first reported the incident to Officer Krause on March 25, 2021 and was told by Officer Krause to circle back with him when Principal Grube completed his investigation. Principal Grube reported the results of this investigation to Officer Krause on the morning of April 5, 2021, saying that he felt (even though not an attorney or police officer) that there may be a violation of the law.

41.    In the early afternoon of March 25, 2021, Ms. Mathis received a phone call from Principal Grube. Principal Grube asked Ms. Mathis to stop down at his office after class. Dan

Lesniak, the Mosinee Middle School teacher union president, accompanied Ms. Mathis to the meeting.

42.     When Ms. Mathis and Mr. Lesniak entered Principal Grube's office, Principal Grube was sitting at his desk and Karla Michanowicz, Mosinee Middle School Human Resources Director, was also sitting in the office. Principal Grube told Ms. Mathis that she was being sent home due to a student complaint, and Ms. Mathis would be out as well on Friday, March 26, 2021.

43.     Principal Grube refused to give Ms. Mathis any information or details about the student complaint and therefore, Ms. Mathis did not understand the nature of the complaint.

44.     Basic notions of due process require, at a minimum, that an accused person be given notice of the accusations against them and be given the opportunity to respond. Ms. Mathis was given neither notice nor the opportunity to respond in violation of her due process rights.

45.     On March 26, 2021, Ms. Mathis received a call from Principal Grube, telling her to come to school at 3:30 p.m., and that the student complaint concerned an accusation of an inappropriate touch.

46.     Ms. Mathis attended this second meeting with Principal Grube and Ms. Michanowicz, again accompanied by Mr. Lesniak.

47.     Principal Grube explained the inappropriate touch accusation. He said there were two complaints: one was that Ms. Mathis had placed her hands on a student's shoulders, and one that she had touched a student's back and buttocks. Ms. Mathis asked if it was one person, and Principal Grube replied that it was two different complaints.

48.     Principal Grube gave no indication if the students were male or female, or any other indication as to where or when in the classroom the alleged incident had occurred, but

Principal Grube did say it allegedly occurred in the seventh-grade, third-hour class on March 25, 2021.

49.     At this same March 26th meeting, Principal Grube told Ms. Mathis that the interviews with the students making the accusations against her occurred on Thursday, March 25 and Friday, March 26, and that the interviews would finish up on Monday, April 5th, after Spring Break when students returned for school.  Principal Grube again did not share any other information concerning these student interviews with Ms. Mathis.

50.     At this same meeting, Mr. Lesniak questioned Principal Grube about letting the accusers and student witnesses talk over their stories with each other during Spring Break to make sure that their stories lined up. Mr. Lesniak explained to Principal Grube that it was not fair to Ms. Mathis to allow that much time to elapse between taking statements from students. Principal Grube stated that he could not control what the students talked about outside of his office.

51.     Principal Grube asked Ms. Mathis on March 26, 2021 to write a statement regarding what may have occurred in her classroom that could have been construed as an inappropriate touch.

52.     At this time, Ms. Mathis could not think of any incident that would be remotely deemed as an inappropriate touch.

53.     Mosinee Middle School's Spring Break ran from Saturday, March 27, 2021 through Sunday, April 4, 2021.

54.     On March 27, Mr. Lesniak discussed with Ms. Mathis the *Garrity* document, which required Ms. Mathis to cooperate with the school's investigation as long as nothing she said could be used against her in a future criminal proceeding.

55.     On Tuesday, March 30, 2021, Ms. Michanowicz sent an email to Ms. Mathis and Mr. Lesniak with the *Garrity* document signed by Principal Grube attached.  Ms. Mathis had until the end of the day on Monday, April 5, 2021, to finish her statement about the student allegations even though she still did not know which students had filed the complaints and did not know the nature of the alleged incident.

56.     On Tuesday, March 30, 2021, Principal Grube told Ms. Mathis that the Middle School was extending her paid leave until Wednesday, April 7, 2021.

57.     On Friday, April 2, 2021, Ms. Mathis submitted her *Garrity* statement to Principal Grube, which stated that she could not recall anything that would be remotely deemed as inappropriately touching a student.

