UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

CHRISTY J. MATHIS and PAUL J.
MATHIS,

              Plaintiffs,                Case No.: 3:22-cv-47

              v.                    **JURY DEMAND**

MOSINEE SCHOOL DISTRICT, KEVIN
J. HERMENING, DAVID MUÑOZ, BRAD
GRUBE, KARLA MICHANOWICZ, CITY
OF MOSINEE, WISCONSIN, ERIC J.
KRAUSE, KENNETH GRAMS, KEN
MUELLING, ANDREA REEDE, MARK
REEDE, E.R., BRIAN BRZEZINSKI, JULIE
BRZEZINSKI, A.B., HUBBLE MANLEY;
MEGAN MAJEWSKI RESCH, AND M.M.

              Defendants

---

**AMENDED COMPLAINT**

---

**COMES NOW** the Plaintiffs, Christy J. Mathis and Paul J. Mathis, by and
through their undersigned counsel, Walcheske & Luzi, LLC, as and for a claim against
Defendants, allege and assert to the best of their knowledge, information, and belief,
formed after an inquiry reasonable under the circumstances, the following:

<u>INTRODUCTION</u>

1.    Plaintiff Christy J. Mathis was a 25-year, tenured employee of the
Mosinee School District in Mosinee, Wisconsin, where she formerly taught art at the
Mosinee Middle School.

2.     As a part of her regular duties, Ms. Mathis was tasked with ensuring the safety and well-being of her art students at Mosinee Middle School, working diligently to create an environment free from distractions and interruptions. From time to time, Ms. Mathis' duty of enforcing student discipline, including the School's student cell phone classroom usage policy, put her at odds with certain students.

3.     In the last decade or more, cell phone technology, and in particular social networking sites on smart phones (i.e., Instagram, Tik Tok, and Snap Chat), have permitted students to not only distract themselves from their schoolwork, but also to interfere with the ability of their classmates to receive an education and their teachers to provide an education.

4.     This civil action is necessary to expose and stop students, and their enablers, from inflicting grievous harm on teachers through false criminal accusations and unlawful employment actions in order to retaliate against teachers, like Ms. Mathis, who seek only to maintain discipline and decorum in their classrooms by enforcing the School's student cell phone classroom usage policy.

5.     Ms. Mathis is the victim of vicious, false, and defamatory statements by E.R., a minor 12-year old child of Mark and Andrea Reede, who falsely accused Ms. Mathis of inappropriately and sexually touching her during an art class on March 25, 2021.

6.     E.R.'s defamatory false statements concerning Ms. Mathis were part of an orchestrated scheme, with her friends, A.B., a minor 12-year old child of Brian and Julie Brzezinski, and M.M., a minor 12-year old child of Hubble Manley and Megan

Majewski Resch, to express their dislike for, anger against, and to retaliate against, Ms. Mathis for enforcing the School's student cell phone classroom usage policy.

7.     E.R.'s false and defamatory accusations about Ms. Mathis' conduct in her classroom were not only aided and abetted by A.B. and M.M., but also by Defendants Mosinee School District, School Board President Kevin J. Hermening, Superintendent David Muñoz, Mosinee Middle School Principal Brad Grube, Mosinee Middle School Human Resources Coordinator Karla Michanowicz, and Mosinee Middle School Resource Officer Eric J. Krause, all of whom intentionally ignored or suppressed exculpatory evidence and inconsistencies in E.R., A.B., and M.M's allegations in order to assist in the prosecution of the criminal case against Ms. Mathis and to terminate her employment with the School District. These Defendants perpetrated this malicious prosecution of Ms. Mathis in violation of her civil rights, which in turn resulted in a loss of consortium for her husband, Paul J. Mathis.

8.     During the period in question, Defendant Krause was negligently trained and supervised in sexual assault investigations by Defendants City of Mosinee, Wisconsin, former Mosinee Police Chief Ken Muelling, and current Mosinee Police Chief Kenneth Grams.

9.     E.R.'s false and defamatory statements, aided by her parents Mark and Andrea Reede, and by her friends, A.B. and M.M., and their parents, Brian and Julie Brzezinski and Hubble Manley and Megan Majewski Resch, were bolstered and supported by the negligent, biased, and shoddy investigation undertaken by

Defendants Grube, Michanowicz, and Krause, and caused Ms. Mathis grievous harm to her reputation, emotional health, and professional career.

## JURISDICTION AND VENUE

10.     This court has federal subject matter jurisdiction over the federal civil rights claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, and supplemental jurisdiction over the state law claims arising out of the same case or controversy pursuant to 28 U.S.C. § 1367.

11.     Venue is appropriate in this court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions described herein took place in Marathon County, Wisconsin, which is located in the District Court for the Western District of Wisconsin.

## PARTIES

12.     Plaintiff Christy J. Mathis is an individual residing in Wausau, Marathon County, Wisconsin, at all times material hereto.

13.     Plaintiff Paul J. Mathis is an individual residing in Wausau, Marathon County, Wisconsin, at all times material hereto.

14.     Defendant Mosinee School District ("District") was at all times material a school district organized and existing under the laws of the State of Wisconsin whose business address is 146001 State Highway 153, Mosinee, Marathon County, Wisconsin. The District is governed by the Mosinee School Board (hereinafter "Board"), whose members acting in their official capacity constitute the District's final policymakers.

4

15.    The District is made a Defendant in this action on the ground of its direct liability for violations of Plaintiff Christy Mathis' civil rights and on the ground of its liability as indemnitor under Wis. Stat. § 895.46, to pay any judgment for damages and costs entered against School Board President Kevin J. Hermening, Superintendent David Muñoz, Principal Brad Grube, or Human Resources Coordinator Karla Michanowicz, for acts done within the scope of their employment while carrying out duties as a public officers or employees of Defendant District.

16.    Defendant, Kevin J. Hermening ("Hermening"), is an adult resident of the State of Wisconsin, whose current address is 148591 Smore Lane, Mosinee, WI 54455. All actions alleged in this Amended Complaint to have been taken by Defendant Hermening were taken in both his individual capacity and his official capacity as President of the Board.  At all times relevant to this Amended Complaint, Defendant Hermening was acting under color of state law within the meaning of 42 U.S.C. § 1983 and while carrying out his duties as a public officer or employee and within the scope of his employment by Defendant District.

17.    Defendant David Muñoz ("Superintendent Muñoz") was at all times material  a citizen of the United States, a resident of the State of Wisconsin, and the Superintendent  of  Defendant District. All actions alleged in this Amended Complaint to have been taken by Defendant Muñoz were taken in both his individual capacity and his official capacity as Superintendent of Defendant District. At all times relevant to this Amended Complaint, Defendant Muñoz was acting under color of

state law within the meaning of 42 U.S.C. § 1983 and while carrying out his duties as an employee and within the scope of his employment by Defendant District.