58.     At approximately 12:45 p.m. on Monday, April 5, 2021, two police cars parked outside of Ms. Mathis' house. Ms. Mathis was arrested by Officer Krause, who was accompanied by a Marathon County Deputy Sheriff.

59.     Ms. Mathis was charged with 1st Degree Child Sexual Assault – Sexual Contact with a Child Under 13.

60.     During her arrest, Officer Krause told Plaintiff Paul Mathis, by telephone, that the student interviews were all completed before Spring Break. They were not, as additional students were interviewed on April 5, 2021.

61.     During the ride in the police car to the police station, Ms. Mathis asked Officer Krause if she would ever find out the identity of her accuser, as she still did not know.

62.     Once at the police station, Office Krause summarized the complaint against Ms. Mathis, saying it was a 12-year-old girl and that the female student claimed that Ms. Mathis had placed her hand on her back and slid it down and slapped and squeezed her butt.

11

63.     Ms. Mathis asked if it was a single accuser because she was told by Principal Grube during the March 25, 2021 school meeting that there were two complaints. Officer Krause stated it was just one complaint.

64.     Because Ms. Mathis still did not know who had made the accusation and did not recall any such inappropriate or sexual touching occurring, she asked Office Krause for the accuser's name.  Officer Krause told Ms. Mathis that E.R. made the allegation. This was the first time that Ms. Mathis discovered the identity of her accuser, eleven (11) days after the alleged incident and without being given an opportunity to tell her side of the story.

65.     Once Ms. Mathis understood E.R. made the allegation against her, Ms. Mathis recalled that she had an encounter with E.R. during art class on March 25, 2021, involving the use of E.R.'s cell phone.

66.     On Tuesday, April 6, 2021, Ms. Mathis had a bond hearing, and she heard the formal details of the allegations against her. Mr. Mathis then posted bail and she was permitted to go home.

67.     Prior to bringing the charges, the investigations conducted by the Mosinee Police Department and Mosinee Middle School, through Principal Grube and Officer Krause, was deficient in numerous ways.

68.     Officer Krause filed his initial Incident/Investigation Report into the allegations by E.R. against Ms. Mathis on April 5, 2021. In this report, Officer Krause writes that E.R. told him that, "she witnessed [Ms.] Mathis walk to another table and touch another female student's butt. She stated she saw the end of the touch, when [Ms.] Mathis removed her hand from the butt area." The other student's name is redacted.

69.     In the same Incident Report, Officer Krause interviewed eight other students and received twenty-nine student statements, including from one unidentified student who stated

that, "she was touched on the back but felt that it may have been an accident and the touch was not inappropriate in nature. She did advise that she has witnessed [Ms.] Mathis touch other students in the shoulders or back area, but hasn't witnessed any inappropriate touching of students."

70.     Yet another unidentified student in the Incident Report stated that "it appeared to be just a slide down the back and a slide down the butt area, she was unsure if it was grabbed, but did confirm it was touched. [Redacted] also stated that Mathis has touched her in the back area, but hasn't touched her inappropriately."

71.     In all, besides two of E.R.'s close friends, M.M. and A.B., though a number of students witnessed Ms. Mathis touch E.R.'s back or buttocks, no one else stated that they had seen Ms. Mathis grab, squeeze, slap, or pinch E.R.'s buttock.

72.     Officer Krause did not ask for Ms. Mathis' side of the story prior to arresting her at her home on April 5, 2021.

73.     While she was being arrested, Ms. Mathis told Officer Krause that "she didn't do anything."  During this time, Ms. Mathis also stated to Officer Krause that "she thought hard and long and couldn't think of anything that might have happened including accidentally." Ms. Mathis also denied that she had ever touched a student inappropriately or in a private area.

74.     On April 6, 2021, Officer Krause filed his first Case Supplemental Report after a number of students came to speak to him in his office at the Middle School about E.R.'s allegations against Ms. Mathis.

75.     Two unidentified students, believed to be E.R.'s close friends M.M. and A.B., stated that Ms. "Mathis was a person and felt bad because this was her life, her job and they felt this was going too far and they felt overwhelmed about the entire situation."