18.     Defendant Brad Grube ("Principal Grube") was at all times material a citizen of the United States, a resident of the State of Wisconsin, Principal of the Mosinee Middle School, and Plaintiff Christy J. Mathis' direct supervisor. All actions alleged in this Amended Complaint to have been taken by Principal Grube were taken in both his individual capacity and his official capacity as Principal of the Mosinee Middle School.  At all times relevant to this Amended Complaint, Principal Grube was acting under color of state law within the meaning of 42 U.S.C. § 1983 and while carrying out his duties as an employee and within the scope of his employment by Defendant District.

19.     Defendant Karla Michanowicz ("Ms. Michanowicz") was at all times material a citizen of the United States, a resident of the State of Wisconsin, Human Resources Coordinator of the Mosinee Middle School, and Plaintiff Christy J. Mathis' Human Resources contact. All actions alleged in this Amended Complaint to have been taken by Ms. Michanowicz were taken in both her individual capacity and her official capacity as Human Resources Coordinator of the Mosinee Middle School.  At all times relevant to this Amended Complaint, Ms. Michanowicz was acting under color of state law within the meaning of 42 U.S.C. § 1983 and while carrying out her duties as an employee and within the scope of her employment by Defendant District

20.     Defendant City of Mosinee, Wisconsin (hereinafter "Defendant City") is a municipal corporation organized and authorized to operate under the laws of

Wisconsin and is located at 225 Main Street, Marathon County, Mosinee, Wisconsin. Defendant City is responsible for maintaining and operating the Mosinee Police Department.

21.     Defendant Eric J. Krause ("Krause") is an adult resident of the State of Wisconsin, whose current address is 141322 Lenz Lane, Mosinee, WI 54455. At all times relevant to the events complained of herein, Officer Krause was employed as a Mosinee Police Officer by the City of Mosinee, Wisconsin, and acting as a School Resource Officer for the Mosinee Middle School in the Mosinee School District. All actions alleged in this Amended Complaint to have been taken by Defendant Krause were taken in both his individual capacity and his official capacity as a Mosinee Police Officer.  At all times relevant to this Amended Complaint, Defendant Krause was acting under color of state law within the meaning of 42 U.S.C. § 1983 and while carrying out his duties as a public officer or employee and within the scope of his employment by Defendant City.

22.     Defendant Kenneth Grams ("Grams") is an adult resident of the State of Wisconsin and from May 10, 2021 to the present, was employed as the Chief of Police for the Mosinee Police Department in Mosinee, Wisconsin, and supervisor of Defendant Krause. All actions alleged in this Amended Complaint to have been taken by Defendant Grams were taken in both his individual capacity and his official capacity as Police Chief of the Mosinee Police Department.  At the times relevant to this Amended Complaint, Defendant Grams was acting under color of state law

within the meaning of 42 U.S.C. § 1983 and while carrying out his duties as a public officer or employee and within the scope of his employment by Defendant City.

23.     Defendant Ken Muelling ("Muelling") is an adult resident of the State of Wisconsin and up until March 2021, was employed as the Chief of Police for the Mosinee Police Department in Mosinee, Wisconsin, and supervisor of Defendant Krause. All actions alleged in this Amended Complaint up until March 2021, to have been taken by Defendant Muelling were taken in both his individual capacity and his official capacity as Police Chief of the Mosinee Police Department.  At all times relevant to this Amended Complaint, Defendant Muelling was acting under color of state law within the meaning of 42 U.S.C. § 1983 and while carrying out his duties as a public officer or employee and within the scope of his employment by Defendant City

24.     Defendants Andrea and Mark Reede, parents of minor E.R., are adult residents of the State of Wisconsin, whose current address is 2022 Circle Drive, Kronenwetter, WI 54455.

25.     Defendant E.R., a minor child, is a resident of the State of Wisconsin, and at all times relevant to the events complained of herein, a Mosinee Middle School student, who was enrolled in Plaintiff Christy Mathis' art class during third hour in the spring of 2021.

26.     Defendants Brian and Julie Brzezinski, parents of minor A.B., are adult residents of the State of Wisconsin, whose current address is1835 Grant Road, Kronewetter, WI 54455.

8

27.     Defendant A.B., a minor child, is a resident of the State of Wisconsin, and at all times relevant to the events complained of herein, a Mosinee Middle School student, who was enrolled in Plaintiff Christy Mathis' art class during third hour in the spring of 2021.

28.     Defendants Hubble Manley and Megan Majewski Resch, parents of minor M.M., are adult residents of the State of Wisconsin. Mr. Manley's current address is 208590 Beans Eddy Road, Mosinee, WI 54455, while Ms. Resch's current address is 519 U.S. Highway 45, Birnamwood, WI 54414.

29.     Defendant M.M., a minor child, is a resident of the State of Wisconsin, and at all times relevant to the events complained of herein, a Mosinee Middle School student, who was enrolled in Plaintiff Christy Mathis' art class during third hour in the spring of 2021.

## FACTUAL BACKGROUND

30.     Plaintiff Christy J. Mathis is the mother of two daughters and has been the wife of Plaintiff Paul J. Mathis for over twenty-five years.

31.     Ms. Mathis had been a middle school art teacher for twenty-five years, from August 13, 1996 through July 12, 2021, at the Mosinee Middle School in Mosinee, Wisconsin.

32.     Over the course of her teaching career, Ms. Mathis performed her job competently, and although she had been counseled with regard to entering her grades on a timely basis and keeping a clean classroom, she had never been disciplined for engaging in any type of inappropriate physical or sexual contact with students.

9

33.     On March 25, 2021, one of Ms. Mathis's former 7th grade art students, E.R., falsely and maliciously accused Ms. Mathis of inappropriately touching her on her back and buttocks in her art classroom with thirty other students present during third hour class.

34.     E.R., and her close friends, A.B. and M.M., very much disliked Ms. Mathis because she strictly enforced a student cell phone usage policy in her classroom and for other various reasons.

35.     Ms. Mathis frequently chastised E.R. for her inappropriate use of her cell phone in Ms. Mathis' class. Ms. Mathis took E.R.'s cell phone away previously and addressed classroom cell phone usage with her.

36.     On March 25, 2021, during third-hour art class, Ms. Mathis was walking around tables about ten to fifteen minutes into the class period. She noticed E.R. looking down at her lap. She had both hands in her lap, so Ms. Mathis suspected she was on her cell phone.

37.     Ms. Mathis walked up behind E.R., placed her left hand on E.R.'s right shoulder and looked over her shoulder at E.R.'s lap. Ms. Mathis asked if E.R. was on her cell phone and E.R. stated, "Yes, I was just finishing up a text to my mom."

38.     Ms. Mathis told E.R. to put the phone away and that E.R. should be working on her art. E.R. did not immediately put the cell phone away, so Ms. Mathis reached over E.R. with her right hand and asked for the cell phone.