76.     Rather than considering the possibility that these two students wanted to recant their allegations against Ms. Mathis, Officer Krause told them that, "it can be hard to stand up for what's right," essentially prejudging Ms. Mathis' guilt.

77.     On April 7, 2021, Officer Krause filed his second Case Supplemental Report based on two emails he received from a female student informant, either M.K. or R.Z., on April 6, 2021, calling into serious doubt E.R.'s allegations made against Ms. Mathis.

78.     Specifically, the first email stated that "a group of students were lying about the whole thing with Mathis. The email stated they disliked her and wanted her kicked out of the school. The email also stated they were planning on doing this to other teachers." (April 6, 2021, 1:06 p.m., Email from redacted student to Officer Krause, attached hereto as Exhibit A)

79.     The second email, a few minutes later, from the same student to Officer Krause specifically put him on notice about the cell phone issue: "Another thing is that [Ms. Mathis] may have taken [E.R., M.M, and A.B.'s] phones from their back pocket but she never actually touched them."  Ms. Mathis, in fact, never took a cell phone from a student's back pocket.

80.     Officer Krause and Principal Grube then interviewed the student, either M.K. or R.Z., in Officer Krause's school office and the student told them that "on 3/26/21, the entire 7th grade class was down at River Park across from the school," and that, "[w]hile together in the group, . . . the girls started to talk about the Mathis incident and thought she got fired or was going to get fired and . . . they seemed happy about it because they don't like her. During that conversation, [redacted] stated they spoke about Mr. Xiong another Middle School teacher and wanting to get him removed next because people didn't like him."

81.     Rather than take these allegations seriously, Office Krause inexplicably discounted the informant's story and attempted to explain away her statements, speculating that

14

"it was possible that [E.R. and her friends] were excited because they no longer had to deal with Mathis because of what she did."

82.     Office Krause continued by trying to sway the informant by telling her that "some people react different when they are dealing with emotions and might seem odd to others as everyone is different."  Officer Krause then asked the informant if this was possible, and all the informant said was "maybe."

83.     Officer Krause, without support, wrote in his Supplemental Case Report that M.K. or R.Z. "had no valid information that would suggest anyone falsely creating this complaint and was trying to get Mathis into trouble by creating a false police report. She only expressed emotions and nothing of evidence that would prove anything was falsely reported."

84.     Similarly, a separate, second student told Officer Krause that she overheard E.R. say that it was all just a joke, and that she was kidding. Officer Krause dismissed this testimony too, saying it was just "hearsay," and concluding that the student "was unable to show any proof of wrong doing [sic] from anyone personally involved in this case."

85.     Officer Krause heard from yet a third informant, either M.K. or R.Z., who also emailed him about hearing that "a group of students were lying . . . . [T]hey disliked [Ms. Mathis] and wanted her kicked out of the school." Significantly, this informant corroborated the other informant's statement, writing that "others were making up stories and lies about the incident with Mathis. . . . they never really liked Mathis."

86.     This third informant also corroborated E.R.'s cell phone issues, stating, "[E.R., M.M., and A.B.] are trying to make everybody believe that Mrs. Mathis did all of this sexual stuff when she really didn't[,] maybe she might have taken their phones but that's it." (April 7, 2021, Email from redacted student to Officer Krause, attached hereto as Exhibit C)

87.     Rather than follow-up with E.R., M.M., or A.B., or any other students, about these cell phone issues, Officer Krause instead aggressively discounted and ignored this relevant exculpatory information, concluding generically that "just because it never happened to her, doesn't mean it can't happen to someone else," and "just because someone makes comments about someone, doesn't mean that they planned on making lies to affect their lives."

88.     In a number of later Case Supplement Reports filed on April 12, 2021, recognizing the weakness of his case against Ms. Mathis, Officer Krause did a series of second interviews with the original witnesses, including M.M. and A.B., E.R.'s close friends who supported her accusations.

89.     Officer Krause's re-questioning of all the students was slanted, biased, and again ignored the single most important issue brought up by the informants: E.R.'s use of her cell phone during class.