39.     Ms. Mathis does not remember if she kept her left hand on E.R.'s shoulder, as Ms. Mathis was focused on taking the cell phone. E.R. then gave her cell

phone to Ms. Mathis, and Ms. Mathis placed the cell phone at the top edge of the table.

40.    E.R. then stated she wanted to put the cell phone away, so E.R. started reaching for it and while she was reaching for the cell phone, she partially stood up off of her stool.

41.    Ms. Mathis then told E.R. that it was ok to either leave the cell phone on the table or in E.R.'s pocket, but that E.R. should not take the cell phone out during class anymore. Ms. Mathis told E.R. that she would take the cell phone away if it was used again and send her to the principal's office. E.R. then started to sit back down.

42.    Ms. Mathis ended the interaction with E.R. at that point by telling E.R. to keep the cell phone put away. E.R. seemed annoyed with Ms. Mathis and exclaimed, "Okay, I will!"

43.    At no point during this interaction, or any other time during this class period, did Ms. Mathis inappropriately touch E.R, including grab, squeeze, or slap E.R.'s buttocks, as E.R. alleges. Rather, Ms. Mathis merely attempted to take away E.R.'s cell phone from her.

44.    It never crossed Ms. Mathis' mind that this incident was source of the allegations against her until she understood two weeks later that it was E.R. who filed the complaint against her.

45.    E.R. and her close friends, M.M. and A.B., reported the alleged incident after third hour class on March 25, 2021, to Mosinee Middle School Assistant

Principal Paul Rheinschmidt, who took their statements and then brought the allegations to the attention of Principal Grube.

46.     Before discussing the incident with Ms. Mathis, Principal Grube investigated the complaint by first, interviewing students who claimed to be witnesses, and then interviewing other students who were in art class during that same class period.

47.     Principal Grube's interviews occurred on March 25, 2021, March 26, 2021, and April 5, 2021. The students who were interviewed filled out written statements. Ms. Mathis was neither provided with any of those student written statements, nor given an opportunity to respond to those statements.

48.     Principal Grube reported the incident to Officer Krause on March 25, 2021, and was told by Officer Krause to circle back with him when Principal Grube completed his investigation. Per Officer Krause's instructions, Principal Grube reported the results of this investigation to Officer Krause on the morning of April 5, 2021, saying that he felt (even though not an attorney or police officer) that there may be a violation of the law.

49.     In the early afternoon of March 25, 2021, Ms. Mathis received a phone call from Principal Grube. Principal Grube asked Ms. Mathis to stop down at his office after class. Dan Lesniak, the Mosinee Middle School teacher union president, accompanied Ms. Mathis to the meeting.

50.     When Ms. Mathis and Mr. Lesniak entered Principal Grube's office, Principal Grube was sitting at his desk. Ms. Michanowicz was also sitting in the

office. Principal Grube told Ms. Mathis that she was being sent home due to a student complaint, and Ms. Mathis would be out as well on Friday, March 26, 2021.

51.     Neither Principal Grube nor Ms. Michanowicz provided any information or details to Ms. Mathis about the student complaint and therefore, Ms. Mathis did not understand the nature of the complaint.

52.     Basic notions of due process require, at a minimum, that an accused person be given notice of the accusations against him or her, and be given the opportunity to respond to such accusations. Ms. Mathis was given neither notice nor the opportunity to respond, resulting in a violation of her due process rights by Principal Grube and Ms. Michanowicz.

53.     On March 26, 2021, Ms. Mathis received a call from Principal Grube, telling her to come to school at 3:30 p.m., and that the student complaint concerned an accusation of an inappropriate touch.

54.     Ms. Mathis, along with Mr. Lesniak, attended this second meeting with Principal Grube and Ms. Michanowicz.

55.     Principal Grube only partially explained the inappropriate touch accusation. He said there were two complaints: one was that Ms. Mathis had placed her hands on a student's shoulders, and one that she had touched a student's back and buttocks. Ms. Mathis, still not knowing what Principal Grube was referring, asked if it was one student, and Principal Grube replied that it was two different students.

56.     Principal Grube gave no indication if the students were male or female, or any other indication as to where or when in the classroom the alleged incident had occurred. He simply said it allegedly occurred in the seventh-grade, third-hour class on March 25, 2021.

57.     At this same March 26th meeting, Principal Grube told Ms. Mathis that the interviews with the students making the accusations against her occurred on Thursday, March 25 and Friday, March 26, and that the interviews would finish up by Monday, April 5th, after Spring Break, when students returned for school. Principal Grube, again, did not share any other information concerning these student interviews with Ms. Mathis or any other information about the allegations that had been made against her.

58.     At this same meeting, Mr. Lesniak questioned Principal Grube about letting the accusers and student witnesses talk over their stories with each other during Spring Break to make sure that their stories lined up. Mr. Lesniak explained to Principal Grube that it was not fair to Ms. Mathis to allow that much time to elapse between taking statements from students. Principal Grube stated that he could not control what the students talked about outside of his office.

59.     Principal Grube asked Ms. Mathis on March 26, 2021 to write a statement regarding what may have occurred in her classroom that could have been construed as an inappropriate touch.

60.     Because Ms. Mathis had been given no specifics of the complaint against her, including by whom, Ms. Mathis could not think of any incident that could be remotely deemed as an inappropriate touch.

61.     Mosinee Middle School's Spring Break ran from Saturday, March 27, 2021 through Sunday, April 4, 2021.

62.     On March 27, Mr. Lesniak discussed with Ms. Mathis the *Garrity* document, which required Ms. Mathis to cooperate with the school's investigation as long as nothing she said could be used against her in a future criminal proceeding.

63.     On Tuesday, March 30, 2021, Ms. Michanowicz sent an email to Ms. Mathis and Mr. Lesniak with the *Garrity* document signed by Principal Grube attached.  Ms. Mathis had until the end of the day on Monday, April 5, 2021, to finish her statement about the student allegations even though she still did not know which students had filed the complaints, as well as the nature of the complaints.

64.     On Tuesday, March 30, 2021, Principal Grube told Ms. Mathis that the Middle School was extending her paid leave until Wednesday, April 7, 2021.

65.     On Friday, April 2, 2021, without any specific information about the student complaints against her, Ms. Mathis submitted her *Garrity* statement to Principal Grube, which stated that she could not recall anything that would be remotely deemed as inappropriately touching a student.

66.     At approximately 12:45 p.m. on Monday, April 5, 2021, two police cars parked outside of Ms. Mathis' house. Ms. Mathis was arrested by Officer Krause, who was accompanied by a Marathon County Deputy Sheriff.

67.     Ms. Mathis was charged with 1st Degree Child Sexual Assault – Sexual Contact with a Child Under 13.

68.     During her arrest, Officer Krause told Plaintiff Paul J. Mathis, by telephone, that the student interviews were all completed before Spring Break. They were not, as additional students were interviewed on April 5, 2021.