90.     Officer Krause also characterized the alleged touching as "groping" without the interviewed students using such terms and accepted statements from E.R.'s friends and other witnesses as always being "100% truthful."

91.     Many of these second interview reports by Officer Krause used verbatim language (i.e., he cut and paste from report to report), showing that not only did Officer Krause ask the same questions, and not only did he not ask about cell phone usage in Ms. Mathis' class, but he came to the same predetermined conclusions concerning the veracity of the statements by E.R. and her friends in a predetermined, biased manner.

92.     Transparently, Officer Krause was trying to justify his arrest and criminal complaint against Ms. Mathis after the fact, even though there was serious and substantial evidence that E.R. and her friends had made the whole incident up about Ms. Mathis because of Ms. Mathis' strict classroom cell phone policy.

16

93.     To further support his charges against Ms. Mathis, Office Krause attended an interview of E.R. on April 16, 2021, by Alicia Resch of the Child Advocacy Center of North-Central Wisconsin.

94.     In re-telling the events of March 25, 2021, E.R. did not mention on April 16, 2021, the cell phone incident, but stated that the inappropriate touching occurred at the end of the third hour class.

95.     On April 20, 2021, Officer Krause filed another Case Supplemental Report, attaching his summary of the Child Advocacy interview of E.R. on April 16, 2021.

96.     On April 23, 2021, Office Krause filed a Criminal Complaint against Ms. Mathis, *State of Wisconsin v. Christy J. Mathis*, DA Case No.: 2021MA001240 (Marathon Cty Cir. Ct.), charging Ms. Mathis with 1st Degree Child Sexual Assault – Sexual Contact with a Child Under 13.

97.     Prior to bringing the charges, the Mosinee Police Department and Mosinee School District, through their officers and agents, failed to conduct a proper investigation, specifically:

   a.   Principal Grube failed to provide notice to Ms. Mathis about the nature of the allegations and give her a chance to respond to E.R.'s allegations prior to suspending her from her teaching duties on March 25, 2021;

   b.   Principal Grube and Officer Krause failed to give Ms. Mathis notice of, or an opportunity to respond to, the student interviews and statements prior to her arrest on April 5, 2021;

   c.   Officer Krause ignored relevant exculpatory evidence from at least three student informants, indicating that E.R. and her friends, M.M. and A.B., had lied about the inappropriate touching allegations to retaliate against Ms. Mathis for strictly enforcing a classroom cell-phone policy;

   d.   Office Krause failed to ask E.R., her friends, or any other students about the role that cell phone usage by E.R. played in her allegations;

17

e.  No investigation was conducted to review E.R.'s past misconduct and poor behavior in Ms. Mathis' classroom and whether it was related to these inappropriate touching allegations;

f.  No investigation was conducted to discover the nature of E.R.'s relationship with her friends, M.M. and A.B., and the possible motives they had for fabricating the allegations against Ms. Mathis;

g.  Officer Krause never asked M.M. or A.B., or any students, during what part of the art class the incident allegedly occurred; and

h.  Officer Krause and Principal Grube never asked why the second student complaint against Ms. Mathis had been dropped even though E.R. claimed she saw Ms. Mathis touch another female student's buttocks.

98.  The Mosinee Police Department and Police Chief Ken Grams failed to properly train and supervise Officer Krause in investigating sexual assault cases prior to having Officer Krause investigate the allegations against Ms. Mathis.

99.  Officer Krause was not qualified to partake in the investigation of the Mathis case due to his lack of experience in such matters and the Mosinee Police Department was negligent in its retention and supervision of Officer Krause.

100.  Officer Krause deliberately and intentionally ignored relevant exculpatory information during the Mathis investigation including: (1) E.R., M.M. and A.B.'s dislike for Ms. Mathis; (2) these same girls' desire to have other teachers they dislike fired like Mr. Xiong; (3) their anger over Ms. Mathis' strictly-enforced, classroom cell phone policy; (4) E.R.'s anger over having cell phone previously taken away by Ms. Mathis; and (5) the inconsistency in timing between when Ms. Mathis said the cell phone incident occurred and when E.R. claimed she was inappropriately touched by Ms. Mathis.