69.     During the ride in the police car to the police station, Ms. Mathis asked Officer Krause if she would ever find out both the identity of her accuser and the nature of the complaint, as she shockingly still did not know the specifics of the complaint against her and who had brought it.

70.     Once at the police station, Officer Krause summarized the complaint against Ms. Mathis, saying her accuser was a 12-year-old female student who claimed that Ms. Mathis had placed her hand on her back and slid it down and slapped and squeezed her butt.

71.     Ms. Mathis asked if it was a single accuser because she was told by Principal Grube during the March 25, 2021 school meeting that there were two complaints filed against her. Officer Krause stated it was just one complaint and did not explain what had happened to the other student complaint.

72.     Because Ms. Mathis still did not know who made the accusation and did not recall any such inappropriate or sexual touching occurring, she asked Officer Krause for the accuser's name. Officer Krause told Ms. Mathis that E.R. made the allegation. This was the first time, eleven (11) days after Ms. Mathis was dismissed

from school based on a student complaint, that Ms. Mathis discovered the identity of her accuser.

73.    Once Ms. Mathis understood E.R. made the allegation against her, Ms. Mathis recalled that she had an encounter with E.R. during art class on March 25, 2021, involving the use of E.R.'s cell phone.

74.    On Tuesday, April 6, 2021, Ms. Mathis had a bond hearing where she heard the formal details of the allegations against her. Mr. Mathis then posted bail and was permitted to go home.

75.    Prior to bringing the charges, the investigations conducted by the Mosinee Police Department and Mosinee Middle School, through Principal Grube, Ms. Michanowicz, and Officer Krause, were deficient in numerous ways.

76.    Officer Krause filed his initial Incident/Investigation Report into the allegations by E.R. against Ms. Mathis on April 5, 2021. In this report, Officer Krause writes that E.R. told him that, "she witnessed [Ms.] Mathis walk to another table and touch another female student's butt. She stated she saw the end of the touch, when [Ms.] Mathis removed her hand from the butt area." The other student's name is redacted.

77.    In the same Incident Report, Officer Krause interviewed eight other students and received twenty-nine student statements, including one from an unidentified student who stated that, "she was touched on the back but felt that it may have been an accident and the touch was not inappropriate in nature. She did

advise that she has witnessed [Ms.] Mathis touch other students in the shoulders or back area, but hasn't witnessed any inappropriate touching of students."

78.     Yet another unidentified student in the Incident Report stated that "it appeared to be just a slide down the back and a slide down the butt area, she was unsure if it was grabbed, but did confirm it was touched. [Redacted] also stated that Mathis has touched her in the back area, but hasn't touched her inappropriately."

79.     In all, besides two of E.R.'s close friends, M.M. and A.B., though a number of students witnessed Ms. Mathis touch E.R.'s back or buttocks, no one else stated that they had seen Ms. Mathis grab, squeeze, slap, or pinch E.R.'s buttocks, or do so in an intentional or inappropriate manner.

80.     Officer Krause did not once ask for Ms. Mathis' side of the story prior to arresting her at her home on April 5, 2021, showing that he had prejudged her actions based on the E.R.'s, M.M's, and A.B.'s malicious and false allegations.

81.     While she was being arrested, Ms. Mathis told Officer Krause that "she didn't do anything."  During this time, Ms. Mathis also stated to Officer Krause that "she thought hard and long and couldn't think of anything that might have happened including accidentally." Ms. Mathis also denied that she had ever touched a student inappropriately or in a private area.

82.     On April 6, 2021, Officer Krause filed his first Case Supplemental Report after a number of students came to speak to him in his office at the Middle School about E.R.'s allegations against Ms. Mathis.

83.    Two unidentified students, believed to be M.M. and A.B., stated that Ms. "Mathis was a person and felt bad because this was her life, her job, and they felt this was going too far and they felt overwhelmed about the entire situation."

84.    Rather than considering the possibility that these two students wanted to recant their allegations against Ms. Mathis and that E.R. was lying, Officer Krause ignored their concerns and inappropriately told them that, "it can be hard to stand up for what's right," yet again prejudging Ms. Mathis' guilt.

85.    On April 7, 2021, Officer Krause filed his second Case Supplemental Report based on two emails he received from a female student informant, either M.K. or R.Z., on April 6, 2021, calling into serious doubt E.R.'s allegations made against Ms. Mathis.

86.    Specifically, the first email stated that "a group of students were lying about the whole thing with [Ms.] Mathis. The email stated they disliked her and wanted her kicked out of the school. The email also stated they were planning on doing this to other teachers."

87.    The second email, a few minutes later, from the same student to Officer Krause specifically, put him on notice about the cell phone issue: "Another thing is that [Ms. Mathis] may have taken [E.R., M.M, and A.B.'s] phones from their back pocket but she never actually touched them."

88.    Officer Krause and Principal Grube then interviewed the student, either M.K. or R.Z., in Officer Krause's school office. During the interview, the student told them that "on 3/26/21, the entire 7th grade class was down at River Park across from

the school," and that, "[w]hile together in the group, . . . the girls started to talk about the Mathis incident and thought she got fired or was going to get fired and . . . they seemed happy about it because they don't like her. During that conversation, [redacted] stated they spoke about Mr. Xiong another Middle School teacher and wanting to get him removed next because people didn't like him."

89.     Rather than take these allegations seriously, Officer Krause and Principal Grube inexplicably discounted and/or ignored the informant's story and attempted to explain away her statements, speculating without any evidence that "it was possible that [E.R. and her friends] were excited because they no longer had to deal with [Ms.] Mathis because of what she did."

90.     Officer Krause continued to inappropriately try to sway the informant by persuading her that "some people react different when they are dealing with emotions and might seem odd to others as everyone is different." Officer Krause then asked the informant if this was possible, and all the informant said was "maybe." Officer Krause never asked about any cell phone issues with E.R., M.M., or A.B., in dereliction of his investigatory duties.

91.     Officer Krause, without support and showing that he had a stake in Ms. Mathis being prosecuted and fired, wrote in his Supplemental Case Report that M.K. or R.Z. "had *no valid information* that would suggest anyone falsely creating this complaint and was trying to get Mathis into trouble by creating a false police report. She *only expressed emotions* and nothing of evidence that would prove anything was

falsely reported." (emphasis added). The informant expressed more than emotions, but actual statements made by E.R., M.M., or A.B.

92.    Similarly, a separate, second student told Officer Krause that she overheard E.R. say that it was all just a joke, and that she was kidding. Officer Krause again inappropriately dismissed this testimony too, saying it was just "hearsay," and concluding that the student "was unable to show any proof of wrong doing [sic] from anyone personally involved in this case."  Again, the informant said she heard E.R. make the statement, so it was not hearsay and that should have counted as proof of wrongdoing.