101.  Ms. Mathis' preliminary hearing on the criminal charges was scheduled for June 1, 2021, and thereafter, the Court asked the parties to provide written argument on why probable

cause should be found. The State and Ms. Mathis thereafter filed briefs concerning probable cause on June 30, 2021, and July 2, 2021, respectively.

102.    On July 12, 2021, after the Mosinee School Board met to consider Ms. Mathis' continued employment with the District, and before even probable cause had been found against her by the Court, the District terminated Ms. Mathis from her employment for inappropriately touching a student.

103.    Ms. Mathis did not attend the July 12, 2021 School Board meeting both because she was concerned about violating the conditions of her jail bond and because she believed that the School Board had already pre-judged her case based on Principal Grube's and Officer Krause's shoddy investigations into E.R.'s false accusations. Nevertheless, Ms. Mathis did submit a written statement to the School Board members in her defense against these accusations.

104.    On August 9, 2021, Superintendent Muñoz barred Ms. Mathis and her husband from school property without receiving the Superintendent's approval because of Superintendent Muñoz's unfounded and unsupported fears that their presence would cause disruption and aggressive, violent behavior in response to their presence on school grounds.

105.    Superintendent Muñoz, through his actions, laid the groundwork to support Ms. Mathis being ostracized from the Mosinee School District and to tilt public opinion toward believing the allegations against Ms. Mathis.

106.    On August 11, 2021, all charges against Ms. Mathis were dismissed for lack of probable cause during a preliminary hearing before Judge Michael K. Moran of the Marathon County Circuit Court on August 11, 2021, after he reviewed the evidence in the case. The judgment of dismissal and acquittal was entered on August 12, 2021.

107.    Even though Ms. Mathis had been completely exonerated of the criminal charges brought against her based on the exact same evidence provided to the Mosinee School Board by

Officer Krause and Principal Grube, the Mosinee School District refused to reconsider Ms. Mathis' termination, and she remains terminated from her employment because of the shoddy investigation conducted by Principal Grube and Officer Krause into E.R.'s accusations.

108.    Ms. Mathis and her husband, as recently as October 1, 2021, were threatened with trespassing charges by the City of Mosinee if they came onto school property.

109.    The Mosinee School District pursued their investigation of Ms. Mathis for the improper purpose of finding a justification to terminate Ms. Mathis's employment and in an effort to cover-up the Mosinee Police Department's and their own reckless handling of E.R.'s false and defamatory accusations against Ms. Mathis.

## CAUSES OF ACTION

### COUNT I
### CIVIL RIGHTS VIOLATION PURSUANT TO 42 U.S.C § 1983 - VIOLATION OF DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT
(*Against Defendants Grube and Krause in their individual capacities*)

110.    Plaintiffs replead Paragraphs 1-110 as if fully set forth herein.

111.    Defendants Grube and Krause are persons for the purpose of a 42 U.S.C §1983 action for damages.

112.    At all times material hereto, Defendants Grube and Krause's actions and/or omissions were made under the color of authority and law as a school principal or law enforcement officer, respectively.

113.    As a tenured teacher at Mosinee Middle School, Plaintiff Christy Mathis had a protected property interest in her job.

114.    At all times material hereto, Defendants Grube and Krause's actions and/or omissions in failing to properly investigate the allegations against Plaintiff Christy Mathis were performed in a knowing and reckless manner.

20

115.    The Seventh Circuit has recognized that there is a deprivation of due process where the procedures used to investigate charges are rendered a sham as a result of bias.  Levenstein v. Salafsky, 164 F.3d 345, 351–52 (7th Cir.1998).

116.    The exculpatory evidence ignored by Defendants Grube and Krause placed into serious doubt E.R.'s and her friends' accusations about Ms. Mathis and provided evidence that another issue, classroom cell phone, was at play.

117.    Because Defendants Grube and Krause suppressed this favorable evidence, either willfully or inadvertently, Ms. Mathis was significantly prejudiced by their investigatory bias.

118.    Defendant Krause, in dealing with the prosecuting attorney, provided her with misinformation, concealed exculpatory evidence, and otherwise engaged in bad faith conduct that was instrumental in causing the initiation and continuation of the prosecution of Ms. Mathis.