93.    Officer Krause heard from yet a third informant, either M.K. or R.Z., who also emailed him about hearing that "a group of students were lying . . . [T]hey disliked [Ms. Mathis] and wanted her kicked out of the school." Significantly, this informant corroborated the other informant's statement, writing that "others were making up stories and lies about the incident with Mathis. . . . they never really liked Mathis."

94.    This third informant also corroborated E.R.'s cell phone issues, stating, "[E.R., M.M., and A.B.] are trying to make everybody believe that Mrs. Mathis did all of this sexual stuff when she really didn't[,] maybe she might have taken their phones but that's it."

95.    Rather than follow-up with E.R., M.M., or A.B., or any other students about these cell phone issues, Officer Krause instead aggressively discounted and ignored this relevant exculpatory information, concluding generically that "just

because it never happened to her, doesn't mean it can't happen to someone else," and "just because someone makes comments about someone, doesn't mean that they planned on making lies to affect their lives."

96.     It appears that Officer Krause had decided in his own mind, despite significant evidence to the contrary, that Ms. Mathis had done what E.R., M.M., and A.B. had said.  He ceased being a neutral investigator and had a predetermined conclusion in mind to back up his arrest and prosecution of Ms. Mathis.

97.     In a number of later Case Supplement Reports filed on April 12, 2021, recognizing the weakness of his case against Ms. Mathis, Officer Krause did a series of second interviews with the original witnesses, including M.M. and A.B., who supported her accusations.

98.     Inexplicably and again showing that he was just looking to support his flawed and seriously-undermined allegations against Ms. Mathis, Officer Krause's requestioning of all the students was slanted, biased, and yet again ignored the single most important issue brought up by the informants: E.R.'s use of her cell phone during class, in violation of the School's student cell phone classroom usage policy.

99.     Officer Krause continued to characterize the alleged touching as "groping," without the interviewed students using such terms and accepted statements from E.R., M.M., and A.B. as always being "100% truthful," even though there was significant counter-evidence establishing that they were clearly lying.

100.    Many of these second interview reports by Officer Krause used verbatim language (i.e., he cut and paste from report to report), showing that not only did he

ask the exact same questions, but he failed to ask about cell phone usage in Ms. Mathis' class. Unsurprisingly, Officer Krause came to the same predetermined conclusions concerning the veracity of the statements by E.R., M.M., and A.B.

101.   Transparently, Officer Krause was trying to justify his arrest and the criminal complaint he brought against Ms. Mathis after the fact to save face. Although there was serious and substantial evidence that E.R. and her friends had made the whole incident up about Ms. Mathis because of Ms. Mathis' strict classroom cell phone usage policy.

102.   To further support his charges against Ms. Mathis, Officer Krause attended an interview of E.R. on April 16, 2021, by Alicia Resch of the Child Advocacy Center of North-Central Wisconsin.

103.   In re-telling the events of March 25, 2021, E.R. did not mention to Ms. Resch on April 16, 2021, the cell phone incident. Rather, she stated that the inappropriate touching occurred at the end of the third hour class, when, in reality, the cell phone interaction occurred at the beginning of class. This discrepancy will be established by E.R.'s cell phone records on that date.

104.   On April 20, 2021, Officer Krause filed another Case Supplemental Report, attaching his summary of the Child Advocacy interview of E.R. on April 16, 2021, maintaining the same false and biased story that E.R. told, even though it was undermined by multiple witnesses.

105.   On April 23, 2021, Office Krause filed a Criminal Complaint against Ms. Mathis, *State of Wisconsin v. Christy J. Mathis*, DA Case No.: 2021MA001240

(Marathon Cty Cir. Ct.), charging Ms. Mathis with 1st Degree Child Sexual Assault – Sexual Contact with a Child Under 13.

106.   Prior to bringing the charges, the Mosinee Police Department and Mosinee School District, through their officers and agents, including Defendants Hermening, Muñoz, Grube, Michanowicz, Krause, and Muelling, failed to conduct a proper investigation, specifically:

a.   Principal Grube and Ms. Michanowicz failed to provide notice to Ms. Mathis about the nature of the allegations against her and give her a meaningful opportunity to respond to E.R.'s false allegations prior to suspending her from her teaching duties on March 25, 2021;

b.   Principal Grube and Officer Krause failed to give Ms. Mathis notice of, or an opportunity to respond to, the student interviews and statements prior to her arrest on April 5, 2021;

c.   Officer Krause and Principal Grube ignored substantial and relevant exculpatory evidence from at least three student informants, indicating that E.R., M.M. and A.B., had lied about the inappropriate touching allegations to retaliate against Ms. Mathis for strictly enforcing a classroom cell phone usage policy;

d.   Even after being informed by multiple informants that E.R.'s cell phone use was at issue with regard to her incident with Ms. Mathis on March 25, 2021, Officer Krause refused to ask E.R., M.M., A.B., or any other student witnesses about the role that the cell phone usage by E.R. played in her allegations;

e.   No investigation was conducted by Officer Krause, Principal Grube, or Ms. Michanowicz, to review E.R.'s past misconduct and poor behavior in Ms. Mathis' classroom and determine whether it was related to these inappropriate touching allegations;

f.  No investigation was conducted by Officer Krause, Principal Grube, or Ms. Michanowicz to discover the nature of E.R.'s relationship with her friends, M.M. and A.B., and the possible motives they had for fabricating the allegations against Ms. Mathis and other teachers;

g.  Officer Krause never asked M.M. or A.B., or any student witnesses, during what part of the art class the incident allegedly occurred between Ms. Mathis and E.R.; and

h.  Officer Krause and Principal Grube never asked why the second student complaint against Ms. Mathis had been dropped even though E.R. claimed she saw Ms. Mathis touch another female student's buttocks.

107.  The Mosinee Police Department and Police Chiefs Muelling and Grams failed to properly train and supervise Officer Krause in investigating sexual assault cases prior to having Officer Krause investigate the allegations against Ms. Mathis.

108.  Officer Krause was not qualified to partake in the investigation of the Mathis case due to his lack of experience in such matters and the Mosinee Police Department was negligent in its retention and supervision of Officer Krause.

109.  Officer Krause deliberately and intentionally ignored relevant exculpatory information during the Mathis investigation including: (1) E.R., M.M. and A.B.'s dislike for Ms. Mathis; (2) these same girls' desire to have other teachers they dislike fired like Mr. Xiong; (3) their anger over Ms. Mathis' strictly-enforced, classroom cell phone usage policy; (4) E.R.'s anger over having  her cell phone previously taken away by Ms. Mathis; and (5) the inconsistency in timing between when Ms. Mathis said the cell phone incident occurred and when E.R. claimed she was inappropriately touched by Ms. Mathis at the end of the class.