119.    Defendant Krause failed to investigate exculpatory evidence, in violation of the principles set forth in Arizona v. Youngblood, 488 U.S. 51 (1988), California v. Trombetta, 461 U.S. 479 (1984), and Brady v. Maryland, 373 U.S. 83 (1963).

120.    Defendants Grube and Krause demonstrated a deliberate indifference to and/or reckless disregard of Ms. Mathis' civil and constitutional rights by failing to investigate the false allegations against Ms. Mathis by E.R. and her friends prior to, and after, seeking criminal charges through the prosecuting attorney.

121.    Ms. Mathis had a protected property interest in her school employment that was deprived through being terminated from her position without the necessary due process of law based on a fundamentally biased process.

122.    Defendants Grube and Krause's actions were willful, wanton, unlawful, and in gross disregard of Ms. Mathis' civil rights, justifying an award of punitive damages.

123.    As a direct and proximate result of Defendants Grube and Krause's illegal and unjustified conduct, Ms. Mathis suffered the following damages: (1) deprivation of her constitutional rights to due process; (2) humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress; (3) consequential damages; (4) actual and compensatory damages including, but not limited to past, present, and future pain and suffering and medical expenses; and (5) other damages as allowed by law.

## COUNT II
## CIVIL RIGHTS VIOLATION PURSUANT TO 42 U.S.C § 1983 - VIOLATION OF FOURTEENTH AMENDMENT DUE PROCESS AND EQUAL PROTECTION
(*Against Defendants Grams and the City of Mosinee, Wisconsin*)

124.    Plaintiffs replead Paragraphs 1-123 as if fully set forth herein.

125.    Defendants Grams and the City of Mosinee are persons for the purposes of 42 U.S.C §1983 action for damages.

126.    Defendant Grams is a policy-maker and decision-maker for the City of Mosinee and sets custom and policy for the City's Police Department.

127.    The City, through Defendant Grams acting under color of state law, willfully, maliciously, intentionally, or with reckless indifference violated Plaintiff Christy Mathis' Fourteenth Amendment rights of Due Process and Equal Protection while acting under color of state law, including but not limited to her right to defend herself, to be apprised of all the charges against her, to an unobstructed investigation of the charges against her, and to an independent unbiased non-selective investigation and prosecution wherein Defendants Grams and Krause intentionally treated Plaintiff Christy Mathis, a female, differently than male alleged criminal perpetrators with no rational basis for the difference in treatment other than an illegitimate animus against Ms. Mathis.

128.    Defendant City is liable under § 1983 because these actions by Defendants Grams and Krause amounted to a policy or procedure intended to violate Ms. Mathis' constitutional rights.

129.    The acts and/or omissions of Defendants Grams and City of Mosinee, Wisconsin amount to deliberate indifference to the rights and safety of citizens, including Plaintiff Christy Mathis.

130.    Defendants Grams and City of Mosinee, Wisconsin actions were willful, wanton, unlawful, and in gross disregard of Plaintiff Christy Mathis' civil rights, justifying an award of punitive damages.

131.    As a result of Defendants' conduct, Plaintiff Christy Mathis was deprived of her property interests in her teaching position, loss of pay and benefits, pain and suffering, extreme and severe mental anguish and emotional distress, attorney's fees and expenses in defending the criminal charges, and damage to her professional and personal reputation. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial, plus attorneys' fees, expenses, and costs.

## COUNT III

### CIVIL RIGHTS VIOLATION PURSUANT TO 42 U.S.C § 1983 - DEPRIVATION OF FOURTEENTH AMENDMENT LIBERTY INTEREST WITHOUT DUE PROCESS
(*Against Defendants School Board, Hermening, Muñoz, Grube, Grams, and Krause*)

132.    Plaintiffs replead Paragraphs 1-131 as if fully set forth herein.

133.    Defendants engaged in the conduct described herein for the express purpose of illegally and improperly forcing Plaintiff Christy Mathis from her employment.