110.   Ms. Mathis' preliminary hearing on the criminal charges was scheduled for June 1, 2021, and thereafter, the Court asked the parties to provide written argument on why probable cause should be found. Accordingly, the State and Ms. Mathis filed briefs concerning probable cause on June 30, 2021, and July 2, 2021, respectively.

111.   On July 12, 2021, the Mosinee School Board met to consider both the non-renewal of Ms. Mathis' teaching contract, and whether to terminate her employment for her sexually touching E.R.

112.   Ms. Mathis did not attend the July 12, 2021 School Board meeting both because she was concerned about violating the conditions of her jail bond and because she believed that the School Board had already prejudged her case based on Principal Grube's and Officer Krause's shoddy investigations into E.R.'s, M.M.'s, A.B.'s, false and defamatory accusations.

113.   Nevertheless, Ms. Mathis did submit two written statements to the School Board members, one to contest her non-renewal and another in defense against E.R.'s defamatory accusations.

114.   On July 12, 2021, the Board, led by Defendant Hermening, voted to non-renew Ms. Mathis based on previous issues involving the entering of grades on-line and classroom cleanliness. This action was separate and apart from their decision whether to terminate her employment based on E.R.'s allegations and had nothing to do with those allegations.

115.   Separately, and independently, the Board, led by Defendant Hermening, and based on Principal Grube's, Officer Krause's, and Ms. Michanowicz's shoddy and biased investigation, voted to terminate Ms. Mathis from her employment for sexually touching a student.

116.   The additional action of terminating Ms. Mathis, beyond non-renewing her teaching contract, had additional significant and damaging consequences for her teaching career (including her teaching license), for her professional and community-wide reputation, and for her emotion health, which would not have been the case if she had been merely non-renewed based on teaching issues.

117.   To add insult to injury, while the Court was still contemplating the issue of probable cause in the criminal matter, on August 9, 2021, Superintendent Muñoz unilaterally barred Ms. Mathis and Paul J. Mathis from school property without receiving the Superintendent's approval.

118.   Superintendent Muñoz based his arbitrary decision to bar Mr. and Ms. Mathis from school property on unfounded and unsupported fears that their physical presence on school grounds would cause disruption and violent behavior.

119.   Superintendent Muñoz, through his actions, laid the groundwork to support Ms. Mathis being ostracized from both the Mosinee School District and the Mosinee community, and ultimately, tilted public opinion toward believing the defamatory allegations against Ms. Mathis.

120.   Two days later, on August 11, 2021, all charges against Ms. Mathis were dismissed for lack of probable cause during a preliminary hearing before Judge

Michael K. Moran of the Marathon County Circuit Court, after he reviewed the actual evidence in the case against Ms. Mathis. The judgment of dismissal and acquittal was entered on August 12, 2021.

121.    Even though Ms. Mathis had been completely exonerated of the criminal charges brought against her based on the exact same evidence provided to the Mosinee School Board by Officer Krause, Principal Grube, and Ms. Michanowicz, the Mosinee School Board, through Board President Hermening and Superintendent Muñoz, refused to reconsider Ms. Mathis' termination for sexual touching, which carried additional and significant detrimental consequences than her having her teaching contract non-renewed.

122.    Consequently, Ms. Mathis remains terminated from her employment based on sexual touching, which in turn is based on a shoddy and biased investigation orchestrated by Principal Grube, Officer Krause, and Ms. Michanowicz into E.R.'s, M.M.'s, and A.B.'s false and defamatory accusations against her.

123.    Ms. Mathis and Paul J. Mathis, as recently as October 1, 2021, were threatened with trespassing charges by the City of Mosinee if they came onto school property.

124.    The Mosinee School District pursued their investigation of Ms. Mathis for the improper purpose of finding a justification to terminate Ms. Mathis' employment and in an effort to cover-up the Mosinee Police Department's and their own reckless investigation of E.R.'s, M.M.'s, and A.B.'s false, defamatory, and intentional accusations against Ms. Mathis.

## CAUSES OF ACTION

## COUNT I
## CIVIL RIGHTS VIOLATION PURSUANT TO 42 U.S.C § 1983 -
## VIOLATION OF DUE PROCESS CLAUSE
## OF THE FOURTEENTH AMENDMENT
(*Against Defendants Grube, Michanowicz, and Krause in their individual capacities*)

125.    Plaintiffs replead Paragraphs 1-124 as if fully set forth herein.

126.    Defendants Grube, Michanowicz, Krause are persons for the purpose of a 42 U.S.C §1983 action for damages.

127.    At all times material hereto, Defendants Grube, Michanowicz, Krause's actions and/or omissions were made under the color of authority and law as a school principal, human resources coordinator, or law enforcement officer, respectively.

128.    As a tenured teacher at Mosinee Middle School, Ms. Mathis had a protected property interest in her teaching job.

129.    At all times material hereto, Defendants Grube, Michanowicz, Krause's actions and/or omissions in failing to properly investigate the allegations against Ms. Mathis based on E.R.'s allegations were performed in a knowing and reckless manner.

130.    The Seventh Circuit has recognized that there is a deprivation of due process where the procedures used to investigate charges are rendered a sham as a result of bias. *Levenstein v. Salafsky,* 164 F.3d 345, 351–52 (7th Cir.1998).

131.    The exculpatory evidence ignored by Defendants Grube, Michanowicz, Krause placed into serious doubt E.R.'s, M.M.'s, and A.B.'s defamatory accusations about Ms. Mathis, and provided crucial evidence that another issue, student classroom cell phone usage, was the true motivation behind the malicious allegations.

29

132.   Because Defendants Grube, Michanowicz, Krause suppressed this favorable evidence willfully, Ms. Mathis was significantly prejudiced by their investigatory bias.

133.   Defendant Krause, in dealing with the prosecuting attorney, provided her with misinformation, concealed exculpatory evidence, and otherwise engaged in bad faith conduct that was instrumental in causing the initiation and continuation of the malicious prosecution of Ms. Mathis for sexual touching.

134.   Defendants Grube, Michanowicz, and Krause failed to investigate exculpatory evidence, in violation of the principles set forth in *Arizona v. Youngblood*, 488 U.S. 51 (1988), *California v. Trombetta*, 461 U.S. 479 (1984), and *Brady v. Maryland*, 373 U.S. 83 (1963).

135.   Defendants Grube, Michanowicz, and Krause demonstrated a deliberate indifference to and/or reckless disregard of Ms. Mathis' civil and constitutional rights by failing to investigate the false allegations against Ms. Mathis by E.R., M.M., and A.B. prior to, and after, seeking criminal charges against Ms. Mathis through the prosecuting attorney.

136.   Ms. Mathis had a protected property interest in her school employment that was deprived through being terminated from her position without the necessary due process of law based on a fundamentally biased investigatory process conducted by Defendants Grube, Michanowicz, and Krause.

30

137.    Defendants Grube, Michanowicz, and Krause's actions were willful, wanton, unlawful, and in gross disregard of Ms. Mathis' civil rights, justifying an award of punitive damages.