134.    As a direct and proximate result of the willful and malicious conduct of Defendants School Board, Hermening, Grube, Krause, and Grams:  (i) Ms. Mathis lost her

23

employment; (ii) her reputation has been so impugned as to seriously damage her standing and associations in her profession; and (iii) her freedom to take advantage of employment opportunities commensurate with her education, experience, and salary history, has been foreclosed, effectively precluding her from continuing in her chosen career.

135.    As a result of the actions of these Defendants, and the resultant press coverage which is also available on the internet to those prospective employers who do simple background checks on prospective employees using Google, Ms. Mathis will lose positions for which she may apply that are commensurate with her education, experience, and salary history.

136.    As a result of the willful and malicious actions of these Defendants, all under color of state law and without due process, Plaintiff Christy Mathis was deprived of her Fourteenth Amendment liberty interest and has suffered loss of freedom, mental anguish, emotional pain and suffering, and loss of enjoyment of life.

137.    Accordingly, Plaintiff Christy Mathis is entitled to a judgment on this claim against Defendants School Board, Hermening, Grube, Krause, and Grams, jointly and severally, for compensatory damages, punitive damages, and for her attorney fees and costs.

## COUNT IV
## MALICIOUS PROSECUTION
(*Against Defendants Gram and Krause*)

138.    Plaintiffs replead Paragraphs 1-137 as if fully set forth herein.

139.    Plaintiff Christy Mathis was prosecuted in a criminal proceeding in State v. Mathis, Marathon County Criminal No. 2021CF000543, upon being charged by Criminal Complaint with 1st Degree Child Sex Assault – Sexual Contact with Person under Age of 13 in violation of Wis. St. § 948.02(1)(e).

140.    Defendants Grams and Krause instituted this prosecution.

24

141.    The prosecution ended favorably for Ms. Mathis, with the charge against her being dismissed for lack of probable cause on the Court's own motion.

142.    Defendants Grams and Krause acted without probable cause.

143.    Defendants Grams and Krause acted with malice.

144.    As a result of the prosecution and consequence of the legal proceeding, Plaintiff Christy Mathis suffered legally cognizable damages.

145.    Defendants Grams and Krause's actions were willful, wanton, unlawful, and in gross disregard of the rights and reputation of Plaintiff Christy Mathis justifying an award of punitive damages.

146.    As a direct and proximate result of Defendant Gram's and Krause's illegal and unjustified conduct, Plaintiff Christy Mathis has suffered the following damages: (1) humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress; (2) consequential damages; (3) actual and compensatory damages including, but not limited to past, present, and future pain and suffering and medical expenses; and (4) other damages as allowed by law.

## COUNT V
## NEGLIGENT HIRING, RETENTION, AND SUPERVISION
*(Against Defendants Grams and City of Mosinee, Wisconsin)*

147.    Plaintiffs replead Paragraphs 1-146 as if fully set forth herein.

148.    Defendants Gram and the City of Mosinee, Wisconsin were the employers and/or supervising officer of Officer Krause.

149.    As the employer, Defendants Gram and the City of Mosinee, Wisconsin have a duty to exercise reasonable care in the hiring, retention, and supervision of individuals who, because of their employment, may pose a threat of injury to members of the public.

150.    Defendants Gram and the City of Mosinee, Wisconsin breached their duty in the negligent and reckless supervision and retention of Officer Krause.

25

151. Defendants Gram and the City of Mosinee, Wisconsin knew, or in the exercise of ordinary care should have known, of the incompetence and unfitness of Officer Krause.

152. The incompetence and unfitness of Officer Krause were a cause of damage to Plaintiff Christy Mathis.

153. These Defendants' negligence was a proximate cause of Ms. Mathis' injuries.

154. As a direct and proximate result of Defendants Gram's and the City of Mosinee, Wisconsin's acts and/or omissions conduct, Plaintiff Christy Mathis suffered the following damages: (1) humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress; (2) consequential damages; (3) actual and compensatory damages including, but not limited to past, present, and future pain and suffering and medical expenses; and (4) other damages as allowed by law.