138.    As a direct and proximate result of Defendants Grube, Michanowicz, and Krause's illegal and unjustified conduct, Ms. Mathis suffered the following damages: (1) deprivation of her constitutional rights to due process; (2) humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress; (3) consequential damages; (4) actual and compensatory damages including, but not limited to past, present, and future pain and suffering and medical expenses; and (5) other damages as allowed by law.

## COUNT II
## CIVIL RIGHTS VIOLATION PURSUANT TO 42 U.S.C § 1983 -
## VIOLATION OF FOURTEENTH AMENDMENT
## DUE PROCESS AND EQUAL PROTECTION
(*Against Defendants Grams, Muelling, Krause, and the City of Mosinee, Wisconsin*)

139.    Plaintiffs replead Paragraphs 1-138 as if fully set forth herein.

140.    Defendants Grams, Muelling, Krause, and the City of Mosinee are persons for the purposes of 42 U.S.C §1983 action for damages.

141.    Defendants Grams and Muelling are or were policy-makers and decision-makers for the City of Mosinee and set custom and policy for the City's Police Department.

142.    The City, through Defendants Grams, Muelling, and Krause, acting under color of state law, willfully, maliciously, intentionally, or with reckless indifference, violated Ms. Mathis' Fourteenth Amendment rights of Due Process and

Equal Protection while acting under color of state law, including but not limited to her right to defend herself, to be apprised of all the charges against her, to an unobstructed investigation of the charges against her, and to an independent unbiased non-selective investigation and prosecution.

143.   Defendants Grams, Muelling, and Krause intentionally treated Ms. Mathis, a female, differently than male alleged criminal perpetrators with no rational basis for the difference in treatment other than an illegitimate animus against Ms. Mathis.

144.   Defendant City is liable under § 1983 because these actions by Defendants Grams, Muelling, and Krause amounted to a policy or procedure intended to violate Ms. Mathis' constitutional rights.

145.   The acts and/or omissions of Defendants Grams, Muelling, Krause, and City of Mosinee amount to deliberate indifference to the rights and safety of citizens, including Ms. Mathis.

146.   Defendants Grams, Muelling, Krause, and City of Mosinee's actions were willful, wanton, unlawful, and in gross disregard of Ms. Mathis' civil rights, justifying an award of punitive damages.

147.   As a result of Defendants Grams, Muelling, Krause, and City of Mosinee's conduct, Ms. Mathis was deprived of her property interests in her teaching position, loss of pay and benefits, pain and suffering, extreme and severe mental anguish and emotional distress, attorney's fees and expenses in defending the criminal charges, and damage to her professional and personal reputation.

148.    Ms. Mathis is thereby entitled to general and compensatory damages against Defendants Grams, Muelling, Krause, and City of Mosinee in amounts to be proven at trial, plus attorneys' fees, expenses, and costs.

<u>COUNT III</u>
<u>CIVIL RIGHTS VIOLATION PURSUANT TO 42 U.S.C § 1983 -</u>
<u>DEPRIVATION OF FOURTEENTH AMENDMENT</u>
<u>LIBERTY INTEREST WITHOUT DUE PROCESS</u>
(*Against Defendants Mosinee School District, Hermening, Muñoz, Grube,*
*Michanowicz, Grams, Muelling, and Krause*)

149.    Plaintiffs replead Paragraphs 1-148 as if fully set forth herein.

150.    Defendants Mosinee School District, Hermening, Muñoz, Grube, Michanowicz, Grams, Muelling, and Krause, engaged in the conduct described herein for the express purpose of illegally and improperly forcing Ms. Mathis from her employment and to threaten her with prison time.

151.    As a direct and proximate result of the willful and malicious conduct of Defendants Mosinee School District, Hermening, Muñoz, Grube, Michanowicz, Grams, Muelling, and Krause: (i) Ms. Mathis lost her employment through termination (as opposed to just non-renewal); (ii) her reputation has been so impugned as to seriously damage her standing and associations in her profession (including jeopardizing her teaching license); and (iii) her freedom to take advantage of employment opportunities commensurate with her education, experience, and salary history, has been foreclosed, effectively precluding her from continuing in her chosen teaching career.

152.    As a result of the actions of Defendants Mosinee School District, Hermening, Muñoz, Grube, Michanowicz, Grams, Muelling, and Krause, and the

33

resultant press coverage which is also available on the internet to those prospective employers who do simple background checks on prospective employees using Google, Ms. Mathis has and will lose teaching positions for which she may apply that are commensurate with her education, experience, and salary history.

153.   As a result of the willful and malicious actions of Defendants Mosinee School District, Hermening, Muñoz, Grube, Michanowicz, Grams, Muelling, and Krause, all under color of state law and without due process, Ms. Mathis was deprived of her Fourteenth Amendment liberty interest and has suffered loss of freedom, mental anguish, emotional pain and suffering, and loss of enjoyment of life.

154.   Accordingly, Ms. Mathis is entitled to a name-clearing hearing, and a judgment against Defendants Mosinee School District, Hermening, Muñoz, Grube, Michanowicz, Grams, Muelling, and Krause, jointly and severally, for compensatory damages, punitive damages, and for her attorney fees and costs.

## COUNT IV - MALICIOUS PROSECUTION
*(Against Defendants Gram, Muelling, and Krause)*

155.   Plaintiffs replead Paragraphs 1-154 as if fully set forth herein.

156.   Ms. Mathis was prosecuted in a criminal proceeding in *State v. Mathis*, Marathon County Criminal No. 2021CF000543, upon being charged by Criminal Complaint, written by Officer Krause, with 1st Degree Child Sex Assault – Sexual Contact with Person under Age of 13 in violation of Wis. St. § 948.02(1)(e).

157.   Defendants Grams, Muelling, and Krause instituted this prosecution.

158.   The prosecution ended favorably for Ms. Mathis, with the charge against her being dismissed for lack of probable cause.

159.    Defendants Grams, Muelling, and Krause acted without probable cause.

160.    Defendants Grams, Muelling, and Krause acted with malice.

161.    As a result of the prosecution and consequence of the legal proceeding, Ms. Mathis suffered legally cognizable damages.

162.    Defendants Grams, Muelling, and Krause's actions were willful, wanton, unlawful, and in gross disregard of the rights and reputation of Ms. Mathis, justifying an award of punitive damages.

163.    As a direct and proximate result of Defendants Grams, Muelling, and Krause's illegal and unjustified conduct, Ms. Mathis has suffered the following damages: (1) humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress; (2) consequential damages; (3) actual and compensatory damages including, but not limited to past, present, and future pain and suffering and medical expenses; and (4) other damages as allowed by law.