### COUNT VI
### LOSS OF SPOUSAL CONSORTIUM
(*Against All Defendants*)

155. Plaintiffs replead Paragraphs 1-154 as if fully set forth herein.

156. Plaintiff Paul Mathis is the husband of Plaintiff Christy Mathis and was her spouse during the events giving rise to this Complaint.

157. As a direct and proximate cause of Defendants' actions and/or omissions, Paul Mathis suffered, and will continue to suffer in the future, the loss of the affection, aid, assistance, companionship, comfort, cooperation, and society of his wife, Christy Mathis.

### COUNT VII
### DEFAMATION
(*Against Defendant E.R.*)

158. Plaintiffs replead Paragraphs 1-157 as if fully set forth herein.

159.     E.R.'s statements about Plaintiff Christy J. Mathis inappropriately touching her back and buttocks, and more specifically the statement that Ms. Mathis "grabbed her butt with a cupped hand while giving her butt a slap," was false.

160.     E.R. communicated these falsehoods about Ms. Mathis through her speech to other persons, including to numerous other students at Mosinee Middle School in person and through social media.

161.     The falsehoods spread by E.R. concerning Ms. Mathis inappropriately touching her on her back and buttocks is unprivileged because the statement was made with actual malice with the intent to destroy Ms. Mathis's professional career and to have her arrested and convicted of a crime.

162.     E.R.'s defamatory statement was made with actual malice because she made the statement with "knowledge that it was false."

163.     The falsehoods spread by E.R. concerning Ms. Mathis inappropriately touching her on her back and buttocks harmed Ms. Mathis' reputation, lowering her in the estimation of community and deterring third person from associating with her.

164.     E.R. acted willfully, maliciously, and intentionally in making these false statements.

165.     As a direct and proximate result of Defendants E.R.'s defamatory statements about Plaintiff Christy Mathis, Ms. Mathis suffered the following damages: (1) humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress; (2) consequential damages; (3) actual and compensatory damages including, but not limited to past, present, and future pain and suffering and medical expenses; and (4) other damages as allowed by law.

## COUNT VIII
## PAREENTAL LIABILITY
(*Against Defendants Andrea and Mark Reede*)

166.    Plaintiffs replead Paragraphs 1-165 as if fully set forth herein.

167.    The above-alleged defamatory conduct of unemancipated minor E.R. was intentional or reckless.

168.    Defendants Andrea and Mark Reede are the parents of Defendant E.R. and each were jointly entitled to custody of E.R. at the time of the tortious conduct of E.R.

169.    Pursuant to Wis. Stat. § 895.035(2)(a), the parents of an unemancipated minor child shall be liable for personal injury caused by any tort willfully, maliciously, or wantonly committed by such child.

170.    As such, the parents of E.R. are liable in this matter for the defamatory actions of E.R in the amount permitted pursuant to Wis. Stat. § 895.035(4).

**WHEREFORE,** the Plaintiffs pray for judgment against Defendants, as follows:

a.   Actual, compensatory, consequential, and all other allowable damages against Defendants in an amount as yet to be determined.

b.   Plaintiffs' cost in this action, including reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and Wis. Stat. § 895.035(4);

c.   Punitive damages;

d.   Just, reasonable, and adequate compensation for the injuries and damages sustained for loss of consortium, together with interest allowed;

e.   Prejudgment interest; and

f.   Such relief as the Court deems just and equitable.

## JURY DEMAND

The Plaintiffs, Christy J. Mathis, and Paul J. Mathis, hereby demand a trial by jury with regard to Counts I – VIII set forth herein.

Dated this 27th day of January, 2022

WALCHESKE & LUZI, LLC
Counsel for Plaintiff

**_s/ Paul M. Secunda_**
James A. Walcheske, State Bar No. 1065635
Scott S. Luzi, State Bar No. 1067405
Paul M. Secunda, State Bar No. 1074127

WALCHESKE & LUZI, LLC
235 N. Executive Drive, Suite 240
Brookfield, Wisconsin 53005
Telephone: (414) 828-2372
Fax: (262) 565-6469
E-Mail: jwalcheske@walcheskeluzi.com
E-Mail: sluzi@walcheskeluzi.com
E-Mail: psecunda@walcheskeluzi.com