## COUNT V
## NEGLIGENT HIRING, RETENTION, AND SUPERVISION
### (*Against Defendants Grams, Muelling, and City of Mosinee*)

164.    Plaintiffs replead Paragraphs 1-163 as if fully set forth herein.

165.    Defendants Grams, Muelling, and City of Mosinee were the employers and/or supervising officer of Officer Krause.

166.    As the employer, Defendants Grams, Muelling, and City of Mosinee have a duty to exercise reasonable care in the hiring, retention, and supervision of individuals who, because of their employment, may pose a threat of injury to members of the public.

167.    Defendants Grams, Muelling, and City of Mosinee breached their duty in their negligent and reckless supervision and retention of Officer Krause following his investigation of E.R., M.M. and A.B.'s allegations against Ms. Mathis stemming from the March 25, 2021 incident.

168.    Defendants Grams, Muelling, and City of Mosinee knew, or in the exercise of ordinary care, should have known, of the incompetence and unfitness of Officer Krause.

169.    The incompetence and unfitness of Officer Krause were a cause of damage to Ms. Mathis.

170.    Defendants Grams, Muelling, and City of Mosinee's negligence was a proximate cause of Ms. Mathis' injuries.

171.    As a direct and proximate result of Defendants Grams, Muelling, and City of Mosinee's acts and/or omissions, Ms. Mathis suffered the following damages: (1) humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress; (2) consequential damages; (3) actual and compensatory damages including, but not limited to past, present, and future pain and suffering and medical expenses; and (4) other damages as allowed by law.

## COUNT VI
## LOSS OF SPOUSAL CONSORTIUM
### (*Against All Defendants*)

172.    Plaintiffs replead Paragraphs 1-171 as if fully set forth herein.

173.    Plaintiff Paul J. Mathis is the husband of Plaintiff Christy J. Mathis and was her spouse during the events giving rise to this Amended Complaint.

174.    As a direct and proximate cause of Defendants' actions and/or omissions, Paul J. Mathis suffered, and will continue to suffer in the future, the loss of the affection, aid, assistance, companionship, comfort, cooperation, and society of his wife, Christy J. Mathis.

175.    As a direct and proximate result of Defendants' conduct, Mr. Mathis suffered the following damages: (1) actual and compensatory damages including, but not limited to past, present, and future pain and suffering and medical expenses; and (2) other damages as allowed by law.

## COUNT VII
## DEFAMATION
### (*Against Defendants E.R., M.M., and A.B.*)

176.    Plaintiffs replead Paragraphs 1-175 as if fully set forth herein.

177.    E.R.'s statements about Plaintiff Christy J. Mathis inappropriately touching her back and buttocks, corroborated by M.M. and A.B. with their own statements, and more specifically the statement that Ms. Mathis "grabbed her butt with a cupped hand while giving her butt a slap," was false and defamatory.

178.    E.R., M.M., and A.B. communicated these falsehoods about Ms. Mathis through their speech to other persons, including to numerous other students at Mosinee Middle School, both in person and through social media.

179.    The falsehoods spread by E.R., M.M., and A.B. concerning Ms. Mathis inappropriately touching E.R. on her back and buttocks is unprivileged because the statements were made with actual malice with the intent to destroy Ms. Mathis' professional career and to have her arrested and convicted of a crime.

180.   E.R., M.M., and A.B.'s defamatory statement was made with actual malice because they made the statements with "knowledge that it was false."

181.   The falsehoods spread by E.R., M.M., and A.B. concerning Ms. Mathis inappropriately touching E.R. on her back and buttocks harmed Ms. Mathis' reputation, lowering her in the estimation of community and deterring third persons from associating with her.

182.   E.R., M.M., and A.B. acted willfully, maliciously, and intentionally in making these false statements.

183.   As a direct and proximate result of Defendants E.R., M.M., and A.B.'s defamatory statements about Ms. Mathis, Ms. Mathis suffered the following damages: (1) humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress; (2) consequential damages; (3) actual and compensatory damages including, but not limited to past, present, and future pain and suffering and medical expenses; and (4) other damages as allowed by law.

<div align="center">

**COUNT VIII**
**PARENTAL LIABILITY**
(*Against Defendants Andrea Reede, Mark Reede, Brian Brzezinski, Julie Brzezinski, Hubble Manley, and Megan Majewski Resch*)

</div>

184.   Plaintiffs replead Paragraphs 1-183 as if fully set forth herein.

185.   The above-alleged defamatory and false conduct of unemancipated minors E.R., M.M., and A.B. was intentional or reckless.

186.   Defendants Andrea Reede, Mark Reede, Brian Brzezinski, Julie Brzezinski, Hubble Manley, and Megan Majewski Resch are the parents of Defendants E.R., A.B., and M.M., respectively, and each were jointly entitled to

<div align="center">38</div>

custody of their respective children at the time of the tortious conduct of E.R., M.M., and A.B.

187.    Pursuant to Wis. Stat. § 895.035(2)(a), the parents of an unemancipated minor child shall be liable for personal injury caused by any tort willfully, maliciously, or wantonly committed by such child, including for intentionally defamatory and false statements causing substantial injury to another person.

188.    As such, Defendants Andrea Reede, Mark Reede, Brian Brzezinski, Julie Brzezinski, Hubble Manley, and Megan Majewski Resch, as the parents of E.R., M.M., and A.B., are liable in this matter for the defamatory actions of E.R., M.M., and A.B. in the amount permitted pursuant to Wis. Stat. § 895.035(4).

**WHEREFORE,** the Plaintiffs pray for judgment against Defendants, as follows:

a.    Actual, compensatory, consequential, and all other allowabledamages against Defendants in an amount as yet to be determined.

b.    Plaintiffs' cost in this action, including reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and Wis. Stat. § 895.035(4);

c.    Punitive damages;

d.    Just, reasonable, and adequate compensation for the injuries and damages sustained for loss of consortium, together with interest allowed;

e.    Prejudgment interest; and

f.    Such relief as the Court deems just and equitable.

## JURY DEMAND

The Plaintiffs, Christy J. Mathis, and Paul J. Mathis, hereby demand a trial by jury with regard to Counts I – VIII set forth herein.

Dated this 30th day of June, 2022

<div style="margin-left: 45%;">

**WALCHESKE & LUZI, LLC**
Counsel for Plaintiffs

*s/ Paul M. Secunda*
James A. Walcheske, State Bar No. 1065635
Scott S. Luzi, State Bar No. 1067405
Paul M. Secunda, State Bar No. 1074127
Kirsten H. Hendra, State Bar No. 1099097

</div>

WALCHESKE & LUZI, LLC
235 N. Executive Drive, Suite 240
Brookfield, Wisconsin 53005
Telephone: (414) 828-2372
Fax: (262) 565-6469
E-Mail: jwalcheske@walcheskeluzi.com
E-Mail: sluzi@walcheskeluzi.com
E-Mail: psecunda@walcheskeluzi.com
E-Mail: khendra@walcheskeluzi.com