DAVIS  RUNDE
February 27, 2023

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN
--------------------------------------------------------

CHRISTY J. MATHIS, et al.,

        Plaintiff,

   -vs-                 Case No. 22-cv-47

MOSINEE SCHOOL DISTRICT, et
al.,

        Defendants.
--------------------------------------------------------

Deposition of DAVIS RUNDE

APPEARING REMOTELY FROM

MARATHON COUNTY, WISCONSIN

Monday February 27th, 2023

9:15 a.m.

Reported by:  Wendy L. Hanneman, RPR

APPEARING REMOTELY FROM WAUKESHA COUNTY, WISCONSIN

DAVIS  RUNDE
February 27, 2023

---

Page 2

```
 1              Deposition of DAVIS RUNDE a witness in the
 2  above-entitled action, taken at the instance of the
 3  Plaintiff, pursuant to Chapter 804 of the Wisconsin
 4  Statutes, pursuant to notice, before WENDY L. HANNEMAN,
 5  Registered Professional Reporter and Notary Public in
 6  and for the State of Wisconsin, on the 27th day of
 7  February, 2023, commencing at 9:15 a.m. and concluding
 8  at 12:43 p.m.
 9
10  REMOTE APPEARANCES:
11      WALCHESKE & LUZI, LLC, by
            Ms. Kirsten H. Hendra
12          235 North Executive Drive, Suite 240
            Brookfield, Wisconsin 53005
13          khendra@walcheskeluzi.com
            Appeared on behalf of the Plaintiff.
14
15  WISCONSIN DEPARTMENT OF JUSTICE, by
            Ms. Gesina S. Carson
16          PO Box 7857
            Madison, Wisconsin 53707
17          carsongs@doj.state.wi.us
            Appeared on behalf of Defendants.
18
19      AXLEY BRYNELSON, LLP, by
            Ms. Emilia R. Janisch
20          2 East Mifflin Street, Suite 200
            Madison, Wisconsin 53701
21          emi.janisch@gmail.com
            Appeared on behalf of Defendants.
22
23
24
25
```

Page 3

```
 1  REMOTE APPEARANCES (Cont'd):
 2      KLINNER KRAMER SHULL, LLP, by
            Mr. Michael J. Roman
 3          210 McClellan Street, Suite 400
            Wausau, Wisconsin 54402-1386
 4          mroman@klinnerkramershull.com
            Appeared on behalf of Defendant City of Mosinee.
 5
 6      WIRTH + BAYNARD, S.C., by
            Ms. Kiley Zellner
 7          9898 West Bluemound Road, Suite 2
            Wauwatosa, Wisconsin 53226
 8          kbz@wbattys.com
            Appeared on behalf of Defendant Officer Krause.
 9
10              I N D E X
11  EXAMINATION                          PAGE
12  MS. HENDRA                           4, 97
13  MS. ZELLNER                          61
14  MR. ROMAN                            68
15
16            E X H I B I T S
17  NO.      DESCRIPTION          PAGE IDENTIFIED
18  Exh. 88  Criminal complaint and bond
            and court hearing transcripts       43
19
    Exh. 89  Criminal complaint filed 4/23/2    45
20
    Exh. 90  DCI Report Runde Interview         63
21
22  (Exhibits were provided to and marked by the court
23   reporter electronically.  Copies attached to all
24                  transcripts.)
25
```

Page 4

```
 1              TRANSCRIPT OF PROCEEDINGS
 2              DAVIS RUNDE, called as a witness herein,
 3  having been first duly sworn on oath, was examined and
 4  testified as follows:
 5              E X A M I N A T I O N
 6  BY MS. HENDRA:
 7  Q   All right, good morning, everyone.  Good morning,
 8      Mr. Runde.  My name is Kirsten Hendra, and I
 9      represent the Plaintiffs in this matter, Paul and
10      Christy Mathis.  I thank you for taking the time
11      today to speak with us about our case, and with
12      that I'm going to get started.  Would you please
13      state your full name for the record and spell your
14      last name.
15  A   It's Davis Runde, R-U-N-D-E.
16  Q   And you'd agree that this deposition is being
17      conducted via Zoom video conference?
18  A   Yes.
19  Q   And can you state the physical address where you're
20      presently located?
21  A   It is 500 Third Street, Suite 800, Wausau,
22      Wisconsin, 54403.
23  Q   And is there any specific office that you're
24      presently located in?
25  A   I'm located in my office.
```

Page 5

```
 1  Q   All right.  And are there any individuals presently
 2      in the room with you?
 3  A   No.
 4  Q   Okay.  And if at any time someone does enter the
 5      room or leave the room, will you please just let
 6      everyone know?
 7  A   Yes.
 8  Q   And if at any time anyone sends you some sort of a
 9      written message, whether it be electronic or on
10      paper, will you also please let us know?
11  A   Yes.
12  Q   And are you aware of any reason today why you'd be
13      unable to fully and completely exercise your
14      memory?
15  A   Yes.
16  Q   Can you explain what that reason would be?
17  A   My understanding is that the information that is
18      going to be discussed today stems from my
19      representation of the State of Wisconsin, and I
20      have an ethical duty to my client, the State of
21      Wisconsin, to respect the attorney-client privilege
22      and communications that occurred in furtherance of
23      my client's interests.
24  Q   Okay.  So I guess in essence, there's no physical
25      ailment, or illness, or any medications that would
```

DAVIS   RUNDE
February 27, 2023

Page 6

1    prevent you from exercising your memory today?
2  A  No.
3  Q  Okay.  All right.  And just a couple of things.  I
4    mentioned earlier that our conversations today will
5    be limited to only a few topics, so I don't
6    anticipate this deposition going very long.  But,
7    in any event, if you do need to take any break to
8    get water, use the bathroom, stretch your legs,
9    whatever it may be, please let us know and we'll be
10   able to accommodate that.  The only thing I ask is
11   that if we have a question that's -- or if I have a
12   question that's pending, that you just answer that
13   and then you can feel free to take that break.  And
14   so in your lifetime, have you been known by any
15   different name or an alias?
16  A  No.
17  Q  And can you provide me with your current street
18    address for your primary residence?
19  A  It is 805 Broadway Avenue, Wausau, Wisconsin,
20   54403.
21  Q  Okay.  And do you reside with anyone currently?
22  A  My wife.
23  Q  And do you reside with anyone else besides your
24    wife?
25  A  No.

Page 7

1  Q  No.  And have you ever personally given any
2    deposition testimony prior to today?
3  A  No.
4  Q  And are you familiar with individuals named Christy
5    J. Mathis and Paul J. Mathis?
6  A  I'm familiar with Christy J. Mathis.
7  Q  Okay.  And have you had any occasion to socialize
8    with her outside of any professional setting?
9  A  Not to my knowledge.
10  Q  Can you explain how you're familiar with her?
11  A  She was a defendant in Marathon County Criminal
12   Circuit Court, and I was a prosecutor involved with
13   her case.
14  Q  Okay.  And are you aware that Christy and Paul
15    Mathis filed a complaint against the City of
16    Mosinee and several other Defendants in the United
17    States District Court for the Western District
18    Wisconsin?
19  A  Yes.
20  Q  And are you able to tell me how you first became
21    aware of this complaint being filed?
22       MS. CARSON:  Can I put the privilege
23    waiver on the record, please?
24       MS. HENDRA:  Yes.  Yep.
25       MS. CARSON:  Because of Mr. Runde's

Page 8

1    duties as an assistant district attorney with the
2    Marathon County District Attorney's Office at the
3    time of the allegations that led to this complaint,
4    Mr. Runde has specific professional
5    responsibilities to his client.  He has received
6    from the Marathon County District Attorney's Office
7    and the State of Wisconsin a limited waiver of
8    arguably privileged communications between former
9    District Attorney Davis Runde and Mosinee School
10   Resource Officer Eric Krause for the date of
11   April 5th, 2021, only.  And other than those
12   communications with that officer on that date, he
13   is not able to divulge confidential information
14   that he obtained with his employment.
15       MS. HENDRA:  All right, and with that, I
16   will continue on.  Mike, I think you had something
17   you wanted to put on the record, too?
18       MR. ROMAN:  I don't know if it's more for
19   Kiley.  Obviously, Mr. Runde, I represent the City
20   of Mosinee, which is a Defendant in this case.  Our
21   position obviously is any statement that the State
22   of Wisconsin, or position the State of Wisconsin
23   took, or any results of any criminal proceeding,
24   aren't necessarily binding as a matter of course
25   for a preclusive nature on the City of Mosinee

Page 9

1    and/or its employees, including Officer Krause.
2       I think the purpose of the deposition today
3    is to get factual information to the extent the
4    Plaintiffs are asserting claims against Officer
5    Krause, and by nature, the City of Mosinee,
6    regarding a prosecution that ultimately was
7    conducted by the State of Wisconsin.
8       So there may be questions relating to who
9    participated, and those wouldn't necessarily be --
10   these are public things relating to, you know, who
11   appeared at court hearings, et cetera.  But I don't
12   believe the intent is to get into any specific
13   privileged communications you may have had with --
14   with any outside party that's not participating in
15   these depositions.
16       MS. ZELLNER:  And I would just join in
17   that statement for Officer Krause, as well.
18       MS. HENDRA:  Okay.
19  BY MS. HENDRA:
20  Q  All right.  And with that, I just -- a couple other
21    questions for you on this point, Mr. Runde.
22       Can you describe for me what your
23    understanding of the nature of the Mathis's lawsuit
24    in this litigation is?
25  A  My understanding is that Ms. Mathis was bringing a

DAVIS   RUNDE
February 27, 2023

Page 10

1    wrongful discrimination claim.
2  Q   All right.
3  A   Or, I'm sorry, a wrongful discharge claim.
4    Okay.
5  A   I misspoke.
6  Q   All right.  And excluding your attorneys, have you
7      shared that understanding of the nature of the
8      lawsuit with any individuals?
9  A   I believe so.
10  Q   Do you recall who those people would be?
11  A   Not specifically.
12  Q   Okay.  And do you hold any personal opinions as to
13      the merits of Ms. Mathis's lawsuit in this case?
14            MR. ROMAN:  I'll object to the form and
15      foundation.
16            MS. CARSON:  Join.
17            MS. ZELLNER:  Join.
18            MS. JANISCH:  Join.
19  BY MS. HENDRA:
20  Q   All right.  And can you explain what those opinions
21      are?
22            MR. ROMAN:  Same objections.
23            MS. ZELLNER:  Join.
24            MS. CARSON:  Join.
25            MS. JANISCH:  Join.

Page 11

1            THE WITNESS:  My opinions stem from
2      the -- my involvement in the criminal prosecution,
3      and my personal opinion, or I guess my professional
4      opinion that the case brought against Ms. Mathis in
5      Marathon County Criminal Circuit Court carried a
6      level of probable cause.
7  BY MS. HENDRA:
8  Q   Okay, and I think since you're sitting here today,
9      it's fair to assume that you were notified that the
10      Mathises intended to take your deposition for this
11      matter, correct?
12  A   Yes.
13  Q   And are you able to explain to me what you did, if
14      anything, to prepare for your deposition testimony
15      today?  And that's outside of speaking -- or
16      communications you might have had with your
17      attorneys?
18  A   I reviewed the amended criminal complaint filed in
19      this matter.  I reviewed a number of exhibits that
20      were provided last night.  I reviewed the
21      transcript of the probable cause hearing that
22      occurred in Marathon County, I believe on
23      April 6th, 2021.  And I reviewed the filed criminal
24      complaint.
25  Q   And outside of your attorneys, did you speak with

Page 12

1      anyone to prepare for today's deposition?
2  A   No.
3  Q   All right.  And outside of your attorneys, did you
4      communicate to any individuals that you were
5      testifying today at a deposition?
6  A   Yes.
7  Q   And who were those individuals?
8  A   I informed District Attorney Theresa Wetzsteon.
9      Deputy District Attorney Anita Lawrence.  And I
10      should note, Anita Lawrence goes by "Molly."  So if
11      I refer to "Molly, I'm referring to Anita Lawrence.
12  Q   Okay.
13  A   I informed my wife, and I informed my office, Weld
14      Riley, S.C., so they would not disturb me during
15      this deposition.
16  Q   Okay.  And so I want to touch on some basic facts
17      maybe about you, and I'm going to start with just
18      your education.  So can you describe to me any
19      post-high school education that you've obtained?
20  A   Would you like degrees, or specific institutions?
21  Q   Both.  If we could start then maybe with college
22      and make our way up.
23  A   I attended the University of Eau Claire --
24      University of Wisconsin-Eau Claire for my freshman
25      year of undergraduate.  I transferred to the

Page 13

1      University of Wisconsin-Madison where I graduated
2      from in 2013 with a bachelor's of arts in legal
3      studies.  In 2014 I enrolled at Hamline University
4      School of Law.  I transferred after my first year
5      of law school to the University of Wisconsin Law
6      School, and I graduated with a J.D. in 2017.
7  Q   Okay.  And following your graduation from the
8      University of Wisconsin Law School, did you obtain
9      employment?
10  A   Yes.
11  Q   And was that immediately following your graduation
12      from the -- from the law school?
13  A   Essentially, yes.
14  Q   Okay.  And where was your -- or who was your first
15      employer following your graduation from law school?
16  A   The Marathon County District Attorney's Office.
17  Q   Okay.  And what -- do you recall approximately what
18      dates you worked there?
19  A   Yes.
20  Q   And what are those dates?
21  A   I was employed with the Marathon County District
22      Attorney's Office from June 2017 to early
23      September 2018.  In 2018 I left the District
24      Attorney's office.  I returned to the District
25      Attorney's office July of 2019, and I continued

DAVIS   RUNDE
February 27, 2023

Page 14

1      working at the Marathon County District Attorney's
2      Office until August of 2022.
3   Q   Okay.  And do you recall why you left the Marathon
4      County District Attorney's Office, would it be fair
5      to call it the first -- the first time?
6   A   Yes.  I left in 2018 as I moved to Spain.
7   Q   Oh, okay.  And would it be fair to say that when
8      you returned from Spain, you resumed your
9      employment at the Marathon County District
10      Attorney's Office?
11   A   Yes.
12   Q   Okay.  And while you were working at the Marathon
13      County District Attorney's Office, what was the
14      title of your position?
15   A   Assistant district attorney.  At one point I was
16      the interim deputy district attorney.
17   Q   Okay.  And can you explain to me the dates where
18      that transition from assistant district attorney
19      occurred into the deputy district attorney?
20   A   I believe March 16th, 2020, is when I became
21      interim deputy district attorney.  And I held that
22      position until I believe May of 2020.
23   Q   Okay.  Do you recall the circumstances that caused
24      you to transition from the assistant district
25      attorney to the interim deputy district attorney?

Page 15

1   A   The deputy district attorney was on maternity
2      leave.
3   Q   Okay.  So, and following her return from maternity
4      leave, you resumed your responsibilities as the
5      assistant district attorney, correct?
6   A   There were two individuals, myself and Assistant
7      District Attorney Kerri Puig, who assumed the role
8      of interim deputy district attorney.  And we split
9      that time of the deputy's maternity leave.
10      So in May of 2020, Kerri Puig became
11      interim deputy district attorney.  And upon the
12      deputy's return, Kerri Puig went back to being an
13      assistant district attorney.
14   Q   Okay.  And when you were working at the District
15      Attorney's office, do you recall how many assistant
16      district attorneys were employed there?
17   A   That number changed over time.  I believe it ranged
18      from 10 to 12.
19   Q   All right.  And in your capacity as assistant
20      district attorney, are you able to provide me what
21      your primary responsibilities were?
22   A   My primary responsibilities were to represent the
23      State of Wisconsin and the County of Marathon in
24      the prosecutions of possible criminal acts, or
25      ordinance violations that involved reviewing

Page 16

1      reports, providing discovery, issuing charges,
2      appearing in court, filing motions, arguing
3      motions, and conducting jury trials.
4   Q   And were there -- I understand the district
5      attorney is responsible for prosecuting a variety
6      of different criminal cases; is that right?
7   A   Yes.
8   Q   And were there any specific types of criminal cases
9      that you were responsible for prosecuting in your
10      capacity as the assistant district attorney?
11   A   Yes, I carried a specialty caseload of sexual
12      assaults and domestic abuse cases.
13   Q   And are those types of cases the types -- the types
14      of cases that a new assistant district attorney
15      would take on upon entering their employment, or is
16      that something that a more experienced district
17      attorney would take on?
18      MR. ROMAN:  Well, I'll object to form and
19      foundation.  What time do you specifically mean?
20   BY MS. HENDRA:
21   Q   I guess I'll back up.  I'm trying to establish the
22      timeline upon which district attorneys would take
23      on different types of cases in terms of maybe
24      severity, or of the charges, or, you know, things
25      of that nature.  And I'm wondering if you started

Page 17

1      working on sexual assault cases, for example,
2      immediately upon entering your employment, or if
3      that's something that you would take on with more
4      experience.
5      So with that, are -- I'll back up.  When
6      you first started your employment at the assistant
7      -- or, excuse me, at the District Attorney's office
8      as an assistant district attorney, were you
9      initially working on sexual assault cases?
10   A   I do not believe so.
11   Q   Okay.  Would it be fair to say that as assistant
12      district attorneys gain more experience, they would
13      be responsible for handling cases like sexual
14      assault?
15   A   I think that depends on the office.
16   Q   Okay.  How does the Marathon County District
17      Attorney's Office then distribute various types of
18      cases to its assistant district attorneys?
19      MR. ROMAN:  I would object as to form as
20      to time.  If you're talking -- I mean, he was there
21      for quite a few years, so I don't know if there was
22      a change over time.
23   BY MS. HENDRA:
24   Q   Sure.  I'll rephrase, if that works.  Is there a
25      process that you're aware of that the Marathon

DAVIS   RUNDE
February 27, 2023

Page 18

1    County District Attorney's Office undertakes when
2    determining what sorts of cases each assistant
3    district attorney is responsible for handling?
4    A    I do not believe there's a specific process.
5    Q    Okay.  And you mentioned before that you, in your
6         capacity as the assistant district attorney at
7         Marathon County, were -- one of your
8         responsibilities was issuing charges; is that
9         right?
10   A    Yes.
11   Q    Can you explain to me what, generally speaking, the
12        process is by which an assistant district attorney
13        would undertake in issuing a charge?
14   A    Generally a file would be opened by support staff
15        that included the reports support staff received
16        from the law enforcement agency.  That file would
17        be distributed to one of the several attorneys in
18        the office for review.  If it was a specialty file,
19        it would be distributed to the specialty attorneys
20        associated with that specialty.  If a file came to
21        me, I would review the written reports.  If within
22        those written reports I felt it was necessary to
23        review additional evidence such as photographic or
24        video evidence, I would do that.
25             Generally, though, I would be reviewing the

Page 19

1    written reports and determining if based on those
2    written reports, there was probable cause for a
3    crime to be charged.  However, there's also the
4    ethical consideration of charges of, um, whether
5    the charge could be proved beyond a reasonable
6    doubt.  That was another consideration generally we
7    would take into consideration at the time of
8    charging.
9    Q    And a couple things that you mentioned there that I
10        want to get a little more information on.  You
11        mentioned a, and correct me if I'm using -- if I am
12        misstating the term, a specialty case; is that
13        right?
14   A    Correct.
15   Q    What is that?
16   A    By specialty case I mean a sexual assault, a
17        domestic abuse case, a drug trafficking case, or an
18        OWI, or a juvenile.
19   Q    Okay.  And you also mentioned that you'd receive
20        and review written reports, right?
21   A    Yes.
22   Q    Can you explain to me who you would receive those
23        reports from?
24             MR. ROMAN:  Object to form.  Are you
25        talking in general now?  We're not talking the

Page 20

1    specifics of this case?
2         MS. HENDRA:  This is general.  And I'll
3    explain when we're getting into the specifics of
4    our case.
5    BY MS. HENDRA:
6    Q    This is still generally speaking when you mentioned
7         you receive and review written reports, whose
8         written reports are you referring to?
9    A    The written reports I'm referring to are officers'
10        written reports.
11   Q    Okay.  And so in your capacity as the assistant
12        district attorney for the Marathon County District
13        Attorney's Office, generally speaking, can you
14        describe to me the extent of your individual
15        authority to issue charges?
16             MR. ROMAN:  I guess I'll object to form.
17        When you say "issuing charges," are you talking
18        about filing a criminal complaint, or are you
19        talking broader than that?
20             MS. HENDRA:  Broader.  Because earlier
21        Mr. Runde said one of his primary responsibilities
22        is issuing charges.  So I just want to break that
23        up a little bit and just establish or learn what
24        the extent of his individual authority is in
25        issuing a particular charge, generally speaking.

Page 21

1             THE WITNESS:  Generally speaking, when a
2    -- when a case is referred by a law enforcement
3    agency, they generally are referring the case for a
4    specific charge.  It is the attorney's
5    responsibility, however, to review the reports and
6    determine which if any criminal charges are
7    appropriate based on that information.  Generally
8    speaking, that is what I would do.  As an assistant
9    district attorney in Marathon County, I had
10   relatively wide discretion in which charges I
11   believed were appropriate.
12   BY MS. HENDRA:
13   Q    Okay.  And, again, generally speaking, are you able
14        to quantify the amount of time it took upon
15        receiving the referral from a law enforcement
16        officer to issuing a formal charge against a
17        Defendant?
18             MR. ROMAN:  Again, object to form.  When
19        you mean "issue a formal charge," do you mean
20        filing a criminal complaint, issuing arrest
21        warrant, what are you referring to?
22             MS. HENDRA:  I'm not referring to an
23        arrest warrant or filing the complaint.  I guess --
24        well, you know what, I will -- I'll specify more.
25        I am -- I'm referring to issuing an arrest warrant,

DAVIS  RUNDE
February 27, 2023

Page 22

1      or directing that an arrest be made.
2          MR. ROMAN: Well, again, object to form.
3      There are different aspects of it.
4 BY MS. HENDRA:
5 Q   Okay, how about generally speaking, are you able to
6      quantify the time it would typically take for you
7      to receive the referral from -- a referral from a
8      law enforcement officer to directing that an arrest
9      be made?
10 A   **Generally we did not direct that arrests be made.**
11      **So generally arrests were already made and we were**
12      **reviewing reports stemming from that arrest.**
13 Q   Okay. All right. And right, now you're currently
14      employed at the law firm Weld Riley, right?
15 A   **Yes.**
16 Q   And when did you start your employment there?
17 A   **August 1st, 2022.**
18 Q   And when -- excuse me. Do you recall why you left
19      the Marathon County District Attorney's Office and
20      began working at Weld Riley?
21 A   **I wanted to leave criminal prosecution.**
22 Q   And with that, what type of law are you currently
23      practicing at Weld Riley?
24 A   **Generally I am working on municipal law, school**
25      **law, business law, and cooperative law.**

Page 23

1 Q   And what is your position at Weld Riley?
2 A   **I'm an associate.**
3 Q   And can you explain to me what your primary
4      responsibilities are in your new role as an
5      associate at Weld Riley?
6 A   **Not with great specificity.**
7 Q   Would you agree that -- well, is there any overlap
8      in terms of responsibilities that you had at the
9      Assistant District Attorney's Office with your
10      position now at Weld Riley?
11 A   **Yes.**
12 Q   And what are those responsibilities that overlap
13      between the two positions?
14 A   **For example, if there were maybe a litigation**
15      **matter that one of Weld Riley's clients were**
16      **involved in, I may have to appear in court, file**
17      **motions, file complaints. Generally any litigation**
18      **responsibility that I have to meet at Weld Riley**
19      **would be an overlap with my general**
20      **responsibilities as an assistant district attorney,**
21      **aside from making determinations about criminal**
22      **behavior.**
23 Q   Okay. So with that, I want to transition into the
24      specifics of this case. And I'm not sure if now,
25      or if now anyone would like to take maybe a

Page 24

1      five-minute break. Just, this would be a good time
2      to, otherwise I can keep going.
3          MR. ROMAN: Why don't we just take a
4      brief break.
5          MS. HENDRA: Yeah, so it's 9:50. Can we
6      come back at 9:55?
7          MR. ROMAN: Is that okay with everybody?
8          MS. ZELLNER: Yes.
9          MS. HENDRA: All right. We'll go off the
10      record.
11          (Short recess taken.)
12 BY MS. HENDRA:
13 Q   So I want to turn your attention to April 5th of
14      2021. And on April 5th of 2021, you were employed
15      by the Marathon County District Attorney's Office
16      as an assistant district attorney, correct?
17 A   **Yes.**
18 Q   And were you working on that specific day?
19 A   **Yes.**
20 Q   And on that -- on the morning of April 5th of 2021,
21      did you receive a call from an individual named
22      Officer Eric Krause?
23 A   **I spoke with Officer Eric Krause that morning, yes.**
24 Q   Okay. And can you explain to me the circumstances
25      of that phone call?

Page 25

1 A   **The circumstances as he relayed them to me?**
2 Q   Yes. Or, I'll back up. Can you explain to me, so
3      did Officer Krause call your office and speak with
4      you?
5          MR. ROMAN: I will object to foundation,
6      but go ahead.
7          **THE WITNESS: I believe he initiated a**
8      **call to the District Attorney's office.**
9 BY MS. HENDRA:
10 Q   Okay. And do you recall the circumstances by which
11      that caused Officer Krause to contact the assistant
12      -- or, excuse me, the District Attorney's office?
13          MS. ZELLNER: Object to form.
14          MR. ROMAN: I'll join.
15          MS. JANISCH: Join.
16          **THE WITNESS: As I know the**
17      **circumstances, or became aware of the**
18      **circumstances, he was calling for assistance in an**
19      **investigation that he was conducting.**
20 BY MS. HENDRA:
21 Q   And what investigation are you referring to?
22 A   **The investigation into Christy Mathis.**
23          MR. ROMAN: Can we just briefly go off
24      the record?
25          MS. HENDRA: Yes.

DAVIS   RUNDE
February 27, 2023

Page 26

1           (Off-the-record discussion held.)
2   BY MS. HENDRA:
3   Q   Mr. Runde, I'm actually going to back up a little
4       bit to lay more foundation with this line of
5       questioning.
6           So you previously were telling me about --
7       that Officer Eric Krause initiated a phone call to
8       the District Attorney's office, right, on April 5th
9       of 2021?
10  A   To my knowledge, yes.
11  Q   And that was the morning -- in some morning hours
12      of that day, right?
13  A   Yes.
14  Q   And as a result of him contacting the District
15      Attorney's office by phone that morning -- you
16      were the individual who spoke with him over the
17      phone, correct?
18  A   Yes.
19  Q   And can you explain to me why, or I guess you
20      already explained to me why the circumstances in
21      which Mr. -- or Officer Krause contacted you.  Are
22      you able to recall how long that phone conversation
23      lasted?
24  A   Not with specificity.  Could -- would you -- would
25      it be fair to say that that phone conversation

Page 27

1       lasted less than 20 minutes?
2           MR. ROMAN:  Object to form and
3       foundation.
4           MS. ZELLNER:  Join.
5           MS. JANISCH:  Join.
6           THE WITNESS:  I believe it did.
7   BY MS. HENDRA:
8   Q   Okay.  And, again, I'm just trying to gauge a
9       timeline here.  So are you able to walk me through
10      the conversation that took place over that
11      telephone call?
12  A   To my recollection, I was on the phone with Officer
13      Krause in response to his call with the District
14      Attorney's office.  He explained to me that there
15      was an allegation that a teacher had
16      inappropriately touched a student, and he wanted to
17      know what type of criminal charge, if any, was
18      available based on the information he was providing
19      me.
20  Q   And so what information, then, was he providing you
21      at that time?
22  A   To my recollection, he informed me that two weeks
23      prior to that morning, a student came forward and
24      made an allegation that they were inappropriately
25      touched on their buttocks.  And I believe at that

Page 28

1       -- and I believe he told me the age of the student,
2       and I believe he may have also indicated that
3       additional students witnessed the allegation or the
4       alleged act.
5   Q   All right.  And during that conversation with
6       Officer Krause, was -- in addition to verbal
7       exchanges of information, was there the exchange of
8       any documents or materials that occurred at the
9       time of that phone call?
10  A   Not to my recollection.
11  Q   And do you -- so at that point -- at what point,
12      then -- or, actually, I'll back up.
13          After Officer Krause provided you with all
14      of that information, what did you do next over the
15      phone call with him, or during the phone call with
16      him?
17  A   I informed him, based on the information he was
18      providing me, a possible charge was available.
19  Q   And what was that possible charge?
20  A   First degree sexual assault of a child under the
21      age of 13.
22  Q   Okay.  And I wanted to break that up just a little
23      bit with a few questions.  So earlier you explained
24      to me very generally what information you consider
25      when deciding to charge an individual with a crime,

Page 29

1       correct?
2   A   Correct.
3   Q   And now I want to focus your attention on charging
4       Ms. Mathis with first degree sexual assault of a
5       minor under the age of 13.  Are you able to walk me
6       through your decision to recommend that charge?
7           MR. CARSON:  I'm going to object to the
8       question that it calls for anything outside of the
9       scope of his communications with Krause on August
10      -- or April 5th of 2021.
11          MS. HENDRA:  Okay, and with that, any
12      information that you can remember that does not
13      involve what your -- your attorney's objection.
14          THE WITNESS:  I want to make sure I
15      understand your question.  Is your question
16      premised on a supposed fact that I charged
17      Ms. Mathis at that point of my phone call with
18      Officer Krause?
19  BY MS. HENDRA:
20  Q   Yeah, I think that's a fair -- a fair way to
21      describe it.
22  A   I did not charge her.
23  Q   Okay.  At what point was she charged?
24  A   I believe it was in late April.
25  Q   Okay.  So --

DAVIS  RUNDE
February 27, 2023

---

Page 30

1    MR. ROMAN:  And just to be clear, when
2    you say "charged," that means the issuance of the
3    criminal complaint?
4    MS. HENDRA:  Yes.
5    THE WITNESS:  Yes.
6  BY MS. HENDRA:
7  Q   Okay.  So earlier you said that you explained to
8    Officer Krause that this would be a situation that
9    would call for a charge of first degree sexual
10    assault of a minor under the age of 13, correct?
11  A   Yes.
12  Q   And do you recall what Officer Krause's response
13    was to -- to you saying that?
14  A   Specifically, no.
15  Q   Okay.  Would -- when Officer Krause testified in
16    this matter, he explained that -- he explained that
17    he -- and this is without trying to misstate his
18    testimony, that he was a little surprised by that
19    first degree sexual assault of a minor answer.
20    Would that be fair to say based off of your
21    communications with him during that April 5th phone
22    call?
23    MS. ZELLNER:  Object to form.  Sorry.
24    MR. ROMAN:  I'll join.
25    MS. JANISCH:  Join.

---

Page 31

1    THE WITNESS:  Yes.
2  BY MS. HENDRA:
3  Q   And why would that be a fair characterization of
4    his response?
5  A   In my conversation with Officer Krause, at some
6    point he expressed to me that he thought a possible
7    available charge would have been disorderly conduct
8    or fourth degree sexual assault.
9  Q   And did he explain why he was making that
10    recommendation?
11    MR. ROMAN:  Object to the form.  I don't
12    believe he testified he made a recommendation.
13  BY MS. HENDRA:
14  Q   And I can use a different word.  Did he explain why
15    he thought that those charges might be more
16    appropriate?
17  A   He did not express to me that he believed those
18    charges were more appropriate.
19  Q   Then what did he express to you in providing those
20    two charges as available charges, given the
21    circumstances?
22  A   He did not understand that the information that he
23    was providing me raised or met the elements of a
24    first degree sexual assault of a child under the
25    age of 13.

---

Page 32

1  Q   Okay.  And with that, I am wondering, are you able
2    to explain to me what first degree sexual assault
3    of a minor means under Wisconsin law?
4  A   There are I believe five subsections of that
5    criminal charge.  If my memory serves me correctly,
6    in this conversation with Officer Krause, I was
7    concerned with Subsection E of the statute, which,
8    again, to my recollection, criminalizes sexual
9    intercourse or sexual contact with a child under
10    the age of 13.
11    Sexual contact is defined as I believe
12    intentionally contacting the intimate part of
13    another, and that other is a person under the age
14    of 13.  And intimate part is defined among other
15    things as a buttocks.  And the contact also has to
16    be for the purposes of sexual gratification or
17    sexual humiliation.
18  Q   And in your personal opinion, would you say that
19    first degree sexual assault of a minor is a very
20    serious charge?
21    MR. ROMAN:  Object to form.
22    MS. ZELLNER:  I'll join.
23    MS. JANISCH:  Join.
24    THE WITNESS:  Yes.
25

---

Page 33

1  BY MS. HENDRA:
2  Q   Would you agree that this charge could greatly
3    impact the accused individual's life?
4    MR. ROMAN:  Object to form and
5    foundation.
6    MS. ZELLNER:  I'll join.
7    MS. JANISCH:  Join.
8    THE WITNESS:  I may have misheard you.
9    Did you specifically say "the accused," or did you
10    say anybody?
11  BY MS. HENDRA:
12  Q   I'll say anybody, I'll make it more general.
13  A   Generally, yes.
14  Q   And -- and I just want to confirm that the
15    information that you relied upon in determining
16    that -- determining that this matter was, or,
17    excuse me, that Ms. Mathis should be charged with
18    first degree sexual assault of a minor was based
19    off only the information that Officer Krause was
20    verbally explaining to you over the phone on
21    April 5th?
22    MR. ROMAN:  I'll just object to the form.
23    Are you talking about that decision that day, or
24    that discussion that day, not later?
25    MS. HENDRA:  That day.  We're only on

---

DAVIS   RUNDE
February 27, 2023

Page 34

1    that day at this point.
2         THE WITNESS:  My -- or the information I
3    gave to Officer Krause that an available charge
4    would be first degree sexual assault of a child
5    under the age of 13 was based on the information he
6    provided me over the phone that morning.
7    BY MS. HENDRA:
8    Q    And that did not include any documents or materials
9         that he gathered during his investigation of the --
10        of the allegations, correct?
11   A    I did not review any documents during that phone
12        call.
13   Q    Okay.  And would it be accurate to say that Officer
14        -- or following you advising Officer Krause that an
15        available charge would be first degree sexual
16        assault of a minor under the age of 13, is it true
17        that he suggested writing up some sort of a
18        narrative that he could submit to the District
19        Attorney's office to determine whether an arrest
20        warrant would be needed?
21   A    I do not recall that portion of our communication
22        if that -- if that occurred.
23   Q    In your experience as an assistant district
24        attorney, are there certain circumstances under
25        which generally speaking an officer would provide

Page 35

1    you with a narrative to help determine whether an
2    arrest warrant would be necessary?
3    A    Generally an arrest warrant was utilized in the
4         District Attorney -- in the Marathon County
5         District Attorney's Office when there was a risk or
6         knowledge that a suspect was fleeing.  And an
7         arrest warrant was a way that would give other
8         jurisdictions sufficient authority to also arrest
9         that individual.
10   Q    Okay.  If I told you that Officer Krause explained
11        that you informed him that this narrative would not
12        be appropriate and that he should just go make the
13        arrest, if I told you that, would that be accurate?
14        MS. ZELLNER:  I'm going to object to the
15        form.  I think it misstates his testimony.
16        MR. ROMAN:  I will join.
17        MS. JANISCH:  Join.
18        MS. CARSON:  Join.
19        THE WITNESS:  I don't recall telling him
20        that it was inappropriate.
21   BY MS. HENDRA:
22   Q    Do you recall -- well, I'll back up.  Did you give
23        Officer Krause any instructions as to making an
24        arrest of Ms. Mathis?
25        MR. ROMAN:  I'll object to form and

Page 36

1    foundation.  Are you talking the first phone call?
2    BY MS. HENDRA:
3    Q    Yeah, I'm still on this very first phone call on
4         the morning of April 5th prior to the arrest.
5    A    Would you reask the question?  I apologize.
6    Q    Yeah, so at any point during that phone call with
7         Officer Krause, did you instruct him to initiate
8         the arrest of Ms. Mathis?
9    A    I do not recall.
10   Q    Okay.  Do you recall at what point you instructed
11        Officer Krause to initiate the arrest of Ms.
12        Mathis?
13   A    I don't recall ever instructing Officer Krause to
14        arrest Ms. Mathis.
15   Q    Do you recall if someone else at your office
16        instructed Officer Krause to arrest Ms. Mathis?
17   A    I have -- I do not recall that.
18   Q    Okay.
19   A    May I -- I understand what you're trying to get at.
20        I think I can offer my general practice in these
21        situations.
22   Q    That would be helpful.
23   A    Generally I would not instruct an officer to go do
24        anything.
25   Q    Mm-hmm.

Page 37

1    A    I would generally tell them they have the ability
2         or the requisite legal requirements to initiate an
3         arrest if they want.
4    Q    Okay.  And that is extremely helpful.  Do you
5         recall if that was something that occurred during
6         this phone call with Officer Krause?
7         MS. CARSON:  Can we clarify, any phone
8         calls on April 5th, or still on that first?
9         MS. HENDRA:  I'm still on that first
10        phone call.
11        MS. CARSON:  Okay.
12        THE WITNESS:  I do not recall.
13   BY MS. HENDRA:
14   Q    So do you recall if that -- if that occurred on any
15        phone call on April 5th with Officer Krause?
16   A    I do not recall.
17   Q    Do you recall how many phone calls or
18        communications occurred between your office and
19        Officer Krause prior to the arrest being made on
20        April 5th?
21   A    I do not know the number of communications between
22        my office and Officer Krause.
23   Q    Okay.  And --
24   A    Excuse me, by my office, I mean the Marathon County
25        District Attorney's Office.

DAVIS   RUNDE
February 27, 2023

Page 38

1    Q    Right.  Right.  But would it be fair to say that at
2         some point on April 5th, 2021, Officer Krause and
3         law enforcement did arrest Ms. Mathis as related to
4         the first degree sexual assault of a minor under
5         the age of 13?
6    A    **The knowledge that I have of that occurring was**
7         **only refreshed based on my review of the materials**
8         **in preparation for today.  I do not have a personal**
9         **recollection that Ms. Mathis was arrested on August**
10        **-- or on April 5th, 2021.**
11   Q    Okay.  So if I represented to you that Ms. Mathis
12        was arrested on April 5th, 2021, would you have any
13        reason to dispute that?
14   A    **No.**
15   Q    Okay.  And just during that first -- or that phone
16        call with Officer Krause, I think we've been
17        calling it that first phone call with him on
18        April 5th that morning, do you recall how that
19        phone call ended?
20   A    **No.**
21   Q    Okay.  And just to confirm earlier, you don't
22        recall approximately how many minutes you were on
23        the phone with Officer Krause?
24   A    **Not with specificity.**
25   Q    Okay.  So at any point during your phone call with

Page 39

1         Officer Krause, did you consider whether it was
2         appropriate to charge Ms. Mathis with anything
3         other than the first degree sexual assault of a
4         minor under the age of 13?
5    A    **Yes.**
6    Q    And what other potential charges were you
7         considering at that time?
8    A    **Officer Krause's statement that a disorderly**
9         **conduct would be a possible charge, in my**
10        **professional opinion, was not incorrect.  So I**
11        **believe that was an available charge, and I did**
12        **consider that.  But the information provided to me**
13        **in my opinion met the level of first degree sexual**
14        **assault of a child under the age of 13.**
15   Q    Okay.  And same question, prior to the arrest being
16        made on April 5th of 2021, did you consider whether
17        any other charge would be appropriate of
18        Ms. Mathis, given the information you were
19        provided?
20   A    **Not that I recall.**
21   Q    Okay.  And as we established before, Ms. Mathis was
22        arrested sometime in the afternoon of April 5th of
23        2021, correct?
24             MR. ROMAN:  I'll object, I believe he
25        testified he didn't recall.

Page 40

1             MS. HENDRA:  Okay.
2             MR. ROMAN:  Or have specific information.
3         **THE WITNESS:  I have no reason to dispute**
4         **that.**
5    BY MS. HENDRA:
6    Q    Okay.  And would it be fair to say that Ms. Mathis
7         was taken into custody immediately following the
8         arrest?
9    A    **I do not have personal knowledge of that.**
10   Q    Okay.  And I'm going to refer you now to a document
11        that we've already marked as an exhibit, and it is
12        labeled Exhibit 70.
13   A    **Okay.**
14   Q    And do you have this up on your screen?
15   A    **I do now.**
16   Q    Okay.  And do you know what this document is?
17   A    **It appears to be a series of police reports by the**
18        **Mosinee Police Department, and drafted by Officer**
19        **Eric Krause.**
20   Q    Okay.  And have you seen this document before?
21   A    **Yes, in preparation for today.**
22   Q    Okay.  And prior to today, and you could take a
23        moment just to flip through some of the pages
24        briefly, do you recall seeing any of the documents
25        that make up this Exhibit Number 70?

Page 41

1    A    **Generally, yes.**
2    Q    Okay.  Okay.  And do you recall approximately what
3         date you first saw these -- the documents that make
4         up Exhibit 70?
5    A    **No.**
6    Q    And I understand that you might have -- or, excuse
7         me, you might have seen these on a rolling basis,
8         maybe they weren't presented to you all at one
9         time, but do you recall maybe approximately even
10        what month you saw these documents?
11   A    **No.**
12   Q    Okay.  Do you recall approximately at what point a
13        request was made to obtain these documents?
14   A    **No.**
15   Q    And then would it be fair to say you don't -- you
16        might not recall at what -- approximately what date
17        the DA's office actually received these documents?
18   A    **I do not recall.**
19   Q    Would you say that it's fair -- it would be fair to
20        say that these documents were received by the DA's
21        office following the April 5th arrest?
22   A    **Yes, I believe that is fair to say.**
23   Q    Okay.  And recall what documents and other
24        materials the District Attorney's office relied on
25        in prosecuting Ms. Mathis in, I think the case

DAVIS   RUNDE
February 27, 2023

Page 42

```
 1        number was 21CV543?
 2              MR. ROMAN:  I'll object to the form by
 3        prosecuting, that's a lengthy period of time.
 4              MS. HENDRA:  Yeah, I can specify.
 5   BY MS. HENDRA:
 6   Q    Do you recall if in looking at Exhibit Number 70,
 7        if any of these documents were referred to or
 8        relied upon in the State's prosecution of
 9        Ms. Mathis in 21CV543?
10              MR. ROMAN:  Again, I object to the form
11        of prosecution.  I think you have to break that
12        down.  If you're talking just generally, I just, I
13        want to be clear that there's different stages of a
14        prosecution.
15              MS. HENDRA:  Okay, and you know what, it
16        might be helpful if I -- my plan is to run through
17        some of the events that occurred, so I could refer
18        back to this at that point.  Just give me one
19        moment.
20              MR. ROMAN:  Sure.
21              MS. HENDRA:  I just want to look at my
22        notes.
23   BY MS. HENDRA:
24   Q    Do you recall if there was any documents or other
25        sorts of materials the district attorney relied
```

Page 43

```
 1        upon, other than the documents -- you know,
 2        actually, strike that, I'm going to ask that when I
 3        get to my other questions.
 4              So I want to refer you to -- I'm going to
 5        mark an exhibit now, it's going to -- it's entitled
 6        "criminal case transcripts."  Just let me know when
 7        you have that open.
 8   A    Okay, it's open.
 9   Q    Okay.  And we're going to be marking this as
10        Exhibit number -- off the record.
11              (Off-the-record discussion held.)
12   BY MS. HENDRA:
13   Q    I'm going to have the court reporter mark what will
14        be Exhibit Number 88 in this case.  And I'll give
15        you a moment to look through this.  It's lengthy,
16        but just to refresh your recollection of what --
17        what this document makes up.
18   A    I'm generally aware.
19   Q    Okay.  And what would -- what is Exhibit Number 88?
20   A    It is copies of the criminal complaint and the bond
21        and, um, court hearing transcripts related to the
22        prosecution of Christy Mathis as it relates to the
23        first degree sexual assault of a child under the
24        age of 13 that we're discussing today.
25   Q    Okay.  And do you believe this to be a true and
```

Page 44

```
 1        accurate copy of those documents?
 2              MR. ROMAN:  Object to form.
 3              MS. ZELLNER:  Join.
 4              MS. JANISCH:  Join.
 5              THE WITNESS:  I have no reason to believe
 6        that these are not true and correct.
 7   BY MS. HENDRA:
 8   Q    Okay.  And I'm going to turn your attention to the
 9        very first page, and it's got the Bates Number
10        Mosinee 207.  Do you see that?
11   A    Yes.
12   Q    And this is the criminal complaint that you just
13        mentioned, correct?
14   A    The face sheet of the criminal complaint, yes.
15   Q    Okay.  And do you recall approximately what date
16        this complaint was filed?
17   A    Approximately, I believe the later third of April,
18        2021.
19              MR. ROMAN:  Can we just briefly go off
20        the record?
21              MS. HENDRA:  Sure.
22              (Off-the-record discussion held.)
23   BY MS. HENDRA:
24   Q    All right, and we briefly discussed Exhibit 88.
25        I'm going to also introduce another exhibit while
```

Page 45

```
 1        we discuss Exhibit 88, and it's going to be Exhibit
 2        89.  And it's in our files labeled, "Criminal
 3        Complaint Filed 4/23/21"?
 4   A    I have that up.
 5   Q    One second.  All right.  And do you recognize this
 6        document, Mr. Runde?
 7   A    Yes.
 8   Q    What do you recognize this document to be?
 9   A    The criminal complaint that was filed against
10        Christy Mathis in Marathon County Case Number
11        21CF543.
12   Q    If you look -- well, I'll ask you, does this appear
13        to be a true and accurate copy of that criminal
14        complaint filed against Ms. Mathis?
15   A    Yes.
16   Q    And if you look two lines under where it says,
17        "State of Wisconsin, County of Marathon," it says
18        "Count 1, first degree child sexual assault.
19        Sexual contact with a child under age 13."  Do you
20        see that?
21   A    Yes.
22   Q    And that -- would you agree that that's the charge
23        that the State -- or that that is the charge that
24        the State has charged Ms. Mathis with?
25   A    Yes.
```

DAVIS   RUNDE
February 27, 2023

Page 46

1   Q   And so if you go to the second paragraph, it starts
2       with "the basis"?
3   A   Yes.
4   Q   It says, "The basis for Complainant's charge of
5       such offenses is, colon, Complainant is a law
6       enforcement officer in Marathon County and makes
7       this complaint based upon review of police reports
8       drafted by Eric Krause of the Mosinee Police
9       Department. Your Complainant believes that said
10      reports can be relied upon as a basis for probable
11      cause, because each of the aforementioned officers
12      purported to have investigated the matters related
13      herein, and to have prepared said report in the
14      regular course of duty as law enforcement officers.
15      Moreover, your Complainant has found each of said
16      officers to be truthful and accurate in the
17      performance of their respective professional
18      duties."
19             The next paragraph then says, "This
20      complaint is further based upon Defendant's
21      statements believed to be truthful and reliable as
22      they are made against his penal interest. This
23      complaint is further based upon statements of
24      citizen witnesses believed to be truthful and
25      reliable as made by citizen witnesses to the facts

Page 47

1       related and based upon your Complainant's review of
2       reports. Your Complainant knows the following
3       information." Did I read that correctly?
4   A   Yes.
5   Q   And is that an accurate summation of all the
6       information that was relied upon in filing this
7       complaint?
8              MR. ROMAN:  Object to form and
9       foundation.
10             MS. ZELLNER:  Join.
11             MS. JANISCH:  Join.
12             MS. HENDRA:  Join.
13             THE WITNESS:  I think I need to explain.
14      I am not -- I was not the Complainant in this
15      criminal complaint.
16  BY MS. HENDRA:
17  Q   Okay.  And who is that Complainant in this criminal
18      complaint?
19  A   Greg Hagenbucher.
20  Q   And who is Greg Hagenbucher?
21  A   Greg Hagenbucher is employed with the Marathon
22      County District Attorney's Office as an
23      investigator, and, um, at times would testify in
24      preliminary hearings.
25             So, um, procedurally, a Complainant makes

Page 48

1       -- provides the information that creates the basis
2       of the criminal complaint, which is why at the
3       bottom of this criminal complaint, Exhibit 89, it
4       says, "Electronically signed by Hagenbucher,
5       Complainant."
6   Q   And then it also says, "Electronically signed by
7       Davis Runde, Assistant District Attorney," correct?
8   A   Yes.
9   Q   So did you personally draft this complaint?
10  A   I do not recall.
11  Q   Okay.
12  A   Typically -- typically the attorneys do draft the
13      complaints.  They send them to the Complainant for
14      review.  The Complainant signs the complaint and
15      then the assistant district attorney or district
16      attorney signs the complaint.
17  Q   Okay.  And if you look at what is marked as PL143
18      and PL144, it starts with the very top line,
19      "Investigator, colon, Krause, Eric J."  Do you see
20      that?
21  A   Yes.
22  Q   So what was the purpose in including these pages
23      with the complaint?
24             MR. ROMAN:  Object to foundation.
25             MS. ZELLNER:  Join.

Page 49

1              THE WITNESS:  So -- is everyone done with
2       objections?  Okay.  I understand my name is signed
3       to this complaint, but I do not recall drafting
4       this complaint.  I can speak generally why that
5       information is included, though.
6   BY MS. HENDRA:
7   Q   Okay.  Okay, can you explain that, please?
8   A   Any information contained in a criminal complaint
9       needs to have a -- it needs to have somebody to
10      attribute the information to.  So Officer Krause is
11      the officer reporting the information that is
12      contained below his name.
13  Q   Okay.
14  A   He's providing -- in theory, he's providing that
15      information to the Complainant, Greg Hagenbucher.
16  Q   And why would this information be provided to the
17      Complainant, and in this case, Greg Hagenbucher?
18             MR. ROMAN:  Object to form and foundation
19      that Officer Krause provided it to Hagenbucher.
20             MS. ZELLNER:  Join.
21             MS. JANISCH:  Join.
22             THE WITNESS:  Again, I said that this is
23      in theory.  So it's a procedural rule that the
24      Complainant is bringing forth the information which
25      is the basis of the charges that the assistant

DAVIS   RUNDE
February 27, 2023

Page 50

1     district attorney is bringing.
2  BY MS. HENDRA:
3    Q   Do you recall what information or documentation was
4        provided by the District Attorney's office to
5        Mr. Hagenbucher prior to the filing of this
6        complaint?
7    A   **The only information that Mr. Hagenbucher was**
8        **provided was the information contained within the**
9        **drafted criminal complaint.**
10   Q   And when you say the information contained within
11       the drafted criminal complaint, are you referring
12       to PL142 and PL143, I guess it goes -- excuse me,
13       it's PL143 and PL144?
14           MR. ROMAN:  Object to form.  He said the
15       entire criminal complaint, which would be all the
16       pages, I think.
17           THE WITNESS:  Correct.
18   BY MS. HENDRA:
19   Q   So it would be PL143 through PL144?
20   A   **Yes.**
21   Q   Okay.  Okay, so do you -- so we've previously -- I
22       asked you when this complaint was filed.  Do you
23       see that -- would it be fair to say that this
24       complaint was filed with the Clerk of Circuit Court
25       of Marathon County on April 23rd of 2021?

Page 51

1    A   **Yes.**
2    Q   Okay.  So I'm going to turn your attention to
3        Exhibit 88, and I'm going to ask that you turn to
4        page Bates-marked City of Mosinee 212.
5    A   **Yes.**
6    Q   Okay.  And would this City of Mosinee 212 through
7        what is Bates-marked City of Mosinee 220, would
8        that -- would this be the transcript that
9        summarized a probable cause hearing -- excuse me --
10       that doesn't summarize -- I'll back up.
11           Would pages City of Mosinee 212 through
12       City of Mosinee 220 be the transcript of the
13       April 6th, 2021, probable cause hearing in 21CF543?
14   A   **It appears to be, yes.**
15   Q   Okay.  And if you look on City of Mosinee 212, it
16       says, "Appearances for the Plaintiff, Attorney
17       Hannah Boeck"?
18   A   **It's pronounced "boik", but.**
19   Q   I apologize.
20   A   **It's okay.**
21   Q   And for Defendant, Attorney Jessa K. Nicholson
22       Goetz; do you see that?
23   A   **Yes.**
24   Q   Who is Attorney Hannah Boeck?
25   A   **She was and is an assistant district attorney in**

Page 52

1        Marathon County.
2    Q   Okay.  And she appeared at this hearing; is that
3        true?
4    A   **Yes.**
5    Q   Did -- so based off of this appearances list, would
6        it be fair to say you didn't personally appear at
7        this hearing in 21CF543?
8    A   **Yes, that would be fair to say.**
9    Q   Okay.
10   A   **And I do not have recollection of appearing at that**
11       **hearing.**
12   Q   Okay.  And if you look through this document, it
13       appears as though on City of Mosinee 215, or,
14       excuse me, City of Mosinee 218 towards the bottom,
15       it's Line 14, the Court set a $10,000 signature
16       bond with the first 5,000 in cash; is that right?
17   A   **Yes.**
18   Q   And the Court also scheduled a preliminary hearing
19       for June 1st of 2021, that -- I'll represent to you
20       that's not in the document, but to the best of your
21       recollection, did the Court then schedule a
22       June 1st, 2021, preliminary hearing?
23   A   **I do not have personal recollection of that.**
24   Q   Okay.
25   A   **I -- I don't mean to be evasive.  The -- I was**

Page 53

1        **involved with this case in conjunction with**
2        **Attorney Molly Lawrence.**
3    Q   Mm-hmm.
4    A   **So there may be some things that occurred that I**
5        **did not actually partake in, so I don't have**
6        **knowledge of those events.**
7    Q   And that's, you know, more than fair.  I'm not
8        going to ask you to speculate, and I understand not
9        only was this case a couple years ago, you've also
10       left the District Attorney's office since then, and
11       I'm sure you had many cases.
12           So, again, I'm not going to ask you to
13       speculate, and I appreciate the clarification.  But
14       I guess what I can do, then, is I'll refer you to
15       City of Mosinee 221.  And would you start reading
16       at that page, and would this -- would you say that
17       you agree that a preliminary hearing was then held
18       on June 1st of 2021?
19   A   **Yes.**
20   Q   Okay.  And it says, "Attorney Anita M. Lawrence
21       appeared on behalf of Plaintiff."  That's Molly
22       Lawrence, same person, correct?
23   A   **Yes.**
24   Q   Okay.  And for Defendant, Attorney Jessa K.
25       Nicholson also appeared; is that right?

DAVIS   RUNDE
February 27, 2023

Page 54

1   A   Yes.
2   Q   All right.  And it's fair to say based off of this
3       list of appearances, that you did not personally
4       appear at this hearing, correct?
5   A   Correct.
6   Q   Okay.  And this was, as we just discussed, was for
7       a preliminary hearing on June 1st of 2021.  Can you
8       explain to me what generally speaking a preliminary
9       hearing is?
10  A   Generally speaking, it is a hearing to determine
11      whether there is probable cause that, A, not
12      necessarily the specific charged felony, but that a
13      felony was committed by the Defendant.
14  Q   Okay.  And if you read through this transcript, it
15      looks like Ms. -- excuse me, I'm sorry,
16      Ms. Lawrence took -- one second, I apologies.  So
17      it appears as though at the end of the hearing,
18      towards -- so I'll point you to page City of
19      Mosinee 229, Line 7, the Court decided that it was
20      going to order that each of the parties submit
21      written arguments as to why it should or should not
22      bind this case over, right?
23  A   Yes.
24  Q   And if you continue reading, the Court would then
25      issue a decision at a later date?

Page 55

1   A   Yes.
2   Q   And can you describe to me what your understanding
3       of the term "bind over" is?
4   A   Yes.  Bind over is -- occurs after the State puts
5       on its evidence for preliminary hearing, and makes
6       a motion to the Court to bind the Defendant over
7       for trial for a felony.  And it's -- it's a
8       procedural part of a criminal case.
9   Q   Okay.  And if -- so, and if you keep reading, it
10      looks like the Court set a briefing schedule, and
11      the June 1st matter was adjourned, correct?
12  A   Yes.
13  Q   And if you move on to City of Mosinee 233.
14  A   Yes.
15  Q   Under appearances for Plaintiff it says your name,
16      right?
17  A   Yes.
18  Q   And then it was for a hearing on August 11th of
19      2021, correct?
20  A   Yes.
21  Q   Do you recall what this hearing was scheduled for?
22  A   It was the -- to my recollection, it was the
23      Court's oral ruling on the issue of whether there
24      was probable cause to bind the Defendant over.
25  Q   Okay.  And to the best of your recollection prior

Page 56

1       to this hearing, both sides, the Plaintiff and
2       Defendant, submitted written briefs?
3   A   Yes.
4   Q   Do you recall what the Court's finding was at this
5       hearing?
6   A   Generally the -- my recollection is that the Court
7       determined that probable cause did not exist and
8       dismissed the case without prejudice.
9   Q   Okay.  And the Court then inherently did not bind
10      this matter over, correct?
11  A   Correct.
12  Q   And when you said the Court dismissed this matter
13      without prejudice, I'm going to refer you to City
14      of Mosinee 235, Line 5.  Well, I'll move up.  Line
15      3.
16          And it says, the Court says, "Is there any
17      question about whether -- I believe it would be
18      without prejudice, if I'm correct?"  And you say,
19      "Yes, Your Honor.  It would be without prejudice if
20      there's new information the State can present to
21      the Court."  Do you see that?
22  A   Yes.
23  Q   So did the -- did the State at any point following
24      this August 11th, 2021, hearing present any new
25      evidence to the Court with regards to any

Page 57

1       prosecution of Ms. Mathis resulting from any
2       inappropriate touch -- excuse me, resulting from
3       the inappropriate touch incident that is the
4       subject matter of its -- of the criminal complaint
5       it filed?
6           MR. ROMAN:  I'll object to form and
7       foundation.
8           MS. ZELLNER:  Join.
9           MS. JANISCH:  Join.
10          THE WITNESS:  To my recollection and
11      knowledge, I do not recall any additional
12      information being presented to the Court following
13      the dismissal.
14  BY MS. HENDRA:
15  Q   Okay.  And you just said that as a result of this
16      matter being dismissed, the Court -- the Court also
17      did not bind this over for trial, correct?
18  A   Correct.
19  Q   And in your experience, and I'm asking you to
20      estimate how many cases that you prosecuted have
21      not been bound over for trial?
22          MR. ROMAN:  Object to form and
23      foundation.
24          MS. ZELLNER:  I'll join.
25          MS. JANISCH:  Join.

DAVIS   RUNDE
February 27, 2023

Page 58

1        MS. CARSON:  Join.
2        THE WITNESS:  You're asking me
3    personally, my personal caseload?
4    BY MS. HENDRA:
5    Q    Yes, yours.  And I'm just asking you to estimate.
6    A    I would estimate under ten.
7    Q    Okay.  So would that be over the course of your
8         career at the District Attorney's office?
9    A    Yes.
10   Q    Okay.  And you'd agree, then, that this case here
11        was not bound over for trial, right?
12   A    I do agree with that, yes.
13   Q    Okay.  And you did say -- you mentioned earlier
14        that to your knowledge, the State did not bring
15        about any new charges against Ms. Mathis following
16        the dismissal in this matter, correct?
17   A    My recollection, no.
18   Q    Do you know why?
19        MS. CARSON:  I'm going to object to the
20        point that calls for any privileged
21        information that Mr. Runde received from his
22        client.
23   BY MS. HENDRA:
24   Q    You can answer subject to that.
25   A    Could you restate the question?

Page 59

1    Q    Yeah, so subject to your attorney's objection, or,
2         excuse me, subject to any communications or
3         information that your attorney just objected to, to
4         your knowledge, do you know why the State did not
5         bring about any new charges against Ms. Mathis?
6    A    I don't believe I can answer the question with any
7         information that is excluded from that privilege.
8    Q    Okay.
9         MS. JANISCH:  Attorney Hendra, I'm so
10        sorry to interrupt, I'm sure you're probably coming
11        towards the end, but do you mind if we take a
12        couple minutes here?  I need a minute to just deal
13        with something.
14        MS. HENDRA:  Sure, I only have like two
15        more questions, or do you guys want to set a
16        five-minute time, or?
17        MR. ROMAN:  Why don't we say at a quarter
18        after.
19        (Short recess taken.)
20   BY MR. ROMAN:
21   Q    So previously before the break we discussed that
22        21CV543 was dismissed without prejudice by the
23        Court, correct?
24   A    Yes.
25   Q    And, generally, would you happen to know the

Page 60

1         dismissal rate for other prosecutors in the
2         Marathon County District Attorney's Office?
3         MS. ZELLNER:  Object to form.
4         MR. ROMAN:  I'll join.
5         MS. JANISCH:  Join.
6         THE WITNESS:  Dismissed in the context of
7    your question, dismissal at preliminary hearing?
8    BY MS. HENDRA:
9    Q    Yeah, at preliminary hearing.
10   A    I do not know a dismissal rate, in any general
11        terms.
12   Q    Okay.
13   A    Generally I guess it's low.
14   Q    All right.  So then would it be fair to say that
15        based off a general characterization of a
16        low-dismissal rate within the Marathon County
17        District Attorney's Office, that 21CF543 would be
18        part of that small population of cases that are
19        dismissed at preliminary hearing?
20   A    Yes.
21   Q    Okay.  And that's all I have, so I understand the
22        other attorneys might have some questions, so.
23        MS. ZELLNER:  Do you want me to go first?
24        MR. ROMAN:  Sure.
25        MS. HENDRA:  Yeah, whoever wants to.

Page 61

1        E X A M I N A T I O N
2    BY MS. ZELLNER:
3    Q    Mr. Runde, I'm Kiley Zellner, I represent Officer
4         Krause.  How are you?
5    A    Good.  How are you?
6    Q    Good.  I just have a few additional questions for
7         you.  During your testimony you talked about at
8         times where cases were referred to you to then
9         review and determine a charge; is that correct?
10   A    Yes.
11   Q    Do you recall during your phone conversation with
12        Officer Krause on April 5th of 2021 whether or not
13        he indicated to you a preference or a thought that
14        perhaps it would be best if he referred the case to
15        you for review?
16   A    I do not recall that.
17   Q    And you stated when those cases came in, whether or
18        not they already had a charge essentially assigned
19        to them by the officer or something, that it was
20        the attorney's responsibility to review and
21        determine appropriate charge, correct?
22   A    Yes.
23   Q    And presumably then if a case was referred to you
24        with a charge attached to it that you disagreed
25        with, that would be at your discretion to change

DAVIS   RUNDE
February 27, 2023

1    that charge; is that correct?
2        MS. HENDRA:  I'll object to form and
3    speculation.
4        MS. CARSON:  Join.
5        THE WITNESS:  Could you reask that
6    question, please?
7    BY MS. ZELLNER:
8    Q    Sure.  Let's assume that a set of reports came in
9    where an officer intended to charge one crime, you
10   reviewed it.  Would it be at your discretion then
11   to change what the officer originally suggested as
12   the charge?
13       MS. HENDRA:  I'll object to form and
14   hypothetical.
15       MS. CARSON:  Join.
16       THE WITNESS:  Yes.
17   BY MS. ZELLNER:
18   Q    When discussing your responsibilities as a district
19   attorney, one of the things you mentioned was an
20   ethical obligation; do you recall that?
21   A    Yes.
22   Q    And, generally, is that ethical obligation, if I'm
23   understanding it correctly, not to bring a charge
24   that you didn't believe could be proved beyond a
25   reasonable doubt?

1    A    Yes.
2    Q    During decisions as to what if any charges to
3    bring, I believe that you mentioned that you could
4    request to review additional reports, videos,
5    things like that; is that correct?
6    A    Yes.
7    Q    Do you recall if on April 5th of 2021 during any of
8    your conversations with Officer Krause, that if you
9    requested any additional information, reports,
10   videos, anything from him?
11   A    I did not ask for written reports, or photos, or
12   videos, or documentary evidence, that I recall.
13   Q    And one of the questions that you were asked
14   earlier regarding -- was regarding whether or not
15   there were any instructions as to whether or not
16   Officer Krause should arrest Ms. Mathis.
17        At this point I'd like to introduce Exhibit
18   Number 90, I believe, is that correct?  And that
19   would be that document that was just uploaded.  Do
20   you have that up in front of you?
21   A    The document that is titled in the Dropbox file
22   "DCI Report Runde Interview," yes, I have that up.
23   Q    Okay.  And do you recall being interviewed by the
24   Wisconsin Division of Criminal Investigation?
25   A    Yes.

1    Q    And would that have occurred on or about June 2nd
2    of 2021?
3    A    Yes.
4    Q    And I know that you had a chance to briefly review
5    this.  I would draw your attention to, if we're
6    looking at the second page of the document,
7    essentially the third paragraph up from the bottom.
8    Can you review that for me for one second?
9        MS. HENDRA:  What page?  I'm sorry,
10   Kiley.
11       MS. ZELLNER:  It would be the second
12   page.
13       MS. HENDRA:  Okay.
14       MR. ROMAN:  So 00677.  It actually says
15   page 1, but it's page 2 of the exhibit.
16       MS. ZELLNER:  Correct, yes.
17       THE WITNESS:  I see that paragraph.
18   BY MS. ZELLNER:
19   Q    Okay, does that refresh your recollection as to
20   whether or not you suggested to Officer Krause to
21   arrest Ms. Mathis?
22   A    No.
23   Q    It does not refresh your recollection?
24   A    No, I -- I read it, and I understand what it says,
25   but I -- it does not bring up a recollection of

1    that.
2    Q    Okay.  Was there a second phone call with Officer
3    Krause on April 5th of 2021?
4    A    Yes, I believe there was.
5    Q    And do you recall whether or not Officer Krause at
6    any point on April 5th of 2021 asked you to double
7    check with another district attorney regarding the
8    charge in this matter?
9    A    I don't believe he asked me to double check with
10   somebody.
11   Q    Did you tell him that you were going to double
12   check with somebody regarding the charge?
13   A    I -- my general practice is when those types of
14   calls come in where it's relatively quick decision,
15   I generally seek a second opinion.  So I don't -- I
16   don't specifically recall telling him I'm going to
17   seek a second opinion.  I believe I did, though.
18   Q    You reviewed the preliminary hearing transcript
19   just earlier in your testimony.  Would you agree
20   that the alleged victim was not called as a witness
21   in the preliminary hearing?
22   A    Yes.
23   Q    Would you agree with me that none of the other
24   students who allegedly witnessed the incident were
25   called as witnesses at the preliminary hearing?

DAVIS   RUNDE
February 27, 2023

Page 66

1   A   Yes.
2   Q   And is that essentially the prosecuting attorney's
3       decision who to call as a witness at a preliminary
4       hearing?
5   A   Yes.
6   Q   And the decision to dismiss the case by the Court
7       following the preliminary hearing, that was a
8       decision based on whether or not there was probable
9       cause for a crime, correct?
10  A   Correct.  The Court had already found that probable
11      cause existed for a crime, but in the preliminary
12      hearing determination, it was a probable cause of a
13      felony.
14  Q   And a disorderly conduct, is that a felony in
15      Wisconsin?
16  A   Can be.
17  Q   Can it also be a misdemeanor?
18  A   Yes.  I should qualify, it can be if there's
19      certain enhancements with the crime of -- the base
20      crime of disorderly conduct.
21  Q   Understood.  Do you recall any other communications
22      besides the two phone calls with Officer Krause
23      prior to the criminal complaint being filed?
24          MS. CARSON:  Can I just stop for a
25      minute?  Is that as of April 23rd, 2021?  You're

Page 67

1       asking if he communicated with Krause after
2       April 5th, before April 23rd?
3           MS. ZELLNER:  Correct, yes, thank you.
4           MS. CARSON:  He does not have a waiver to
5       speak about those communications.
6   BY MS. ZELLNER:
7   Q   Okay, so I guess just to clear up, only two phone
8       calls with Officer Krause on April 5th of 2021; is
9       that correct?
10  A   I -- my com -- my communications with Officer
11      Krause were not limited to two phone calls on
12      April 5th, 2021.
13  Q   Okay.  And can you explain that to me?  I guess
14      maybe I'm missing the distinction.
15  A   At one point I recall text messaging with Officer
16      Krause regarding whether social services had been
17      contacted yet.  And that I believe occurred in the
18      afternoon of April 5th, 2021.
19  Q   Any other communication on April 5th of 2021?
20  A   Not that I recall.
21  Q   And do you recall generally what the second phone
22      call with Officer Krause was regarding?
23  A   I believe it was, to my recollection, confirming
24      with him that an available charge would be, based
25      on the information provided to me, would be first

Page 68

1       degree sexual assault of a child under the age of
2       13, and that he had probable cause to arrest.
3   Q   I have no further questions.
4           MR. ROMAN:  I just have a few follow-up
5       questions.
6               E X A M I N A T I O N
7   BY MR. ROMAN:
8   Q   And I'm going to sort of broaden it out just to --
9       so I'm going to ask you some general questions just
10      so I understand how the Marathon County District
11      Attorney's Office was structured at the time we're
12      talking about, so I'd like to bring your attention
13      back to March/April 2021.  Okay?
14  A   Yes.
15  Q   At that point, if I understand it, who was the
16      district -- I should say, who was the district
17      attorney, the elected district attorney of Marathon
18      County at that point?
19  A   Theresa Wetzsteon.
20  Q   Okay.  And do you know how long she had been in
21      office as district attorney?
22  A   I believe she was elected in November of 2016.
23  Q   And do you know how long she had been with the
24      District Attorney's office before she was elected
25      DA?

Page 69

1   A   I believe at the -- my recollection is at the time
2       Attorney Wetzsteon was elected as district
3       attorney, I believe she had at least 15 years of
4       experience as an assistant district attorney?
5   Q   And just generally, do you know if there was any --
6       and you identified that when you were -- at least
7       for a portion of when you were the assistant
8       district attorney, that dealt with sort of
9       specialty cases which you referred to as sexual
10      assault and domestic abuse situations, correct?
11  A   Yes.
12  Q   Do you know if the district attorney ever had any
13      background or experience within the Marathon
14      County's District Attorney's Office in a similar
15      capacity of dealing with specialty cases involving
16      sexual assaults or anything of that manner?
17  A   Sorry, is that coming through?
18  Q   Could you hear me?
19  A   No.  There's construction in our building, and it
20      sounds like -- is that coming through for you?
21  Q   I could hear you.
22  A   Okay.
23  Q   Oh, no, that, I didn't hear any of that.
24  A   Sorry.  Yes, Attorney Wetzsteon had a history of
25      specialization in felony sexual assaults.  And at

DAVIS   RUNDE
February 27, 2023

Page 70

1    one point for, I believe several years, prosecuted
2    every felony sexual assault in Marathon County.
3  Q  So once you became involved, is that sort of how
4    the office was set up?  You talk about different
5    specialty, I think you mentioned there was OWI,
6    there were other things.  Does Marathon County, in
7    the time frame we're talking about, the spring of
8    2021, did that have a breakdown as far as district
9    attorneys that would handle particular cases as
10   opposed to being just generalists across the board?
11 A   Yes, I believe -- but I believe every attorney in
12   the office at that time had at least one specialty.
13 Q   Do you know if anybody else besides yourself was
14   sort of the specialty, as you indicated, the sexual
15   assault and/or domestic violence?
16 A   Yes.
17 Q   Who?
18 A   Deputy District Attorney Molly Lawrence specialized
19   in domestic abuse and sexual assaults.  Assistant
20   District Attorney Natalie Zibolski specialized in
21   domestic abuse and sexual assaults.  Assistant
22   District Attorney Cody Marschall specialized in the
23   same.  And I believe Assistant District Attorney
24   Rory McGarry specialized in the same.  And
25   Assistant District Attorney Jonathan Barnett

Page 71

1    specialized in the same.
2  Q  Okay.
3  A   I believe Attorney Barnett was with the Marathon
4    County District Attorney's Office at this time in
5    question.
6  Q  So it sounds like there's quite a few people that
7    were involved in these type of cases or
8    specialized, correct?
9  A   Yes.
10 Q   And maybe you were asked this, how many assistant
11   district attorneys were there in the spring of
12   2021, roughly, if you can remember?
13 A   I believe 11 or 12.
14 Q   And forgive me for asking this, but I do want to
15   understand how the department worked.  You had also
16   mentioned there was a deputy district attorney and
17   for a while you were in the interim role.  Could
18   you identify who the deputies would have been
19   during the spring of 2021, if any?
20 A   It would have -- it was and is Attorney Anita Molly
21   Lawrence.
22 Q   So can you kind of explain just generally, and I'm
23   not talking -- how the interaction between --
24   what's the difference between a deputy district
25   attorney and an assistant district attorney as far

Page 72

1    as responsibilities in the Marathon County District
2    Attorney's Office in the spring of 2021?
3  A   The differences in roles and responsibilities as
4    they relate to prosecution were extremely minimal.
5    Generally there may have been a tendency that the
6    deputy would help counsel larger, more serious
7    cases, but that was not a standard practice.
8    Really the key differences were in management of
9    staff and attendance of county-wide meetings.
10 Q   Understand.  And I'm just asking about ballpark.
11   As of, say, April 5th, 2021, can you give me an
12   approximation of how many investigations you had
13   been involved with?  And when I say
14   "investigations," I meant to quantify that as
15   either reviewing police reports or being contacted
16   by a law enforcement officer concerning potential
17   sexual assault or sexual misconduct charges that
18   were being reviewed by the District Attorney's
19   office?
20 A   In my entire time with the District Attorney's
21   office?
22 Q   Up through, if you can approximate, up through the
23   time of April 5th, 2021.
24 A   Only sexual assaults, correct?
25 Q   Or sexual --

Page 73

1  A   Sure.
2  Q   I don't know, let's talk -- let me stop, it's a
3    good point.  You said you specialize in sexual
4    assault or sexual -- or disorderly conduct.  I
5    guess I'd like to broadly, if you could, could you
6    tell us what types of cases that you would consider
7    under that umbrella of sexual assault cases?  Is it
8    anything of a sexual matter that could be of
9    criminal conduct, or is it a particular level of --
10   of alleged criminal conduct solving sexual
11   misconduct?
12 A   Generally if it was a felony charge with the term
13   "sexual assault" in it, so that encompasses first,
14   second, third, and fourth degree sexual assault of
15   adult victims, and first and second degree sexual
16   assaults of children, those got parsed out into the
17   specialty caseloads.
18        Though if one case was -- such as a
19   hypothetical charge of causing mental harm of a
20   child that was based on sexual activity, that may
21   be prosecuted by one of the specialty attorneys, as
22   well.
23 Q   So with that in mind, can you give me an
24   approximation of how many cases -- I don't mean
25   necessarily cases that ultimately led to criminal

DAVIS   RUNDE
February 27, 2023

Page 74

1    charges, but just that you were either referred to
2    or otherwise reviewed, police reports, that -- that
3    would be in that specialty that you just sort of
4    characterized?
5  A  Up until the point of charging, so not cases I just
6    prosecuted?
7  Q  Right.
8  A  Approximately probably a hundred to 150 that I
9    personally reviewed.
10 Q  So it would be fair to say that you had a
11   significant amount of experience at least reviewing
12   these types of cases by the time the April 5th,
13   2021, communications you had with Officer Krause
14   took place?
15 A  Yes.
16 Q  Can you tell me a little bit about how
17   communications with law enforcement would take
18   place with the District Attorney's office if they
19   had questions generally about a potential case that
20   they were investigating something, they had
21   questions, can you tell me just generally how that
22   communication would take place?
23 A  If it was during business hours, the call would
24   come from the law enforcement agency.  It would go
25   to the office receptionist.  The office

Page 75

1    receptionist would either direct that officer to a
2    specific attorney, or send out a message informing
3    the attorneys that an officer was seeking a
4    callback, at which time the officer would be called
5    back by one of the attorneys, the issue would be
6    discussed, and whatever appropriate steps needed to
7    be taken would be taken.
8           If it occurred after business hours, there
9    was always at least one assistant DA who was
10   on-call, and that individual ADA would be contacted
11   directly from Marathon County dispatch, and they
12   would say this officer is seeking a callback.
13 Q  Would it be fair to say, I'm not talking you in
14   particular, but fair to say that one of the roles
15   of district attorneys, including assistant district
16   attorney, is to communicate with law enforcement if
17   they have questions about a particular legal
18   situation that may be presented to them?
19 A  Yes.
20 Q  And I think you've indicated, ultimately it's the
21   District Attorney's office that makes the charging
22   decision that gets filed in the circuit court,
23   correct?  Meaning the filing of the complaint?
24 A  Correct.
25 Q  So in your experience during your time, was it that

Page 76

1    unusual to have law enforcement officers call the
2    District Attorney's office to get information, or
3    if they have questions about potential case that
4    they're -- they're investigating?
5  A  No.
6  Q  So it wouldn't be unusual?
7  A  It would not be unusual.
8  Q  Can you give me a rough estimate of how many times
9    up until April 5th, 2021, you would have had
10   communication of a similar nature that I think
11   you've testified here that Officer Krause
12   communicated with you on that day in April 5th
13   about other criminal charges?  It was a bad
14   question, but you know what I'm getting at?
15 A  Within the realm of sexual assaults?
16 Q  Just generally, and then we can talk about
17   specifically.
18 A  If I'm understanding your question, you're asking
19   how many times I've been contacted by law
20   enforcement in my career up until April 5th, 2021,
21   for essentially information about a specific legal
22   issue the officer may be facing?
23 Q  Right.  And if it helps you, I can pin it down more
24   about whether or not criminal charges are
25   appropriate, or the nature of a particular criminal

Page 77

1    charge in a -- in an investigation that they're
2    facing?
3  A  That -- the answer to that is, well, so, many of
4    the calls we would receive would be for warrants.
5  Q  Sure.
6  A  Approval of a search warrant or subpoena, or
7    something like that which inherently required a
8    determination of probable cause.  So the officer
9    would not only be calling for a warrant, but for a
10   confirmation that the information they --
11   containing in their application for a search
12   warrant meets the level of probable cause.
13 Q  Okay.
14 A  So --
15 Q  So let's take aside search warrants now.  I'm
16   guessing more questions along the line of about
17   whether criminal charge, or what criminal charge
18   might be appropriate in a given situation that they
19   conveyed to you.
20 A  Based on my -- an estimate, a few hundred.  It
21   happened --
22 Q  Go ahead.
23 A  It was not uncommon to be having multiple calls
24   like that in a week.
25 Q  Let's talk a little bit about, I think it was

DAVIS   RUNDE
February 27, 2023

Page 78

1       Exhibit 90.  Do you have that in front of you?

2  A   **The DCI report?**

3  Q   Yes.

4  A   **Yes.**

5  Q   I take it in your career as a district attorney,

6       you reviewed multiple law enforcement agency

7       reports involving investigations that various

8       officers conducted, correct?

9  A   **Yes.**

10  Q  And I draw your attention to I think what's City of

11      Mosinee 677, it's the second page of this exhibit.

12  A  **Yes.**

13  Q  And I know you said you generally had a chance to

14      review it.  I'm going to kind of go over some

15      certain things in it just so I can remember about,

16      because this is our chance to ask you questions

17      about what occurred on April 5th, 2021, and I just

18      want to be clear that your answers that you

19      previously gave, you know, it's been a long time,

20      so I'm just kind of going to go through this

21      exhibit with you.  Okay?

22  A  **Okay.**

23  Q  And I'll make my passing reference.  It's just by

24      way of background, and I'll make this assertion,

25      other portions this DCI report that had

Page 79

1       referenced that, ah, I believe the same

2       investigators with DCI were interviewing Molly

3       Lawrence and you happened to pop by, do you have a

4       recollection of that?  You just sort of stopped by

5       the office and saw?

6  A   **Yeah, I have a general recollection of that.**

7  Q   And at that point they made a reference that they

8       wanted to talk to you about -- about this, and

9       we're gonna set up a time to interview with you; do

10     you remember that?

11  A  **Yes.**

12  Q  Okay.  And so if we go by what this report is, it

13      looks like on Wednesday, June 2nd, Special Agent

14      Shane Heiser and Michael Reimer met with you,

15      correct?

16  A  **Yes.**

17  Q  Outside this interview with you, had you ever had

18      any contact or any other communication with either

19      of these special agents?  Just generally under any

20      circumstance, were you familiar with them?

21  A  **Yes.  I was more familiar with Shane Heiser.  I --**

22      **I believe that spring had met Michael Reimer for**

23      **the first time at a homicide sweep.**

24  Q  So it wouldn't be unusual in your role as an

25      assistant district attorney to have interactions

Page 80

1       with special agents with the Department of Justice

2       Division of Criminal Investigation, correct?

3  A   **It was not common.**

4  Q   Now, did you have an understanding of why they were

5       meeting with you on April 5th?

6  A   **Yes.**

7  Q   And -- was there an objection, I thought I heard

8       something?

9          MS. CARSON:  You said when he met with

10     DCI on April 5th?

11         MR. ROMAN:  You're correct, I apologize,

12     thank you.

13  BY MR. ROMAN:

14  Q  So you met with them on June 2nd, 2021.  Do you

15      remember where you met?

16  A  **In my office at the Marathon County District**

17      **Attorney's Office.**

18  Q  And it says, if you look at the third paragraph,

19      that at approximately 2:43 p.m., they met with you,

20      correct?  If you look at the third paragraph.

21  A  **Yeah, I do see that, yes.**

22  Q  And if you look at the very next sentence, it said,

23      "The following is a summary of the information

24      provided by ADA Runde," correct?

25  A  **Yes.**

Page 81

1  Q  And given your -- your experience in reviewing law

2      enforcement investigation reports, is that a common

3      practice for people to summarize communications

4      that law enforcement agencies have with people

5      they're interviewing in a narrative form such as

6      this?

7  A   **Yes.**

8  Q   So it's not meant to be a -- in your experience,

9       it's not meant to be like a verbatim transcript,

10     but it's a summary of what occurred in the

11     interview that they conducted with a particular

12     person, correct?

13  A  **Correct.**

14  Q  And if you look at the next paragraph, so the

15     fourth paragraph, it says, "On Monday, April 5th,

16     2021, at approximately 9:59 p.m., Officer Krause

17     contacted the Marathon County District Attorney's

18     Office requesting to speak to a prosecuting

19     attorney in regard to reported sexual assault at

20     Mosinee Middle School," correct?

21  A  **Correct.**

22  Q  And is -- is that consistent with your memory of

23     how the call came in, that Officer Krause would

24     have contacted the District Attorney's office at or

25     about that time requesting to speak to a

DAVIS   RUNDE
February 27, 2023

Page 82

1    prosecuting attorney?
2  A  It's correct on the date and approximately time
3     about Officer Krause calling the District
4     Attorney's office.  I, um, don't know it's fair to
5     say that he was calling about a reported sexual
6     assault.
7  Q  Well, do you have any reason to believe that the
8     reporting officer didn't get this information from
9     you, if it's reflecting a summary of -- of
10    communications or interview he had with you?
11 A  I guess what I'm intending to say is, Officer
12    Krause called the Marathon County District
13    Attorney's Office to speak to a prosecuting
14    attorney about possible violation.  And at the time
15    of him communicating with me, I don't believe he
16    had the understanding that it was a sexual assault
17    at that point of making the call.  Generally we
18    discussed that, and what ultimately came of that
19    conversation was we were discussing what ultimately
20    was a reported sexual assault.  Did we lose you,
21    Attorney Roman?
22         MS. ZELLNER:  It looks like he's frozen.
23         MS. HENDRA:  Yeah, we might have lost
24    him.  Let's give him a second to -- maybe he'll log
25    out and log back in.

Page 83

1         (Off-the-record for technical issues.)
2  BY MR. ROMAN:
3  Q  So I guess what I'm just broadly stating here,
4     would you agree with me that the information
5     contained in this report that is an interview of
6     you conducted by Officers or Special Agent Shane
7     Heiser and Michael Reimer, is intended to be an
8     accurate summary of the information that was
9     provided by you during the course of the interview
10    that you had with them on June 2nd, 2021?
11 A  I agree that it is intended to be.
12 Q  And if -- if we get into various paragraphs, for
13    instance, one, two, three, four, the fifth
14    paragraph down, it indicates, "ADA Runde recalled
15    Officer Krause making the statement, quote, I found
16    out about this today and now I'm calling you, end
17    quoted, or, quote.  This was handed to me today,
18    now I'm calling you."  Do you remember providing
19    that information to Officer Heiser, or Special
20    Agent Heiser?
21 A  I don't recall specifically saying that, but I do
22    recall that -- that generally occurring, yes, that
23    Officer Krause made some statement to that effect
24    to me, yes.
25 Q  Is it fair to say that this interview on June 2nd,

Page 84

1     2021, was closer in time to the events occurring on
2     April 5th than we sit here today almost two years
3     later, correct?
4  A  Yes.
5  Q  Is it -- would it be fair to say, then, that you
6     have a specific memory of all the details of the
7     interview that you conducted with Shane Heiser and
8     Michael Reimer on June 2nd, 2021?
9  A  No.
10 Q  Do you have any reason to discount or disavow
11    anything that's stated in their summary of the
12    information provided to you, or provided by you as
13    they reflect in this statement?
14 A  With the qualification that I previously testified
15    to, and it's a summary, I don't have any reason to
16    disavow the summary.
17 Q  And I guess I like to be clear, because I know
18    there's been similar confusion.  There has been
19    testimony that there was at least two phone calls
20    with you on April 5th with Eric Krause, at least
21    two?
22 A  Yes.
23 Q  Would you agree that there were at least two phone
24    calls, correct?
25 A  Yes.

Page 85

1  Q  And the first one, if I'm understanding exactly how
2     it came in, it sounds like Officer Krause contacted
3     the Marathon County District Attorney's Office,
4     your understanding was he wasn't asking to speak
5     directly with you, correct?
6  A  I don't believe he was.
7  Q  And then the fifth paragraph also says, "ADA Runde
8     contacted Officer Krause."  Do you recall returning
9     a call to Officer Krause?
10 A  My recollection is that is how that occurred, yes.
11 Q  So the -- at least the first call, if we talk
12    between you and Officer Krause, you were returning
13    a phone call of somebody at the DA's office to call
14    him back?
15 A  Yes.
16 Q  And do you know how you were assigned that phone
17    call?
18 A  My recollection is that I volunteered.
19 Q  And what's your recollection specifically, if you
20    can remember?
21 A  My recollection is based off generally what would
22    occur.  And generally there's an office-wide e-mail
23    to the attorneys that says this officer is looking
24    for a callback.  The expectation was, and probably
25    still is, is that if you had time in your day, that

DAVIS  RUNDE
February 27, 2023

Page 86

1  you are to call that officer back.  At that moment
2  I had time, if I recall correctly, and I said I
3  will call him back.
4  Q  So as far as you can recall, there wasn't any
5  reference in the call relating to your specialty,
6  that that's why you would have jumped at it, or
7  volunteered, excuse me?
8  A  I would only be speculating if I said that there
9  was a specific reference.
10 Q  Okay.  And I think you've testified that you went
11    through, he provided you information about his
12    investigation of an incident, but you don't recall
13    how that communication ended, correct?
14 A  Not with a hundred percent certainty, no.
15 Q  At some point later do you recall a second call
16    with Officer Krause?
17 A  Yes.
18 Q  And do you remember if you called him?
19 A  I believe I called him.
20 Q  And how long after the first call ended, if you can
21    recall, did you contact him?
22 A  It was a relatively short period of time.  I would
23    estimate between 15 and 30 minutes.
24 Q  And I think you testified that during that time,
25    you at least talked to someone else, I believe in

Page 87

1  the District Attorney's office, if you don't want
2  to use the term second opinion, but to review with
3  someone else, correct?
4  A  Correct.
5  Q  And, Counsel, I don't know if this is within the
6  scope of the privilege or not, but do you recall,
7  or can you identify who else you would have spoken
8  to in the department about this communication?
9        MS. CARSON:  That's okay.
10        THE WITNESS:  I believe in that interim
11    period, I believe I had a face-to-face discussion
12    with District Attorney Wetzsteon about it.
13 BY MR. ROMAN:
14 Q  And without conveying all the information,
15    generally did you convey that an officer had
16    conveyed information to you and you were discussing
17    that with her?
18 A  Yes.  And I -- if -- to my recollection, Deputy DA
19    Molly Lawrence was also involved with that
20    conversation.
21 Q  And you said this was a face-to-face, so it was
22    somewhere in the District Attorney's office?
23 A  I believe it was in District Attorney Wetzsteon's
24    office.
25 Q  And, again, I don't want to get into privilege, but

Page 88

1  was the purpose of this communication just to make
2  sure the District Attorney's office was on the
3  right page of this is the information when you have
4  an officer calling in requesting or providing, that
5  you wanted to make sure that you were providing
6  accurate information to them?
7        MS. CARSON:  That's okay.
8        THE WITNESS:  Yes.
9  BY MR. ROMAN:
10 Q  And after your communications with the district
11    attorney, you had this second communication and
12    again communicated with Officer Krause about what
13    your thoughts were, correct?
14 A  Yes.
15 Q  Presumably if you had any questions or concerns at
16    that point, you would have -- generally could have
17    asked for additional information or something of
18    that nature, correct?
19 A  Generally, yes, if I believed there was some piece
20    of information that may affect the analysis, I may
21    ask if that information was available.
22 Q  And as far as you can recall, you didn't do that,
23    correct?
24 A  I believe I asked if there were witnesses, and
25    Officer Krause informed me that there were.

Page 89

1  Q  Now, I think all the parties have agreed that
2  Officer Krause and one other, or at least the
3  records reflect that Officer Krause and one other
4  officer arrested Ms. Mathis at her home, I'll say
5  relatively soon after the communications with your
6  office.  The report also references, when I say
7  report, the bottom of the paragraph, the second
8  paragraph, it indicates, "On April 5th, 2021, ADA
9  Runde called Officer Krause to inquire whether
10    interviews at Child Advocacy Center," et cetera.
11        You had indicated in your testimony that
12    you believe you texted him.  Is it possible you had
13    another phone call, or do you think any -- does
14    this refresh your recollection at all whether it
15    was a phone call, or whether it was a text?
16        MS. CARSON:  Could I just clarify?
17    You're looking at Exhibit 90, correct?
18        MR. ROMAN:  Yes, sorry.  Thank you,
19    Counsel.
20        THE WITNESS:  As I sit here today, my
21    recollection is that it was a text message, but it
22    may have been a phone call.
23 BY MR. ROMAN:
24 Q  Bear with me, I'm trying to see if I have another
25    exhibit.  Do you have any recollection of the first

DAVIS   RUNDE
February 27, 2023

Page 90

1    involvement you had, if any, with this case between
2    the time after the arrest had been completed and
3    Ms. Mathis, excuse me, was in custody, and the
4    criminal complaint was drafted?
5             MS. CARSON:  Can I just, you asked if he
6    had any communications, if he had communications
7    between April 5th and the time the complaint was
8    drafted, which was Exhibit 88, maybe?
9             MR. ROMAN:  Right.
10   BY MR. ROMAN:
11   Q    Other than what you've conveyed about the -- the
12        follow-up interview with the Child Advocacy Center,
13        between that time and the time of the criminal
14        complaint, do you recall ever speaking to Officer
15        Krause?  Not necessarily the substance, but do you
16        recall ever speaking to him?
17   A    **Based on my review of the materials in preparation**
18        **for today, I know there was e-mails that I was**
19        **included in or involved with with Officer Krause.**
20        **I don't -- outside of those e-mails, I don't recall**
21        **any specific communication I had with Officer**
22        **Krause.**
23   Q    Do you recall if you ever had any communications
24        with Anita Lawrence, Molly, about any
25        communications that she may have had with Officer

Page 91

1    Krause around the time of the bond hearing?
2    A    **I do not recall any of those communications.**
3    Q    Does that mean you just don't recall, or?
4    A    **Correct, I don't recall if they occurred.  And if**
5         **they did occur, I don't recall the substance.**
6    Q    Thank you.  Now, is it fair to say you don't have a
7         specific recollection of drafting the criminal
8         complaint that we marked as Exhibit 89, I believe?
9    A    **Correct.  And my recollection is that Attorney**
10        **Lawrence drafted the complaint, and that I reviewed**
11        **it as co-counsel.**
12   Q    Well, let me ask you again, it's a fair summary
13        that it appears that a portion of the investigation
14        filed by Officer Krause was included in the
15        complaint, correct?
16   A    **Yes.**
17   Q    So would it be a fair assumption by that time -- by
18        the time the criminal complaint was drafted, the
19        DA's office had already received the criminal
20        investigation report from Officer Krause, correct?
21   A    **That is fair to say, yes.**
22   Q    And we're talking the arrest was on April 5th, it
23        looks like the criminal complaint would have been
24        filed on April 23rd, correct?
25   A    **Correct.**

Page 92

1    Q    So at any point during the time period from the
2         arrest time that the criminal complaint was drafted
3         and filed in this case, and you being the -- at
4         least the -- electronically signing the criminal
5         complaint, did you have any reason to believe or
6         have any concern that first degree sexual assault
7         of a child was not supported by the evidence that
8         you had been presented?
9    A    **I did not have any concerns about that.**
10   Q    And would it be fair to say that if you did have
11        any concerns after reviewing the information
12        provided by Officer Krause, written reports or any
13        other information that you reviewed, you could have
14        followed up or the office could have followed up,
15        correct?
16   A    **Yes.**
17   Q    Now, Officer Krause didn't sign the criminal
18        complaint, correct?
19   A    **Correct.**
20   Q    And would it be fair to say he had no involvement
21        in determining what if any portions of his
22        investigation would be included in a criminal
23        complaint that was eventually filed, correct?
24            For instance, I guess more specifically,
25        you have no reason to believe that Officer Krause

Page 93

1    was involved with choosing what portions of the
2    report were included in the criminal complaint,
3    correct?
4    A    **Correct.**
5    Q    And did you communicate with Officer -- or, excuse
6         me, is it Officer Hagenbucher, or is it -- what is
7         his full title?
8    A    **I believe his title is special investigator.  He's**
9         **a retired captain of the Wausau Police Department.**
10        **So he was referred to as Officer Hagenbucher, or**
11        **Investigator Hagenbucher, many iterations of that.**
12   Q    And do you have any information and knowledge
13        whether Officer Hagenbucher ever communicated or
14        contacted Officer Krause if he had any questions or
15        concerns regarding information that he was going to
16        swear to in a criminal complaint?
17   A    **I have no information about that.**
18   Q    Based on your past experience working with Officer
19        Hagenbucher, have you been involved with other
20        types of criminal -- let's get more specific,
21        sexual assault-type charges where he would have
22        been the complaining witness?
23   A    **Ah, yeah, I've been involved with other sexual**
24        **assault cases, and Officer Hagenbucher.**
25   Q    And based on your experience in the past with him,

DAVIS   RUNDE
February 27, 2023

Page 94

1     do you have any doubt that if he had any concerns
2     about information that was being provided in the
3     investigation report or the investigation as a
4     whole, that if he had any concerns, that he could
5     have reached out to Officer Krause for follow-up
6     information if he had any questions?
7  A   I don't believe there would be any reason why
8     Officer Hagenbucher would fail to do that if he did
9     have concerns.
10  Q   Now, without going into any strategy or any issues
11     like this, I just want to be clear that Officer
12     Krause did not testify in any proceeding in the
13     criminal prosecution of Christy Mathis, correct?
14  A   Correct.
15  Q   So he didn't testify in the bond hearing for any
16     reason, correct?
17  A   Not to my knowledge, I believe that's correct.
18  Q   And we've got the transcript marked, I think the
19     only person who testified in that preliminary
20     hearing was Officer Hagenbucher, correct?
21  A   Yes.
22  Q   So is it fair to say that once the criminal
23     prosecution went forward, that Officer Krause's
24     actual role in this case, as it played out, sort of
25     ended with his investigation?  Meaning he didn't

Page 95

1     testify, he didn't file any documents with the
2     Court, he didn't do anything of that nature,
3     correct?
4  A   I believe that's correct.
5  Q   And I think you indicated ultimately it's the
6     District Attorney's office to decide what charges
7     to file and/or how to prosecute a case, correct?
8  A   Correct.
9  Q   At that point an investigating officer is a
10     potential witness, but they're not actively part of
11     the prosecution unless requested to be so by the
12     district attorney, correct?
13  A   Correct.  That is a fine line, but generally they
14     would be involved at our request.
15  Q   And is it fair to say that Officer Krause would not
16     have had any involvement in this matter once Judge
17     Moran issued a ruling dismissing without prejudice
18     the criminal complaint that your office had filed,
19     correct?  Meaning he wasn't involved, I guess what
20     I'm getting at, any decision whether another charge
21     could be filed or -- or anything of that nature,
22     correct?
23  A   Not that I recall.
24  Q   And would it be fair to say that Officer Krause
25     wouldn't have had any involvement of requesting any

Page 96

1     specific restrictions that may have been placed on
2     Christy Mathis in the context of the bond hearing,
3     meaning he didn't testify as to anything, correct?
4     That's a decision or request that comes from the
5     District Attorney's office?
6          MS. HENDRA:  I'll object just as a
7     compound question.
8          MR. ROMAN:  Sure, let me step back.
9  BY MR. ROMAN:
10  Q   Did Officer Krause, to your knowledge, have any
11     involvement in deciding what conditions of bond
12     would be placed on Christy Mathis at her bond
13     hearing?
14  A   My recollection, Officer Krause had no involvement
15     in the recommendations made to the Court for the
16     bond of Christy Mathis, nor in the decision of what
17     conditions would be placed on Christy Mathis with
18     her bond.
19  Q   Thank you.  That's all I have.
20          MS. HENDRA:  All right, Emilia, do you
21     have anything?  And then I'm just going to have a
22     couple things after Emilia, and then I'm more than
23     done.
24          MS. JANISCH:  Sorry, my mouse froze up
25     and I couldn't get the unmute button to work.  I

Page 97

1     have no questions for you, Attorney Runde.
2          MS. HENDRA:  I just have a couple
3     follow-up questions.
4          E X A M I N A T I O N
5  BY MS. HENDRA:
6  Q   So, Attorney Runde, we've spent some time today
7     talking about the two telephone conversations you
8     had with Officer Krause on April 5th of 2021 prior
9     to the arrest being made, correct?
10  A   Correct.
11  Q   And you testified that you spoke with Officer
12     Krause during that first phone call, and at that
13     time he presented you with information that led you
14     to determine that there was probable cause to
15     arrest Ms. Mathis for first degree sexual assault
16     of a minor under age 13, correct?
17  A   He did provide me information that led me to
18     conclude that there was sufficient information to
19     meet the standard of probable cause for an arrest
20     to occur on a charge of first degree sexual assault
21     of a child under the age of 13.  I do not know if
22     that occurred during the first phone call, though.
23  Q   Okay.  So you're saying that could have occurred on
24     the second call that took place prior to the
25     arrest, right?

DAVIS   RUNDE
February 27, 2023

Page 98

1  A   Correct.
2  Q   Okay.  So during one of those two calls.  And at
3      that time, whether it was the first call or the
4      second call, was the only information that you were
5      presented, information that -- was the only
6      information that you were presented during one of
7      those two phone calls from Officer Krause?
8  A   **To my recollection, in the first phone call, I**
9      **believe the middle school principal was in the room**
10     **with Officer Krause, and was assisting Officer**
11     **Krause in relaying me the information.**
12 Q   Okay.  And if I told you -- well, if I asked you if
13     that middle school principal's name was Brad --
14     Bradley Grube, would that ring a bell to you?
15 A   **I believe that was his name.**
16 Q   Okay.  Do you recall the extent of Mr. Grube's
17     involvement in relaying the information to you with
18     Officer Krause during that first phone call on
19     April 5th?
20 A   **I believe it was quite minimal.  I believe, to my**
21     **recollection, he was simply confirming information**
22     **that Officer Krause was telling me.**
23 Q   Okay.  So would it be fair to say that during that
24     first phone call, the only information that you had
25     with regards to Ms. Mathis and the -- excuse me --

Page 99

1      inappropriate touching incident that occurred at
2      the middle school, was presented to you by Officer
3      Krause with the assistance of Principal Grube; is
4      that true?
5  A   **Yes, I believe that is accurate.**
6  Q   Okay.  And then as for the second phone call, was
7      the only information that you had at your disposal
8      prior to the arrest being made information that was
9      presented to you by Officer Krause?
10 A   **To my recollection, yes.  The second phone call was**
11     **only with Officer Krause.**
12 Q   Okay.  So would it be accurate to say that prior to
13     the arrest taking place, the information that you
14     had at your disposal was provided by Officer Krause
15     with the very minimal input of -- or, excuse me,
16     involvement of Principal Grube, correct?
17 A   **Yes.**
18 Q   So you didn't consider information from any
19     individual other than Officer Krause and Principal
20     Grube, true?
21         MR. ROMAN:  I'll object to form.  You
22     mean information from any person other than what
23     was reflected in what they were telling him, but
24     you mean first-hand sources?
25

Page 100

1  BY MS. HENDRA:
2  Q   Yes, the people -- the only two individuals that
3      you were presented information with during those
4      two telephone calls was Officer Krause with the
5      minimal assistance of Principal Grube, and Officer
6      Krause during that second phone call, true?
7  A   **True.**
8  Q   So no other individual presented you with any
9      information during any -- either of those two phone
10     calls or any other period of time prior to the
11     arrest taking place on April 5th of 2011?
12 A   **Not to my recollection.**
13         MS. CARSON:  Can I clarify?  Factual
14     information about the allegations?
15         MS. HENDRA:  That's exactly what I'm
16     asking, yes.
17         **THE WITNESS:  Not to my recollection.**
18 BY MS. HENDRA:
19 Q   Okay.  And you testified that on -- during those
20     two telephone calls with Officer Krause prior to
21     the arrest being made, you had the ability to ask
22     for additional information or request -- or, excuse
23     me, ask for additional information or ask any sort
24     of follow-up questions, correct?
25 A   **I had that opportunity.**

Page 101

1  Q   Can you explain to me why you did not request
2      additional information or ask any follow-up
3      questions prior to the arrest being made?
4  A   **I don't know if I testified that I did not ask for**
5      **any follow-up questions.**
6  Q   Okay.  And I apologize if I'm mischaracterizing
7      what you said.  Do you know if you did ask any
8      follow-up questions or request any additional
9      information from Officer Krause prior to the arrest
10     being made?
11 A   **In the -- in the course of the two conversations**
12     **with Officer Krause, I wasn't simply receiving**
13     **information.  I would be asking -- I believe I**
14     **asked questions, could you describe the touch that**
15     **has been alleged, can you describe where that touch**
16     **occurred, how long that touch occurred.  Asking for**
17     **the required information to make a determination of**
18     **whether probable cause existed.  I did ask those**
19     **questions.  The information that was provided to me**
20     **by Officer Krause was sufficient for me to make a**
21     **determination.  So I did, outside of that, I did**
22     **not ask for documentation or other types of**
23     **evidence.**
24 Q   Okay.  So then you would say at that point your
25     analysis as to whether there was probable cause to

DAVIS   RUNDE
February 27, 2023

Page 102

```
 1      support a finding of first degree sexual assault of
 2      a minor under the age of 13 was present, correct?
 3   A  Yes.
 4   Q  Okay.  That's all I've got.
 5             MS. ZELLNER:  I don't have any
 6      additional.
 7             MR. ROMAN:  I'm good, thank you.
 8             MS. HENDRA:  Emilia, do you have anything
 9      now, or you're good?
10             MS. JANISCH:  I'm good.
11             MS. HENDRA:  All right.  Attorney Carson,
12      anything?
13             MS. CARSON:  No, thank you.
14             MR. ROMAN:  Off the record for a second.
15          (Off-the-record discussion held.)
16             THE COURT REPORTER:  Transcript orders?
17             MS. HENDRA:  Condensed, electronic only
18      with exhibits.
19             MR. ROMAN:  I'll take a condensed PDF.
20             MS. ZELLNER:  Just electronic.
21             MS. JANISCH:  Electronic only condensed.
22             MS. CARSON:  Electronic only condensed
23      with exhibits.
24             (Deposition concluded at 12:43 p.m.)
25
```

Page 103

```
 1  STATE OF WISCONSIN   )
                         ) SS:
 2  COUNTY OF WAUKESHA   )
 3           I, Wendy L. Hanneman, Registered
 4  Professional Reporter and Notary Public in and for the
 5  State of Wisconsin, do hereby certify that prior to
 6  being examined, the witness in the foregoing proceedings
 7  was by me duly sworn to testify to the truth, the whole
 8  truth, and nothing but the truth.
 9           I further certify that said deposition was
10  taken remotely at the time and places therein set forth
11  and were taken down by me in shorthand and thereafter
12  transcribed into typewriting under my direction and
13  supervision, on the 27th day of February 2023,
14  commencing at 9:15 a.m. and concluding at 12:43 p.m.
15           I further certify that I am not a relative
16  or employee or attorney or counsel of any of the
17  parties, or a relative or employee of such attorney or
18  counsel, or financially interested directly or
19  indirectly in this action.
20           In witness whereof, I have hereunto set my
21  hand and affixed my seal of office at Mukwonago,
22  Wisconsin, this 14th day of March, 2023.
23             Wendy L. Hanneman - Notary Public
                 In and for the State of Wisconsin
24
                 My Commission Expires:  October 9, 2025.
25
```

DAVIS RUNDE

February 27, 2023

**Exhibits**

**EX 0088 Davis Ru
nde 022723**
   3:18 43:14,19
   44:24 45:1
   51:3 90:8

**EX 0089 Davis Ru
nde 022723**
   3:19 45:1,2
   48:3 91:8

**EX 0090 Davis Ru
nde 022723**
   3:20 63:17,18
   78:1 89:17

---

**$**

**$10,000**
   52:15

---

**0**

**00677**
   64:14

---

**1**

**1**
   45:18 64:15
**10**
   15:18
**11**
   71:13
**11th**
   55:18 56:24
**12**
   15:18 71:13
**12:43**
   102:24

**13**
   28:21 29:5
   30:10 31:25
   32:10,14 34:5,
   16 38:5 39:4,
   14 43:24 45:19
   68:2 97:16,21
   102:2
**14**
   52:15
**15**
   69:3 86:23
**150**
   74:8
**16th**
   14:20
**1st**
   22:17 52:19,22
   53:18 54:7
   55:11

---

**2**

**2**
   64:15
**20**
   27:1
**2011**
   100:11
**2013**
   13:2
**2014**
   13:3
**2016**
   68:22
**2017**
   13:6,22
**2018**
   13:23 14:6

**2019**
   13:25
**2020**
   14:20,22 15:10
**2021**
   8:11 11:23
   24:14,20 26:9
   29:10 38:2,10,
   12 39:16,23
   44:18 50:25
   51:13 52:19,22
   53:18 54:7
   55:19 56:24
   61:12 63:7
   64:2 65:3,6
   66:25 67:8,12,
   18,19 68:13
   70:8 71:12,19
   72:2,11,23
   74:13 76:9,20
   78:17 80:14
   81:16 83:10
   84:1,8 89:8
   97:8
**2022**
   14:2 22:17
**207**
   44:10
**212**
   51:4,6,11,15
**215**
   52:13
**218**
   52:14
**21CF543**
   45:11 51:13
   52:7 60:17
**21CV543**
   42:1,9 59:22
**220**
   51:7,12

**221**
   53:15
**229**
   54:19
**233**
   55:13
**235**
   56:14
**23rd**
   50:25 66:25
   67:2 91:24
**2:43**
   80:19
**2nd**
   64:1 79:13
   80:14 83:10,25
   84:8

---

**3**

**3**
   56:15
**30**
   86:23

---

**4**

**4/23/21**
   45:3

---

**5**

**5**
   56:14
**5,000**
   52:16
**500**
   4:21
**54403**
   4:22 6:20

DAVIS   RUNDE
February 27, 2023

**5th**
  8:11 24:13,14,
  20 26:8 29:10
  30:21 33:21
  36:4 37:8,15,
  20 38:2,10,12,
  18 39:16,22
  41:21 61:12
  63:7 65:3,6
  67:2,8,12,18,
  19 72:11,23
  74:12 76:9,12,
  20 78:17 80:5,
  10 81:15 84:2,
  20 89:8 90:7
  91:22 97:8
  98:19 100:11

**6**

**677**
  78:11

**6th**
  11:23 51:13

**7**

**7**
  54:19

**70**
  40:12,25 41:4
  42:6

**8**

**800**
  4:21

**805**
  6:19

**88**
  43:14,19 44:24
  45:1 51:3 90:8

**89**
  45:2 48:3 91:8

**9**

**90**
  63:18 78:1
  89:17

**9:50**
  24:5

**9:55**
  24:6

**9:59**
  81:16

**A**

**ability**
  37:1 100:21

**abuse**
  16:12 19:17
  69:10 70:19,21

**accommodate**
  6:10

**accurate**
  34:13 35:13
  44:1 45:13
  46:16 47:5
  83:8 88:6
  99:5,12

**accused**
  33:3,9

**act**
  28:4

**actively**
  95:10

**activity**
  73:20

**acts**
  15:24

**actual**
  94:24

**ADA**
  75:10 80:24
  83:14 85:7
  89:8

**addition**
  28:6

**additional**
  18:23 28:3
  57:11 61:6
  63:4,9 88:17
  100:22,23
  101:2,8 102:6

**address**
  4:19 6:18

**adjourned**
  55:11

**adult**
  73:15

**advising**
  34:14

**Advocacy**
  89:10 90:12

**affect**
  88:20

**aforementioned**
  46:11

**afternoon**
  39:22 67:18

**age**
  28:1,21 29:5
  30:10 31:25
  32:10,13 34:5,
  16 38:5 39:4,
  14 43:24 45:19
  68:1 97:16,21
  102:2

**agencies**
  81:4

**agency**
  18:16 21:3
  74:24 78:6

**Agent**
  79:13 83:6,20

**agents**
  79:19 80:1

**agree**
  4:16 23:7 33:2
  45:22 53:17
  58:10,12
  65:19,23 83:4,
  11 84:23

**agreed**
  89:1

**ahead**
  25:6 77:22

**ailment**
  5:25

**alias**
  6:15

**allegation**
  27:15,24 28:3

**allegations**
  8:3 34:10
  100:14

**alleged**
  28:4 65:20
  73:10 101:15

**allegedly**
  65:24

**amended**
  11:18

**amount**
  21:14 74:11

**analysis**
  88:20 101:25

**and/or**
  9:1 70:15 95:7

DAVIS   RUNDE
February 27, 2023

**Anita**
  12:9,10,11
  53:20 71:20
  90:24

**answers**
  78:18

**anticipate**
  6:6

**apologies**
  54:16

**apologize**
  36:5 51:19
  80:11 101:6

**appearances**
  51:16 52:5
  54:3 55:15

**appeared**
  9:11 52:2
  53:21,25

**appearing**
  16:2 52:10

**appears**
  40:17 51:14
  52:13 54:17
  91:13

**application**
  77:11

**Approval**
  77:6

**approximate**
  72:22

**approximately**
  13:17 38:22
  41:2,9,12,16
  44:15,17 74:8
  80:19 81:16
  82:2

**approximation**
  72:12 73:24

**April**
  8:11 11:23
  24:13,14,20
  26:8 29:10,24
  30:21 33:21
  36:4 37:8,15,
  20 38:2,10,12,
  18 39:16,22
  41:21 44:17
  50:25 51:13
  61:12 63:7
  65:3,6 66:25
  67:2,8,12,18,
  19 72:11,23
  74:12 76:9,12,
  20 78:17 80:5,
  10 81:15 84:2,
  20 89:8 90:7
  91:22,24 97:8
  98:19 100:11

**arguably**
  8:8

**arguing**
  16:2

**arguments**
  54:21

**arrest**
  21:20,23,25
  22:1,8,12
  34:19 35:2,3,
  7,8,13,24
  36:4,8,11,14,
  16 37:3,19
  38:3 39:15
  40:8 41:21
  63:16 64:21
  68:2 90:2
  91:22 92:2
  97:9,15,19,25
  99:8,13
  100:11,21
  101:3,9

**arrested**

  38:9,12 39:22
  89:4

**arrests**
  22:10,11

**arts**
  13:2

**aspects**
  22:3

**assault**
  17:1,9,14
  19:16 28:20
  29:4 30:10,19
  31:8,24 32:2,
  19 33:18 34:4,
  16 38:4 39:3,
  14 43:23 45:18
  68:1 69:10
  70:2,15 72:17
  73:4,7,13,14
  81:19 82:6,16,
  20 92:6 93:24
  97:15,20 102:1

**assault-type**
  93:21

**assaults**
  16:12 69:16,25
  70:19,21 72:24
  73:16 76:15

**asserting**
  9:4

**assertion**
  78:24

**assigned**
  61:18 85:16

**assistance**
  25:18 99:3
  100:5

**assistant**
  8:1 14:15,18,
  24 15:5,6,13,
  15,19 16:10,14

  17:6,8,11,18
  18:2,6,12
  20:11 21:8
  23:9,20 24:16
  25:11 34:23
  48:7,15 49:25
  51:25 69:4,7
  70:19,21,23,25
  71:10,25 75:9,
  15 79:25

**assisting**
  98:10

**associate**
  23:2,5

**assume**
  11:9 62:8

**assumed**
  15:7

**assumption**
  91:17

**attached**
  61:24

**attendance**
  72:9

**attended**
  12:23

**attention**
  24:13 29:3
  44:8 51:2 64:5
  68:12 78:10

**attorney**
  8:1,9 12:8,9
  14:15,16,18,
  19,21,25 15:1,
  5,7,8,11,13,20
  16:5,10,14,17
  17:8 18:3,6,12
  20:12 21:9
  23:20 24:16
  34:24 35:4
  42:25 48:7,15,

DAVIS   RUNDE
February 27, 2023

16 50:1 51:16,
21,24,25 53:2,
20,24 59:3,9
62:19 65:7
68:17,21 69:2,
3,4,8,12,24
70:11,18,20,
22,23,25 71:3,
16,20,25 75:2,
16 78:5 79:25
81:19 82:1,14,
21 87:12,23
88:11 91:9
95:12 97:1,6
102:11

**attorney's**
8:2,6 13:16,
22,24,25 14:1,
4,10,13 15:15
17:7,17 18:1
20:13 21:4
22:19 23:9
24:15 25:8,12
26:8,15 27:14
29:13 34:19
35:5 37:25
41:24 47:22
50:4 53:10
58:8 59:1
60:2,17 61:20
66:2 68:11,24
69:14 71:4
72:2,18,20
74:18 75:21
76:2 80:17
81:17,24 82:4,
13 85:3 87:1,
22 88:2 95:6
96:5

**attorney-client**
5:21

**attorneys**
10:6 11:17,25
12:3 15:16

16:22 17:12,18
18:17,19 48:12
60:22 70:9
71:11 73:21
75:3,5,15
85:23

**attribute**
49:10

**August**
14:2 22:17
29:9 38:9
55:18 56:24

**authority**
20:15,24 35:8

**Avenue**
6:19

**aware**
5:12 7:14,21
17:25 25:17
43:18

———————————

**B**

**bachelor's**
13:2

**back**
15:12 16:21
17:5 24:6 25:2
26:3 28:12
35:22 42:18
51:10 68:13
75:5 82:25
85:14 86:1,3
96:8

**background**
69:13 78:24

**bad**
76:13

**ballpark**
72:10

**Barnett**
70:25 71:3

**base**
66:19

**based**
19:1 21:7
27:18 28:17
30:20 33:18
34:5 38:7
46:7,20,23
47:1 52:5 54:2
60:15 66:8
67:24 73:20
77:20 85:21
90:17 93:18,25

**basic**
12:16

**basis**
41:7 46:2,4,10
48:1 49:25

**Bates**
44:9

**Bates-marked**
51:4,7

**bathroom**
6:8

**Bear**
89:24

**began**
22:20

**behalf**
53:21

**behavior**
23:22

**believed**
21:11 31:17
46:21,24 88:19

**believes**
46:9

**bell**
98:14

**bind**
54:22 55:3,4,
6,24 56:9
57:17

**binding**
8:24

**bit**
20:23 26:4
28:23 74:16
77:25

**board**
70:10

**Boeck**
51:17,24

**boik**
51:18

**bond**
43:20 52:16
91:1 94:15
96:2,11,12,16,
18

**bottom**
48:3 52:14
64:7 89:7

**bound**
57:21 58:11

**Brad**
98:13

**Bradley**
98:14

**break**
6:7,13 20:22
24:1,4 28:22
42:11 59:21

**breakdown**
70:8

**briefing**
55:10

DAVIS RUNDE
February 27, 2023

**briefly**
  25:23 40:24
  44:19,24 64:4

**briefs**
  56:2

**bring**
  58:14 59:5
  62:23 63:3
  64:25 68:12

**bringing**
  9:25 49:24
  50:1

**broaden**
  68:8

**broader**
  20:19,20

**broadly**
  73:5 83:3

**Broadway**
  6:19

**brought**
  11:4

**building**
  69:19

**business**
  22:25 74:23
  75:8

**buttocks**
  27:25 32:15

**button**
  96:25

---

C

**call**
  14:5 24:21,25
  25:3,8 26:7
  27:11,13 28:9,
  15 29:17 30:9,
  22 34:12 36:1,

3,6 37:6,10,15
38:16,17,19,25
65:2 66:3
67:22 74:23
76:1 81:23
82:17 85:9,11,
13,17 86:1,3,
5,15,20 89:13,
15,22 97:12,
22,24 98:3,4,
8,18,24 99:6,
10 100:6

**callback**
  75:4,12 85:24

**called**
  4:2 65:20,25
  75:4 82:12
  86:18,19 89:9

**calling**
  25:18 38:17
  77:9 82:3,5
  83:16,18 88:4

**calls**
  29:8 37:8,17
  58:20 65:14
  66:22 67:8,11
  77:4,23 84:19,
  24 98:2,7
  100:4,10,20

**capacity**
  15:19 16:10
  18:6 20:11
  69:15

**captain**
  93:9

**career**
  58:8 76:20
  78:5

**carried**
  11:5 16:11

**Carson**
  7:22,25 10:16,

24 29:7 35:18
37:7,11 58:1,
19 62:4,15
66:24 67:4
80:9 87:9 88:7
89:16 90:5
100:13 102:11,
13,22

**case**
  4:11 7:13 8:20
  10:13 11:4
  19:12,16,17
  20:1,4 21:2,3
  23:24 41:25
  43:6,14 45:10
  49:17 53:1,9
  54:22 55:8
  56:8 58:10
  61:14,23 66:6
  73:18 74:19
  76:3 90:1 92:3
  94:24 95:7

**caseload**
  16:11 58:3

**caseloads**
  73:17

**cases**
  16:6,8,12,13,
  14,23 17:1,9,
  13,18 18:2
  53:11 57:20
  60:18 61:8,17
  69:9,15 70:9
  71:7 72:7
  73:6,7,24,25
  74:5,12 93:24

**cash**
  52:16

**caused**
  14:23 25:11

**causing**
  73:19

**Center**
  89:10 90:12

**certainty**
  86:14

**cetera**
  9:11 89:10

**chance**
  64:4 78:13,16

**change**
  17:22 61:25
  62:11

**changed**
  15:17

**characterization**
  31:3 60:15

**characterized**
  74:4

**charge**
  18:13 19:5
  20:25 21:4,16,
  19 27:17
  28:18,19,25
  29:6,22 30:9,
  19 31:7 32:5,
  20 33:2 34:3,
  15 39:2,9,11,
  17 45:22,23
  46:4 61:9,18,
  21,24 62:1,9,
  12,23 65:8,12
  67:24 73:12,19
  77:1,17 95:20
  97:20

**charged**
  19:3 29:16,23
  30:2 33:17
  45:24 54:12

**charges**
  16:1,24 18:8
  19:4 20:15,17,
  22 21:6,10

DAVIS   RUNDE
February 27, 2023

31:15,18,20
39:6 49:25
58:15 59:5
63:2 72:17
74:1 76:13,24
93:21 95:6

**charging**
19:8 29:3 74:5
75:21

**check**
65:7,9,12

**child**
28:20 31:24
32:9 34:4
39:14 43:23
45:18,19 68:1
73:20 89:10
90:12 92:7
97:21

**children**
73:16

**choosing**
93:1

**Christy**
4:10 7:4,6,14
25:22 43:22
45:10 94:13
96:2,12,16,17

**circuit**
7:12 11:5
50:24 75:22

**circumstance**
79:20

**circumstances**
14:23 24:24
25:1,10,17,18
26:20 31:21
34:24

**citizen**
46:24,25

**City**
7:15 8:19,25
9:5 51:4,6,7,
11,12,15
52:13,14 53:15
54:18 55:13
56:13 78:10

**claim**
10:1,3

**claims**
9:4

**Claire**
12:23,24

**clarification**
53:13

**clarify**
37:7 89:16
100:13

**clear**
30:1 42:13
67:7 78:15,18
84:17 94:11

**Clerk**
50:24

**client**
5:20 8:5 58:22

**client's**
5:23

**clients**
23:15

**closer**
84:1

**co-counsel**
91:11

**Cody**
70:22

**college**
12:21

**colon**

46:5 48:19

**committed**
54:13

**common**
80:3 81:2

**communicate**
12:4 75:16
93:5

**communicated**
67:1 76:12
88:12 93:13

**communicating**
82:15

**communication**
34:21 67:19
74:22 76:10
79:18 86:13
87:8 88:1,11
90:21

**communications**
5:22 8:8,12
9:13 11:16
29:9 30:21
37:18,21 59:2
66:21 67:5,10
74:13,17 81:3
82:10 88:10
89:5 90:6,23,
25 91:2

**Complainant**
46:5,9,15
47:2,14,17,25
48:5,13,14
49:15,17,24

**Complainant's**
46:4 47:1

**complaining**
93:22

**complaint**
7:15,21 8:3
11:18,24 20:18

21:20,23 30:3
43:20 44:12,
14,16 45:3,9,
14 46:7,20,23
47:7,15,18
48:2,3,9,14,
16,23 49:3,4,8
50:6,9,11,15,
22,24 57:4
66:23 75:23
90:4,7,14
91:8,10,15,18,
23 92:2,5,18,
23 93:2,16
95:18

**complaints**
23:17 48:13

**completed**
90:2

**completely**
5:13

**compound**
96:7

**concern**
92:6

**concerned**
32:7

**concerns**
88:15 92:9,11
93:15 94:1,4,9

**conclude**
97:18

**concluded**
102:24

**condensed**
102:17,19,21,
22

**conditions**
96:11,17

**conduct**

DAVIS  RUNDE
February 27, 2023

31:7 39:9
66:14,20 73:4,
9,10

**conducted**
4:17 9:7 78:8
81:11 83:6
84:7

**conducting**
16:3 25:19

**conference**
4:17

**confidential**
8:13

**confirm**
33:14 38:21

**confirmation**
77:10

**confirming**
67:23 98:21

**confusion**
84:18

**conjunction**
53:1

**consideration**
19:4,6,7

**consistent**
81:22

**construction**
69:19

**contact**
25:11 32:9,11,
15 45:19 79:18
86:21

**contacted**
26:21 67:17
72:15 75:10
76:19 81:17,24
85:2,8 93:14

**contacting**

26:14 32:12

**contained**
49:8,12 50:8,
10 83:5

**context**
60:6 96:2

**continue**
8:16 54:24

**continued**
13:25

**conversation**
26:22,25 27:10
28:5 31:5 32:6
61:11 82:19
87:20

**conversations**
6:4 63:8 97:7
101:11

**convey**
87:15

**conveyed**
77:19 87:16
90:11

**conveying**
87:14

**cooperative**
22:25

**copies**
43:20

**copy**
44:1 45:13

**correct**
11:11 15:5
19:11,14 24:16
26:17 29:1,2
30:10 34:10
39:23 44:6,13
48:7 50:17
53:22 54:4,5
55:11,19

56:10,11,18
57:17,18 58:16
59:23 61:9,21
62:1 63:5,18
64:16 66:9,10
67:3,9 69:10
71:8 72:24
75:23,24 78:8
79:15 80:2,11,
20,24 81:12,
13,20,21 82:2
84:3,24 85:5
86:13 87:3,4
88:13,18,23
89:17 91:4,9,
15,20,24,25
92:15,18,19,23
93:3,4 94:13,
14,16,17,20
95:3,4,7,8,12,
13,19,22 96:3
97:9,10,16
98:1 99:16
100:24 102:2

**correctly**
32:5 47:3
62:23 86:2

**counsel**
72:6 87:5
89:19

**Count**
45:18

**County**
7:11 8:2,6
11:5,22 13:16,
21 14:1,4,9,13
15:23 17:16
18:1,7 20:12
21:9 22:19
24:15 35:4
37:24 45:10,17
46:6 47:22
50:25 52:1
60:2,16 68:10,

18 70:2,6 71:4
72:1 75:11
80:16 81:17
82:12 85:3

**County's**
69:14

**county-wide**
72:9

**couple**
6:3 9:20 19:9
53:9 59:12
96:22 97:2

**court**
7:12,17 9:11
11:5 16:2
23:16 43:13,21
50:24 52:15,
18,21 54:19,24
55:6,10 56:6,
9,12,16,21,25
57:12,16 59:23
66:6,10 75:22
95:2 96:15
102:16

**Court's**
55:23 56:4

**creates**
48:1

**crime**
19:3 28:25
62:9 66:11,19,
20

**criminal**
7:11 8:23
11:2,5,18,23
15:24 16:6,8
20:18 21:6,20
22:21 23:21
27:17 30:3
32:5 43:6,20
44:12,14 45:2,
9,13 47:15,17

48:2,3 49:8
50:9,11,15
55:8 57:4
63:24 66:23
73:9,10,25
76:13,24,25
77:17 80:2
90:4,13 91:7,
18,19,23 92:2,
4,17,22 93:2,
16,20 94:13,22
95:18

**criminalizes**
32:8

**current**
6:17

**custody**
40:7 90:3

---

**D**

**DA**
68:25 75:9
87:18

**DA's**
41:17,20 85:13
91:19

**date**
8:10,12 41:3,
16 44:15 54:25
82:2

**dates**
13:18,20 14:17

**Davis**
4:2,15 8:9
48:7

**day**
24:18 26:12
33:23,24,25
34:1 76:12
85:25

**DCI**
63:22 78:2,25
79:2 80:10

**deal**
59:12

**dealing**
69:15

**dealt**
69:8

**decide**
95:6

**decided**
54:19

**deciding**
28:25 96:11

**decision**
29:6 33:23
54:25 65:14
66:3,6,8 75:22
95:20 96:4,16

**decisions**
63:2

**defendant**
7:11 8:20
21:17 51:21
53:24 54:13
55:6,24 56:2

**Defendant's**
46:20

**Defendants**
7:16

**defined**
32:11,14

**degree**
28:20 29:4
30:9,19 31:8,
24 32:2,19
33:18 34:4,15
38:4 39:3,13
43:23 45:18

68:1 73:14,15
92:6 97:15,20
102:1

**degrees**
12:20

**department**
40:18 46:9
71:15 80:1
87:8 93:9

**depends**
17:15

**deposition**
4:16 6:6 7:2
9:2 11:10,14
12:1,5,15
102:24

**depositions**
9:15

**deputies**
71:18

**deputy**
12:9 14:16,19,
21,25 15:1,8,
11 70:18
71:16,24 72:6
87:18

**deputy's**
15:9,12

**describe**
9:22 12:18
20:14 29:21
55:2 101:14,15

**details**
84:6

**determination**
66:12 77:8
101:17,21

**determinations**
23:21

**determine**
21:6 34:19
35:1 54:10
61:9,21 97:14

**determined**
56:7

**determining**
18:2 19:1
33:15,16 92:21

**difference**
71:24

**differences**
72:3,8

**direct**
22:10 75:1

**directing**
22:1,8

**directly**
75:11 85:5

**disagreed**
61:24

**disavow**
84:10,16

**discharge**
10:3

**discount**
84:10

**discovery**
16:1

**discretion**
21:10 61:25
62:10

**discrimination**
10:1

**discuss**
45:1

**discussed**
5:18 44:24
54:6 59:21

DAVIS   RUNDE
February 27, 2023

75:6 82:18

**discussing**
43:24 62:18
82:19 87:16

**discussion**
26:1 33:24
43:11 44:22
87:11 102:15

**dismiss**
66:6

**dismissal**
57:13 58:16
60:1,7,10

**dismissed**
56:8,12 57:16
59:22 60:6,19

**dismissing**
95:17

**disorderly**
31:7 39:8
66:14,20 73:4

**dispatch**
75:11

**disposal**
99:7,14

**dispute**
38:13 40:3

**distinction**
67:14

**distribute**
17:17

**distributed**
18:17,19

**district**
7:17 8:1,2,6,9
12:8,9 13:16,
21,23,24 14:1,
4,9,13,15,16,
18,19,21,24,25
15:1,5,7,8,11,

13,14,16,20
16:4,10,14,16,
22 17:7,8,12,
16,18 18:1,3,
6,12 20:12
21:9 22:19
23:9,20 24:15,
16 25:8,12
26:8,14 27:13
34:18,23 35:4,
5 37:25 41:24
42:25 47:22
48:7,15 50:1,4
51:25 53:10
58:8 60:2,17
62:18 65:7
68:10,16,17,
21,24 69:2,4,
8,12,14 70:8,
18,20,22,23,25
71:4,11,16,24,
25 72:1,18,20
74:18 75:15,21
76:2 78:5
79:25 80:16
81:17,24 82:3,
12 85:3 87:1,
12,22,23 88:2,
10 95:6,12
96:5

**disturb**
12:14

**Division**
63:24 80:2

**divulge**
8:13

**document**
40:10,16,20
43:17 45:6,8
52:12,20
63:19,21 64:6

**documentary**
63:12

**documentation**
50:3 101:22

**documents**
28:8 34:8,11
40:24 41:3,10,
13,17,20,23
42:7,24 43:1
44:1 95:1

**domestic**
16:12 19:17
69:10 70:15,
19,21

**double**
65:6,9,11

**doubt**
19:6 62:25
94:1

**draft**
48:9,12

**drafted**
40:18 46:8
50:9,11 90:4,8
91:10,18 92:2

**drafting**
49:3 91:7

**draw**
64:5 78:10

**Dropbox**
63:21

**drug**
19:17

**duly**
4:3

**duties**
8:1 46:18

**duty**
5:20 46:14

---

**E**

**e-mail**
85:22

**e-mails**
90:18,20

**earlier**
6:4 20:20
28:23 30:7
38:21 58:13
63:14 65:19

**early**
13:22

**Eau**
12:23

**education**
12:18,19

**effect**
83:23

**elected**
68:17,22,24
69:2

**electronic**
5:9 102:17,20,
21,22

**electronically**
48:4,6 92:4

**elements**
31:23

**Emilia**
96:20,22 102:8

**employed**
13:21 15:16
22:14 24:14
47:21

**employees**
9:1

**employer**
13:15

DAVIS   RUNDE
February 27, 2023

**employment**
   8:14 13:9 14:9
   16:15 17:2,6
   22:16

**encompasses**
   73:13

**end**
   54:17 59:11
   83:16

**ended**
   38:19 86:13,20
   94:25

**enforcement**
   18:16 21:2,15
   22:8 38:3
   46:6,14 72:16
   74:17,24 75:16
   76:1,20 78:6
   81:2,4

**enhancements**
   66:19

**enrolled**
   13:3

**enter**
   5:4

**entering**
   16:15 17:2

**entire**
   50:15 72:20

**entitled**
   43:5

**Eric**
   8:10 24:22,23
   26:7 40:19
   46:8 48:19
   84:20

**essence**
   5:24

**essentially**
   13:13 61:18

   64:7 66:2
   76:21

**establish**
   16:21 20:23

**established**
   39:21

**estimate**
   57:20 58:5,6
   76:8 77:20
   86:23

**ethical**
   5:20 19:4
   62:20,22

**evasive**
   52:25

**event**
   6:7

**events**
   42:17 53:6
   84:1

**eventually**
   92:23

**evidence**
   18:23,24 55:5
   56:25 63:12
   92:7 101:23

**examined**
   4:3

**exchange**
   28:7

**exchanges**
   28:7

**excluded**
   59:7

**excluding**
   10:6

**excuse**
   17:7 22:18
   25:12 33:17

   37:24 41:6
   50:12 51:9
   52:14 54:15
   57:2 59:2 86:7
   90:3 93:5
   98:25 99:15
   100:22

**exercise**
   5:13

**exercising**
   6:1

**exhibit**
   40:11,12,25
   41:4 42:6
   43:5,10,14,19
   44:24,25 45:1
   48:3 51:3
   63:17 64:15
   78:1,11,21
   89:17,25 90:8
   91:8

**exhibits**
   11:19 102:18,
   23

**exist**
   56:7

**existed**
   66:11 101:18

**expectation**
   85:24

**experience**
   17:4,12 34:23
   57:19 69:4,13
   74:11 75:25
   81:1,8 93:18,
   25

**experienced**
   16:16

**explain**
   5:16 7:10
   10:20 11:13

   14:17 18:11
   19:22 20:3
   23:3 24:24
   25:2 26:19
   31:9,14 32:2
   47:13 49:7
   54:8 67:13
   71:22 101:1

**explained**
   26:14 27:14
   28:23 30:7,16
   35:10

**explaining**
   33:20

**express**
   31:17,19

**expressed**
   31:6

**extent**
   9:3 20:14,24
   98:16

**extremely**
   37:4 72:4

---

**F**

**face**
   44:14

**face-to-face**
   87:11,21

**facing**
   76:22 77:2

**fact**
   29:16

**facts**
   12:16 46:25

**factual**
   9:3 100:13

**fail**
   94:8

DAVIS   RUNDE
February 27, 2023

**fair**
 11:9 14:4,7
 17:11 26:25
 29:20 30:20
 31:3 38:1 40:6
 41:15,19,22
 50:23 52:6,8
 53:7 54:2
 60:14 74:10
 75:13,14 82:4
 83:25 84:5
 91:6,12,17,21
 92:10,20 94:22
 95:15,24 98:23

**familiar**
 7:4,6,10
 79:20,21

**feel**
 6:13

**felony**
 54:12,13 55:7
 66:9,13,14
 69:25 70:2
 73:12

**felt**
 18:22

**file**
 18:14,16,18,20
 23:16,17 63:21
 95:1,7

**filed**
 7:15,21 11:18,
 23 44:16 45:3,
 9,14 50:22,24
 57:5 66:23
 75:22 91:14,24
 92:3,23 95:18,
 21

**files**
 45:2

**filing**
 16:2 20:18

 21:20,23 47:6
 50:5 75:23

**finding**
 56:4 102:1

**fine**
 95:13

**firm**
 22:14

**first-hand**
 99:24

**five-minute**
 24:1 59:16

**fleeing**
 35:6

**flip**
 40:23

**focus**
 29:3

**follow-up**
 68:4 90:12
 94:5 97:3
 100:24 101:2,
 5,8

**forgive**
 71:14

**form**
 10:14 16:18
 17:19 19:24
 20:16 21:18
 22:2 25:13
 27:2 30:23
 31:11 32:21
 33:4,22 35:15,
 25 42:2,10
 44:2 47:8
 49:18 50:14
 57:6,22 60:3
 62:2,13 81:5
 99:21

**formal**

 21:16,19

**forward**
 27:23 94:23

**found**
 46:15 66:10
 83:15

**foundation**
 10:15 16:19
 25:5 26:4 27:3
 33:5 36:1 47:9
 48:24 49:18
 57:7,23

**fourth**
 31:8 73:14
 81:15

**frame**
 70:7

**free**
 6:13

**freshman**
 12:24

**front**
 63:20 78:1

**froze**
 96:24

**frozen**
 82:22

**full**
 4:13 93:7

**fully**
 5:13

**furtherance**
 5:22

────────────

        **G**

────────────

**gain**
 17:12

**gathered**

 34:9

**gauge**
 27:8

**gave**
 34:3 78:19

**general**
 19:25 20:2
 23:19 33:12
 36:20 60:10,15
 65:13 68:9
 79:6

**generalists**
 70:10

**generally**
 18:11,14,25
 19:6 20:6,13,
 25 21:1,3,7,13
 22:5,10,11,24
 23:17 28:24
 33:13 34:25
 35:3 36:23
 37:1 41:1
 42:12 43:18
 49:4 54:8,10
 56:6 59:25
 60:13 62:22
 65:15 67:21
 69:5 71:22
 72:5 73:12
 74:19,21 76:16
 78:13 79:19
 82:17 83:22
 85:21,22 87:15
 88:16,19 95:13

**give**
 35:7,22 42:18
 43:14 72:11
 73:23 76:8
 82:24

**Goetz**
 51:22

**good**

DAVIS - RUNDE
February 27, 2023

4:7 24:1 61:5,
6 73:3 102:7,
9,10

**graduated**
13:1,6

**graduation**
13:7,11,15

**gratification**
32:16

**great**
23:6

**greatly**
33:2

**Greg**
47:19,20,21
49:15,17

**Grube**
98:14 99:3,16,
20 100:5

**Grube's**
98:16

**guess**
5:24 11:3
16:21 20:16
21:23 26:19
50:12 53:14
60:13 67:7,13
73:5 82:11
83:3 84:17
92:24 95:19

**guessing**
77:16

**guys**
59:15

**H**

**Hagenbucher**
47:19,20,21
48:4 49:15,17,

19 50:5,7
93:6,10,11,13,
19,24 94:8,20

**Hamline**
13:3

**handed**
83:17

**handle**
70:9

**handling**
17:13 18:3

**Hannah**
51:17,24

**happen**
59:25

**happened**
77:21 79:3

**harm**
73:19

**he'll**
82:24

**hear**
69:18,21,23

**heard**
80:7

**hearing**
11:21 43:21
51:9,13 52:2,
7,11,18,22
53:17 54:4,7,
9,10,17 55:5,
18,21 56:1,5,
24 60:7,9,19
65:18,21,25
66:4,7,12 91:1
94:15,20 96:2,
13

**hearings**
9:11 47:24

**Heiser**
79:14,21 83:7,
19,20 84:7

**held**
14:21 26:1
43:11 44:22
53:17 102:15

**helpful**
36:22 37:4
42:16

**helps**
76:23

**Hendra**
4:6,8 7:24
8:15 9:18,19
10:19 11:7
16:20 17:23
20:2,5,20
21:12,22 22:4
24:5,9,12
25:9,20,25
26:2 27:7
29:11,19 30:4,
6 31:2,13
33:1,11,25
34:7 35:21
36:2 37:9,13
40:1,5 42:4,5,
15,21,23 43:12
44:7,21,23
47:12,16 49:6
50:2,18 57:14
58:4,23 59:9,
14 60:8,25
62:2,13 64:9,
13 82:23 96:6,
20 97:2,5
100:1,15,18
102:8,11,17

**history**
69:24

**hold**
10:12

**home**
89:4

**homicide**
79:23

**Honor**
56:19

**hours**
26:11 74:23
75:8

**humiliation**
32:17

**hundred**
74:8 77:20
86:14

**hypothetical**
62:14 73:19

**I**

**identified**
69:6

**identify**
71:18 87:7

**illness**
5:25

**immediately**
13:11 17:2
40:7

**impact**
33:3

**inappropriate**
35:20 57:2,3
99:1

**inappropriately**
27:16,24

**incident**
57:3 65:24
86:12 99:1

**include**

DAVIS RUNDE
February 27, 2023

34:8

**included**
18:15 49:5
90:19 91:14
92:22 93:2

**including**
9:1 48:22
75:15

**incorrect**
39:10

**individual**
20:14,24 24:21
26:16 28:25
35:9 75:10
99:19 100:8

**individual's**
33:3

**individuals**
5:1 7:4 10:8
12:4,7 15:6
100:2

**information**
5:17 8:13 9:3
19:10 21:7
27:18,20 28:7,
14,17,24 29:12
31:22 33:15,19
34:2,5 39:12,
18 40:2 47:3,6
48:1 49:5,8,
10,11,15,16,24
50:3,7,8,10
56:20 57:12
58:21 59:3,7
63:9 67:25
76:2,21 77:10
80:23 82:8
83:4,8,19
84:12 86:11
87:14,16 88:3,
6,17,20,21
92:11,13

93:12,15,17
94:2,6 97:13,
17,18 98:4,5,
6,11,17,21,24
99:7,8,13,18,
22 100:3,9,14,
22,23 101:2,9,
13,17,19

**informed**
12:8,13 27:22
28:17 35:11
88:25

**informing**
75:2

**inherently**
56:9 77:7

**initially**
17:9

**initiate**
36:7,11 37:2

**initiated**
25:7 26:7

**input**
99:15

**inquire**
89:9

**instance**
83:13 92:24

**institutions**
12:20

**instruct**
36:7,23

**instructed**
36:10,16

**instructing**
36:13

**instructions**
35:23 63:15

**intended**

11:10 62:9
83:7,11

**intending**
82:11

**intent**
9:12

**intentionally**
32:12

**interaction**
71:23

**interactions**
79:25

**intercourse**
32:9

**interest**
46:22

**interests**
5:23

**interim**
14:16,21,25
15:8,11 71:17
87:10

**interrupt**
59:10

**interview**
63:22 79:9,17
81:11 82:10
83:5,9,25 84:7
90:12

**interviewed**
63:23

**interviewing**
79:2 81:5

**interviews**
89:10

**intimate**
32:12,14

**introduce**
44:25 63:17

**investigated**
46:12

**investigating**
74:20 76:4
95:9

**investigation**
25:19,21,22
34:9 63:24
77:1 80:2 81:2
86:12 91:13,20
92:22 94:3,25

**investigations**
72:12,14 78:7

**investigator**
47:23 48:19
93:8,11

**investigators**
79:2

**involve**
29:13

**involved**
7:12 15:25
23:16 53:1
70:3 71:7
72:13 87:19
90:19 93:1,19,
23 95:14,19

**involvement**
11:2 90:1
92:20 95:16,25
96:11,14 98:17
99:16

**involving**
69:15 78:7

**issuance**
30:2

**issue**
20:15 21:19
54:25 55:23
75:5 76:22

DAVIS   RUNDE
February 27, 2023

**issued**
   95:17

**issues**
   83:1 94:10

**issuing**
   16:1 18:8,13
   20:17,22,25
   21:16,20,25

**iterations**
   93:11

---

**J**

**J.D.**
   13:6

**JANISCH**
   10:18,25 25:15
   27:5 30:25
   32:23 33:7
   35:17 44:4
   47:11 49:21
   57:9,25 59:9
   60:5 96:24
   102:10,21

**Jessa**
   51:21 53:24

**join**
   9:16 10:16,17,
   18,23,24,25
   25:14,15 27:4,
   5 30:24,25
   32:22,23 33:6,
   7 35:16,17,18
   44:3,4 47:10,
   11,12 48:25
   49:20,21 57:8,
   9,24,25 58:1
   60:4,5 62:4,15

**Jonathan**
   70:25

**Judge**
   95:16

**July**
   13:25

**jumped**
   86:6

**June**
   13:22 52:19,22
   53:18 54:7
   55:11 64:1
   79:13 80:14
   83:10,25 84:8

**jurisdictions**
   35:8

**jury**
   16:3

**Justice**
   80:1

**juvenile**
   19:18

---

**K**

**Kerri**
   15:7,10,12

**key**
   72:8

**Kiley**
   8:19 61:3
   64:10

**kind**
   71:22 78:14,20

**Kirsten**
   4:8

**knowledge**
   7:9 26:10 35:6
   38:6 40:9 53:6
   57:11 58:14
   59:4 93:12
   94:17 96:10

**Krause**
   8:10 9:1,5,17

24:22,23 25:3,
11 26:7,21
27:13 28:6,13
29:9,18 30:8,
15 31:5 32:6
33:19 34:3,14
35:10,23 36:7,
11,13,16 37:6,
15,19,22 38:2,
16,23 39:1
40:19 46:8
48:19 49:10,19
61:4,12 63:8,
16 64:20 65:3,
5 66:22 67:1,
8,11,16,22
74:13 76:11
81:16,23 82:3,
12 83:15,23
84:20 85:2,8,
9,12 86:16
88:12,25 89:2,
3,9 90:15,19,
22 91:1,14,20
92:12,17,25
93:14 94:5,12
95:15,24
96:10,14 97:8,
12 98:7,10,11,
18,22 99:3,9,
11,14,19
100:4,6,20
101:9,12,20

**Krause's**
   30:12 39:8
   94:23

---

**L**

**labeled**
   40:12 45:2

**larger**
   72:6

**lasted**
   26:23 27:1

**late**
   29:24

**law**
   13:4,5,8,12,15
   18:16 21:2,15
   22:8,14,22,24,
   25 32:3 38:3
   46:5,14 72:16
   74:17,24 75:16
   76:1,19 78:6
   81:1,4

**Lawrence**
   12:9,10,11
   53:2,20,22
   54:16 70:18
   71:21 79:3
   87:19 90:24
   91:10

**lawsuit**
   9:23 10:8,13

**lay**
   26:4

**learn**
   20:23

**leave**
   5:5 15:2,4,9
   22:21

**led**
   8:3 73:25
   97:13,17

**left**
   13:23 14:3,6
   22:18 53:10

**legal**
   13:2 37:2
   75:17 76:21

**legs**
   6:8

DAVIS   RUNDE
February 27, 2023

**lengthy**
  42:3 43:15

**level**
  11:6 39:13
  73:9 77:12

**life**
  33:3

**lifetime**
  6:14

**limited**
  6:5 8:7 67:11

**lines**
  45:16

**list**
  52:5 54:3

**litigation**
  9:24 23:14,17

**located**
  4:20,24,25

**log**
  82:24,25

**long**
  6:6 26:22
  68:20,23 78:19
  86:20 101:16

**lose**
  82:20

**lost**
  82:23

**low**
  60:13

**low-dismissal**
  60:16

---

**M**

---

**made**
  22:1,9,10,11
  27:24 31:12

**make**
  12:22 29:14
  33:12 35:12
  40:25 41:3
  78:23,24 88:1,
  5 101:17,20

**makes**
  43:17 46:6
  47:25 55:5
  75:21

**making**
  23:21 31:9
  35:23 82:17
  83:15

**management**
  72:8

**manner**
  69:16

**Marathon**
  7:11 8:2,6
  11:5,22 13:16,
  21 14:1,3,9,12
  15:23 17:16,25
  18:7 20:12
  21:9 22:19
  24:15 35:4
  37:24 45:10,17
  46:6 47:21
  50:25 52:1
  60:2,16 68:10,
  17 69:13 70:2,
  6 71:3 72:1
  75:11 80:16
  81:17 82:12
  85:3

**March**

14:20

**March/april**
  68:13

**mark**
  43:5,13

**marked**
  40:11 48:17
  91:8 94:18

**marking**
  43:9

**Marschall**
  70:22

**materials**
  28:8 34:8 38:7
  41:24 42:25
  90:17

**maternity**
  15:1,3,9

**Mathis**
  4:10 7:5,6,15
  9:25 11:4
  25:22 29:4,17
  33:17 35:24
  36:8,12,14,16
  38:3,9,11
  39:2,18,21
  40:6 41:25
  42:9 43:22
  45:10,14,24
  57:1 58:15
  59:5 63:16
  64:21 89:4
  90:3 94:13
  96:2,12,16,17
  97:15 98:25

**Mathis's**
  9:23 10:13

**Mathises**
  11:10

**matter**
  4:9 8:24

11:11,19 23:15
  30:16 33:16
  55:11 56:10,12
  57:4,16 58:16
  65:8 73:8
  95:16

**matters**
  46:12

**Mcgarry**
  70:24

**meaning**
  75:23 94:25
  95:19 96:3

**means**
  30:2 32:3

**meant**
  72:14 81:8,9

**medications**
  5:25

**meet**
  23:18 97:19

**meeting**
  80:5

**meetings**
  72:9

**meets**
  77:12

**memory**
  5:14 6:1 32:5
  81:22 84:6

**mental**
  73:19

**mentioned**
  6:4 18:5 19:9,
  11,19 20:6
  44:13 58:13
  62:19 63:3
  70:5 71:16

**merits**
  10:13

DAVIS · RUNDE
February 27, 2023

message
  5:9 75:2 89:21

messaging
  67:15

met
  31:23 39:13
  79:14,22 80:9,
  14,15,19

Michael
  79:14,22 83:7
  84:8

middle
  81:20 98:9,13
  99:2

Mike
  8:16

mind
  59:11 73:23

minimal
  72:4 98:20
  99:15 100:5

minor
  29:5 30:10,19
  32:3,19 33:18
  34:16 38:4
  39:4 97:16
  102:2

minute
  59:12 66:25

minutes
  27:1 38:22
  59:12 86:23

mischaracterizin
g
  101:6

misconduct
  72:17 73:11

misdemeanor
  66:17

misheard
  33:8

missing
  67:14

misspoke
  10:5

misstate
  30:17

misstates
  35:15

misstating
  19:12

Mm-hmm
  36:25 53:3

Molly
  12:10,11 53:2,
  21 70:18 71:20
  79:2 87:19
  90:24

moment
  40:23 42:19
  43:15 86:1

Monday
  81:15

month
  41:10

Moran
  95:17

morning
  4:7 24:20,23
  26:11,15 27:23
  34:6 36:4
  38:18

Mosinee
  7:16 8:9,20,25
  9:5 40:18
  44:10 46:8
  51:4,6,7,11,
  12,15 52:13,14
  53:15 54:19

55:13 56:14
  78:11 81:20

motion
  55:6

motions
  16:2,3 23:17

mouse
  96:24

move
  55:13 56:14

moved
  14:6

multiple
  77:23 78:6

municipal
  22:24

**N**

named
  7:4 24:21

narrative
  34:18 35:1,11
  81:5

Natalie
  70:20

nature
  8:25 9:5,23
  10:7 16:25
  76:10,25 88:18
  95:2,21

necessarily
  8:24 9:9 54:12
  73:25 90:15

needed
  34:20 75:6

Nicholson
  51:21 53:25

night

11:20

note
  12:10

notes
  42:22

notified
  11:9

November
  68:22

number
  11:19 15:17
  37:21 40:25
  42:1,6 43:10,
  14,19 44:9
  45:10 63:18

**O**

oath
  4:3

object
  10:14 16:18
  17:19 19:24
  20:16 21:18
  22:2 25:5,13
  27:2 29:7
  30:23 31:11
  32:21 33:4,22
  35:14,25 39:24
  42:2,10 44:2
  47:8 48:24
  49:18 50:14
  57:6,22 58:19
  60:3 62:2,13
  96:6 99:21

objected
  59:3

objection
  29:13 59:1
  80:7

objections

10:22 49:2

**obligation**
62:20,22

**obtain**
13:8 41:13

**obtained**
8:14 12:19

**occasion**
7:7

**occur**
85:22 91:5
97:20

**occurred**
5:22 11:22
14:19 28:8
34:22 37:5,14,
18 42:17 53:4
64:1 67:17
75:8 78:17
81:10 85:10
91:4 97:22,23
99:1 101:16

**occurring**
38:6 83:22
84:1

**occurs**
55:4

**off-the-record**
26:1 43:11
44:22 83:1
102:15

**offenses**
46:5

**offer**
36:20

**office**
4:23,25 8:2,6
12:13 13:16,
22,24,25 14:2,
4,10,13 15:15

17:7,15,17
18:1,18 20:13
22:19 23:9
24:15 25:3,8,
12 26:8,15
27:14 34:19
35:5 36:15
37:18,22,24,25
41:17,21,24
47:22 50:4
53:10 58:8
60:2,17 68:11,
21,24 69:14
70:4,12 71:4
72:2,19,21
74:18,25 75:21
76:2 79:5
80:16,17
81:18,24 82:4,
13 85:3,13
87:1,22,24
88:2 89:6
91:19 92:14
95:6,18 96:5

**office-wide**
85:22

**officer**
8:10,12 9:1,4,
17 21:16 22:8
24:22,23 25:3,
11 26:7,21
27:12 28:6,13
29:18 30:8,12,
15 31:5 32:6
33:19 34:3,13,
14,25 35:10,23
36:7,11,13,16,
23 37:6,15,19,
22 38:2,16,23
39:1,8 40:18
46:6 49:10,11,
19 61:3,12,19
62:9,11 63:8,
16 64:20 65:2,

5 66:22 67:8,
10,15,22 72:16
74:13 75:1,3,
4,12 76:11,22
77:8 81:16,23
82:3,8,11
83:15,19,23
85:2,8,9,12,23
86:1,16 87:15
88:4,12,25
89:2,3,4,9
90:14,19,21,25
91:14,20
92:12,17,25
93:5,6,10,13,
14,18,24 94:5,
8,11,20,23
95:9,15,24
96:10,14 97:8,
11 98:7,10,18,
22 99:2,9,11,
14,19 100:4,5,
20 101:9,12,20

**officers**
46:11,14,16
76:1 78:8 83:6

**officers'**
20:9

**on-call**
75:10

**open**
43:7,8

**opened**
18:14

**opinion**
11:3,4 32:18
39:10,13
65:15,17 87:2

**opinions**
10:12,20 11:1

**opportunity**
100:25

**opposed**
70:10

**oral**
55:23

**order**
54:20

**orders**
102:16

**ordinance**
15:25

**originally**
62:11

**overlap**
23:7,12,19

**OWI**
19:18 70:5

---

**P**

---

**p.m.**
80:19 81:16
102:24

**pages**
40:23 48:22
50:16 51:11

**paper**
5:10

**paragraph**
46:1,19 64:7,
17 80:18,20
81:14,15 83:14
85:7 89:7,8

**paragraphs**
83:12

**parsed**
73:16

**part**
32:12,14 55:8
60:18 95:10

DAVIS RUNDE
February 27, 2023

partake
  53:5

participated
  9:9

participating
  9:14

parties
  54:20 89:1

party
  9:14

passing
  78:23

past
  93:18,25

Paul
  4:9 7:5,14

PDF
  102:19

penal
  46:22

pending
  6:12

people
  10:10 71:6
  81:3,4 100:2

percent
  86:14

performance
  46:17

period
  42:3 86:22
  87:11 92:1
  100:10

person
  32:13 53:22
  81:12 94:19
  99:22

personal
  10:12 11:3

32:18 38:8
40:9 52:23
58:3

personally
  7:1 48:9 52:6
  54:3 58:3 74:9

phone
  24:25 26:7,15,
  17,22,25 27:12
  28:9,15 29:17
  30:21 33:20
  34:6,11 36:1,
  3,6 37:6,7,10,
  15,17 38:15,
  17,19,23,25
  61:11 65:2
  66:22 67:7,11,
  21 84:19,23
  85:13,16
  89:13,15,22
  97:12,22 98:7,
  8,18,24 99:6,
  10 100:6,9

photographic
  18:23

photos
  63:11

physical
  4:19 5:24

piece
  88:19

pin
  76:23

PL142
  50:12

PL143
  48:17 50:12,
  13,19

PL144
  48:18 50:13,19

place
  27:10 74:14,
  18,22 97:24
  99:13 100:11

Plaintiff
  51:16 53:21
  55:15 56:1

Plaintiffs
  4:9 9:4

plan
  42:16

played
  94:24

point
  9:21 14:15
  28:11 29:17,23
  31:6 34:1
  36:6,10 38:2,
  25 41:12 42:18
  54:18 56:23
  58:20 63:17
  65:6 67:15
  68:15,18 70:1
  73:3 74:5 79:7
  82:17 86:15
  88:16 92:1
  95:9 101:24

police
  40:17,18 46:7,
  8 72:15 74:2
  93:9

pop
  79:3

population
  60:18

portion
  34:21 69:7
  91:13

portions
  78:25 92:21
  93:1

position
  8:21,22 14:14,
  22 23:1,10

positions
  23:13

post-high
  12:19

potential
  39:6 72:16
  74:19 76:3
  95:10

practice
  36:20 65:13
  72:7 81:3

practicing
  22:23

preclusive
  8:25

preference
  61:13

prejudice
  56:8,13,18,19
  59:22 95:17

preliminary
  47:24 52:18,22
  53:17 54:7,8
  55:5 60:7,9,19
  65:18,21,25
  66:3,7,11
  94:19

premised
  29:16

preparation
  38:8 40:21
  90:17

prepare
  11:14 12:1

prepared
  46:13

DAVIS RUNDE
February 27, 2023

present
  56:20,24 102:2

presented
  41:8 57:12
  75:18 92:8
  97:13 98:5,6
  99:2,9 100:3,8

presently
  4:20,24 5:1

prevent
  6:1

previously
  26:6 50:21
  59:21 78:19
  84:14

primary
  6:18 15:21,22
  20:21 23:3

principal
  98:9 99:3,16,
  19 100:5

principal's
  98:13

prior
  7:2 27:23 36:4
  37:19 39:15
  40:22 50:5
  55:25 66:23
  97:8,24 99:8,
  12 100:10,20
  101:3,9

privilege
  5:21 7:22 59:7
  87:6,25

privileged
  8:8 9:13 58:20

probable
  11:6,21 19:2
  46:10 51:9,13
  54:11 55:24
  56:7 66:8,10,

12 68:2 77:8,
12 97:14,19
101:18,25

procedural
  49:23 55:8

procedurally
  47:25

proceeding
  8:23 94:12

PROCEEDINGS
  4:1

process
  17:25 18:4,12

professional
  7:8 8:4 11:3
  39:10 46:17

pronounced
  51:18

prosecute
  95:7

prosecuted
  57:20 70:1
  73:21 74:6

prosecuting
  16:5,9 41:25
  42:3 66:2
  81:18 82:1,13

prosecution
  9:6 11:2 22:21
  42:8,11,14
  43:22 57:1
  72:4 94:13,23
  95:11

prosecutions
  15:24

prosecutor
  7:12

prosecutors
  60:1

proved
  19:5 62:24

provide
  6:17 15:20
  34:25 97:17

provided
  11:20 28:13
  34:6 39:12,19
  49:16,19 50:4,
  8 67:25 80:24
  83:9 84:12
  86:11 92:12
  94:2 99:14
  101:19

providing
  16:1 27:18,20
  28:18 31:19,23
  49:14 83:18
  88:4,5

public
  9:10

Puig
  15:7,10,12

purported
  46:12

purpose
  9:2 48:22 88:1

purposes
  32:16

put
  7:22 8:17

puts
  55:4

Q

qualification
  84:14

qualify
  66:18

quantify
  21:14 22:6
  72:14

quarter
  59:17

question
  6:11,12 29:8,
  15 36:5 39:15
  56:17 58:25
  59:6 60:7 62:6
  71:5 76:14,18
  96:7

questioning
  26:5

questions
  9:8,21 28:23
  43:3 59:15
  60:22 61:6
  63:13 68:3,5,9
  74:19,21 75:17
  76:3 77:16
  78:16 88:15
  93:14 94:6
  97:1,3 100:24
  101:3,5,8,14,
  19

quick
  65:14

quote
  83:15,17

quoted
  83:17

R

R-U-N-D-E
  4:15

raised
  31:23

ranged
  15:17

DAVIS  RUNDE
February 27, 2023

**rate**
60:1,10,16

**reached**
94:5

**read**
47:3 54:14
64:24

**reading**
53:15 54:24
55:9

**realm**
76:15

**reask**
36:5 62:5

**reason**
5:12,16 38:13
40:3 44:5 82:7
84:10,15 92:5,
25 94:7,16

**reasonable**
19:5 62:25

**recall**
10:10 13:17
14:3,23 15:15
22:18 25:10
26:22 30:12
34:21 35:19,22
36:9,10,13,15,
17 37:5,12,14,
16,17 38:18,22
39:20,25 40:24
41:2,9,12,16,
18,23 42:6,24
44:15 48:10
49:3 50:3
55:21 56:4
57:11 61:11,16
62:20 63:7,12,
23 65:5,16
66:21 67:15,
20,21 83:21,22
85:8 86:2,4,

12,15,21 87:6
88:22 90:14,
16,20,23 91:2,
3,4,5 95:23
98:16

**recalled**
83:14

**receive**
19:19,22 20:7
22:7 24:21
77:4

**received**
8:5 18:15
41:17,20 58:21
91:19

**receiving**
21:15 101:12

**receptionist**
74:25 75:1

**recess**
24:11 59:19

**recognize**
45:5,8

**recollection**
27:12,22 28:10
32:8 38:9
43:16 52:10,
21,23 55:22,25
56:6 57:10
58:17 64:19,
23,25 67:23
69:1 79:4,6
85:10,18,19,21
87:18 89:14,
21,25 91:7,9
96:14 98:8,21
99:10 100:12,
17

**recommend**
29:6

**recommendation**

31:10,12

**recommendations**
96:15

**record**
4:13 7:23 8:17
24:10 25:24
43:10 44:20
102:14

**records**
89:3

**refer**
12:11 40:10
42:17 43:4
53:14 56:13

**reference**
78:23 79:7
86:5,9

**referenced**
79:1

**references**
89:6

**referral**
21:15 22:7

**referred**
21:2 42:7
61:8,14,23
69:9 74:1
93:10

**referring**
12:11 20:8,9
21:3,21,22,25
25:21 50:11

**reflect**
84:13 89:3

**reflected**
99:23

**reflecting**
82:9

**refresh**
43:16 64:19,23

89:14

**refreshed**
38:7

**regard**
81:19

**regular**
46:14

**Reimer**
79:14,22 83:7
84:8

**relate**
72:4

**related**
38:3 43:21
46:12 47:1

**relates**
43:22

**relating**
9:8,10 86:5

**relayed**
25:1

**relaying**
98:11,17

**reliable**
46:21,25

**relied**
33:15 41:24
42:8,25 46:10
47:6

**remember**
29:12 71:12
79:10 80:15
83:18 85:20
86:18

**rephrase**
17:24

**report**
46:13 63:22
78:2,25 79:12

83:5 89:6,7
91:20 93:2
94:3

**reported**
81:19 82:5,20

**reporter**
43:13 102:16

**reporting**
49:11 82:8

**reports**
16:1 18:15,21,
22 19:1,2,20,
23 20:7,8,9,10
21:5 22:12
40:17 46:7,10
47:2 62:8
63:4,9,11
72:15 74:2
78:7 81:2
92:12

**represent**
4:9 8:19 15:22
52:19 61:3

**representation**
5:19

**represented**
38:11

**request**
41:13 63:4
95:14 96:4
100:22 101:1,8

**requested**
63:9 95:11

**requesting**
81:18,25 88:4
95:25

**required**
77:7 101:17

**requirements**
37:2

**requisite**
37:2

**reside**
6:21,23

**residence**
6:18

**Resource**
8:10

**respect**
5:21

**respective**
46:17

**response**
27:13 30:12
31:4

**responsibilities**
8:5 15:4,21,22
18:8 20:21
23:4,8,12,20
62:18 72:1,3

**responsibility**
21:5 23:18
61:20

**responsible**
16:5,9 17:13
18:3

**restate**
58:25

**restrictions**
96:1

**result**
26:14 57:15

**resulting**
57:1,2

**results**
8:23

**resumed**
14:8 15:4

**retired**
93:9

**return**
15:3,12

**returned**
13:24 14:8

**returning**
85:8,12

**review**
18:18,21,23
19:20 20:7
21:5 34:11
38:7 46:7 47:1
48:14 61:9,15,
20 63:4 64:4,8
78:14 87:2
90:17

**reviewed**
11:18,19,20,23
62:10 65:18
72:18 74:2,9
78:6 91:10
92:13

**reviewing**
15:25 18:25
22:12 72:15
74:11 81:1
92:11

**Riley**
12:14 22:14,
20,23 23:1,5,
10,18

**Riley's**
23:15

**ring**
98:14

**risk**
35:5

**role**
15:7 23:4
71:17 79:24

94:24

**roles**
72:3 75:14

**rolling**
41:7

**Roman**
8:18 10:14,22
16:18 17:19
19:24 20:16
21:18 22:2
24:3,7 25:5,
14,23 27:2
30:1,24 31:11
32:21 33:4,22
35:16,25 39:24
40:2 42:2,10,
20 44:2,19
47:8 48:24
49:18 50:14
57:6,22 59:17,
20 60:4,24
64:14 68:4,7
80:11,13 82:21
83:2 87:13
88:9 89:18,23
90:9,10 96:8,9
99:21 102:7,
14,19

**room**
5:2,5 98:9

**Rory**
70:24

**rough**
76:8

**roughly**
71:12

**rule**
49:23

**ruling**
55:23 95:17

**run**

DAVIS   RUNDE
February 27, 2023

42:16

**Runde**
4:2,8,15 8:4,
9,19 9:21
20:21 26:3
45:6 48:7
58:21 61:3
63:22 80:24
83:14 85:7
89:9 97:1,6

**Runde's**
7:25

—————————

S

—————————

**S.C.**
12:14

**schedule**
52:21 55:10

**scheduled**
52:18 55:21

**school**
8:9 12:19
13:4,5,6,8,12,
15 22:24 81:20
98:9,13 99:2

**scope**
29:9 87:6

**screen**
40:14

**search**
77:6,11,15

**seek**
65:15,17

**seeking**
75:3,12

**send**
48:13 75:2

**sends**
5:8

**sentence**
80:22

**September**
13:23

**series**
40:17

**serves**
32:5

**services**
67:16

**set**
52:15 55:10
59:15 62:8
70:4 79:9

**setting**
7:8

**severity**
16:24

**sexual**
16:11 17:1,9,
13 19:16 28:20
29:4 30:9,19
31:8,24 32:2,
8,9,11,16,17,
19 33:18 34:4,
15 38:4 39:3,
13 43:23
45:18,19 68:1
69:9,16,25
70:2,14,19,21
72:17,24,25
73:3,4,7,8,10,
13,14,15,20
76:15 81:19
82:5,16,20
92:6 93:21,23
97:15,20 102:1

**Shane**
79:14,21 83:6
84:7

**shared**

10:7

**sheet**
44:14

**short**
24:11 59:19
86:22

**sides**
56:1

**sign**
92:17

**signature**
52:15

**signed**
48:4,6 49:2

**significant**
74:11

**signing**
92:4

**signs**
48:14,16

**similar**
69:14 76:10
84:18

**simply**
98:21 101:12

**sit**
84:2 89:20

**sitting**
11:8

**situation**
30:8 75:18
77:18

**situations**
36:21 69:10

**small**
60:18

**social**
67:16

**socialize**
7:7

**solving**
73:10

**sort**
5:8 34:17 68:8
69:8 70:3,14
74:3 79:4
94:24 100:23

**sorts**
18:2 42:25

**sounds**
69:20 71:6
85:2

**sources**
99:24

**Spain**
14:6,8

**speak**
4:11 11:25
25:3 49:4 67:5
81:18,25 82:13
85:4

**speaking**
11:15 18:11
20:6,13,25
21:1,8,13 22:5
34:25 54:8,10
90:14,16

**special**
79:13,19 80:1
83:6,19 93:8

**specialization**
69:25

**specialize**
73:3

**specialized**
70:18,20,22,24
71:1,8

DAVIS RUNDE
February 27, 2023

specialty
 16:11 18:18,
 19,20 19:12,16
 69:9,15 70:5,
 12,14 73:17,21
 74:3 86:5

specific
 4:23 8:4 9:12
 12:20 16:8
 18:4 21:4
 24:18 40:2
 54:12 75:2
 76:21 84:6
 86:9 90:21
 91:7 93:20
 96:1

specifically
 10:11 16:19
 30:14 33:9
 65:16 76:17
 83:21 85:19
 92:24

specificity
 23:6 26:24
 38:24

specifics
 20:1,3 23:24

speculate
 53:8,13

speculating
 86:8

speculation
 62:3

spell
 4:13

spent
 97:6

split
 15:8

spoke
 24:23 26:16

97:11

spoken
 87:7

spring
 70:7 71:11,19
 72:2 79:22

staff
 18:14,15 72:9

stages
 42:13

standard
 72:7 97:19

start
 12:17,21 22:16
 53:15

started
 4:12 16:25
 17:6

starts
 46:1 48:18

state
 4:13,19 5:19,
 20 8:7,21,22
 9:7 15:23
 45:17,23,24
 55:4 56:20,23
 58:14 59:4

State's
 42:8

stated
 61:17 84:11

statement
 8:21 9:17 39:8
 83:15,23 84:13

statements
 46:21,23

States
 7:17

stating

83:3

statute
 32:7

stem
 11:1

stemming
 22:12

stems
 5:18

step
 96:8

steps
 75:6

stop
 66:24 73:2

stopped
 79:4

strategy
 94:10

street
 4:21 6:17

stretch
 6:8

strike
 43:2

structured
 68:11

student
 27:16,23 28:1

students
 28:3 65:24

studies
 13:3

subject
 57:4 58:24
 59:1,2

submit
 34:18 54:20

submitted
 56:2

subpoena
 77:6

Subsection
 32:7

subsections
 32:4

substance
 90:15 91:5

sufficient
 35:8 97:18
 101:20

suggested
 34:17 62:11
 64:20

Suite
 4:21

summarize
 51:10 81:3

summarized
 51:9

summary
 80:23 81:10
 82:9 83:8
 84:11,15,16
 91:12

summation
 47:5

support
 18:14,15 102:1

supported
 92:7

supposed
 29:16

surprised
 30:18

suspect
 35:6

DAVIS   RUNDE
February 27, 2023

swear
  93:16

sweep
  79:23

sworn
  4:3

———————————

T

taking
  4:10 99:13
  100:11

talk
  70:4 73:2
  76:16 77:25
  79:8 85:11

talked
  61:7 86:25

talking
  17:20 19:25
  20:17,19 33:23
  36:1 42:12
  68:12 70:7
  71:23 75:13
  91:22 97:7

teacher
  27:15

technical
  83:1

telephone
  27:11 97:7
  100:4,20

telling
  26:6 35:19
  65:16 98:22
  99:23

ten
  58:6

tendency
  72:5

term
  19:12 55:3
  73:12 87:2

terms
  16:23 23:8
  60:11

testified
  4:4 30:15
  31:12 39:25
  76:11 84:14
  86:10,24 94:19
  97:11 100:19
  101:4

testify
  47:23 94:12,15
  95:1 96:3

testifying
  12:5

testimony
  7:2 11:14
  30:18 35:15
  61:7 65:19
  84:19 89:11

text
  67:15 89:15,21

texted
  89:12

theory
  49:14,23

Theresa
  12:8 68:19

thing
  6:10

things
  6:3 9:10 16:24
  19:9 32:15
  53:4 62:19
  63:5 70:6
  78:15 96:22

thought

31:6,15 61:13
  80:7

thoughts
  88:13

time
  4:10 5:4,8 8:3
  14:5 15:9,17
  16:19 17:20,22
  19:7 21:14
  22:6 24:1
  27:21 28:9
  39:7 41:9 42:3
  59:16 68:11
  69:1 70:7,12
  71:4 72:20,23
  74:12 75:4,25
  78:19 79:9,23
  81:25 82:2,14
  84:1 85:25
  86:2,22,24
  90:2,7,13
  91:1,17,18
  92:1,2 97:6,13
  98:3 100:10

timeline
  16:22 27:9

times
  47:23 61:8
  76:8,19

title
  14:14 93:7,8

titled
  63:21

today
  4:11 5:12,18
  6:1,4 7:2 9:2
  11:8,15 12:5
  38:8 40:21,22
  43:24 83:16,17
  84:2 89:20
  90:18 97:6

today's

12:1

told
  28:1 35:10,13
  98:12

top
  48:18

topics
  6:5

touch
  12:16 57:2,3
  101:14,15,16

touched
  27:16,25

touching
  99:1

trafficking
  19:17

transcript
  4:1 11:21
  51:8,12 54:14
  65:18 81:9
  94:18 102:16

transcripts
  43:6,21

transferred
  12:25 13:4

transition
  14:18,24 23:23

trial
  55:7 57:17,21
  58:11

trials
  16:3

true
  34:16 43:25
  44:6 45:13
  52:3 99:4,20
  100:6,7

truthful

DAVIS   RUNDE
February 27, 2023

46:16,21,24

**turn**
24:13 44:8
51:2,3

**type**
22:22 27:17
71:7

**types**
16:8,13,23
17:17 65:13
73:6 74:12
93:20 101:22

**typically**
22:6 48:12

---

**U**

**ultimately**
9:6 73:25
75:20 82:18,19
95:5

**umbrella**
73:7

**unable**
5:13

**uncommon**
77:23

**undergraduate**
12:25

**understand**
16:4 29:15
31:22 36:19
41:6 49:2 53:8
60:21 64:24
68:10,15 71:15
72:10

**understanding**
5:17 9:23,25
10:7 55:2
62:23 76:18
80:4 82:16

85:1,4

**Understood**
66:21

**undertake**
18:13

**undertakes**
18:1

**United**
7:16

**University**
12:23,24 13:1,
3,5,8

**unmute**
96:25

**unusual**
76:1,6,7 79:24

**uploaded**
63:19

**utilized**
35:3

---

**V**

**variety**
16:5

**verbal**
28:6

**verbally**
33:20

**verbatim**
81:9

**victim**
65:20

**victims**
73:15

**video**
4:17 18:24

**videos**

63:4,10,12

**violation**
82:14

**violations**
15:25

**violence**
70:15

**volunteered**
85:18 86:7

---

**W**

**waiver**
7:23 8:7 67:4

**walk**
27:9 29:5

**wanted**
8:17 22:21
27:16 28:22
79:8 88:5

**warrant**
21:21,23,25
34:20 35:2,3,7
77:6,9,12

**warrants**
77:4,15

**water**
6:8

**Wausau**
4:21 6:19 93:9

**Wednesday**
79:13

**week**
77:24

**weeks**
27:22

**Weld**
12:13 22:14,
20,23 23:1,5,

10,15,18

**Western**
7:17

**Wetzsteon**
12:8 68:19
69:2,24 87:12

**Wetzsteon's**
87:23

**wide**
21:10

**wife**
6:22,24 12:13

**Wisconsin**
4:22 5:19,21
6:19 7:18 8:7,
22 9:7 13:5,8
15:23 32:3
45:17 63:24
66:15

**Wisconsin-eau**
12:24

**Wisconsin-
madison**
13:1

**witnessed**
28:3 65:24

**witnesses**
46:24,25 65:25
88:24

**wondering**
16:25 32:1

**word**
31:14

**work**
96:25

**worked**
13:18 71:15

**working**
14:1,12 15:14

DAVIS  RUNDE
February 27, 2023

```
  17:1,9 22:20,
  24 24:18 93:18
```

**works**
```
  17:24
```

**writing**
```
  34:17
```

**written**
```
  5:9 18:21,22
  19:1,2,20
  20:7,8,9,10
  54:21 56:2
  63:11 92:12
```

**wrongful**
```
  10:1,3
```

---

### Y

**year**
```
  12:25 13:4
```

**years**
```
  17:21 53:9
  69:3 70:1 84:2
```

---

### Z

**Zellner**
```
  9:16 10:17,23
  24:8 25:13
  27:4 30:23
  32:22 33:6
  35:14 44:3
  47:10 48:25
  49:20 57:8,24
  60:3,23 61:2,3
  62:7,17 64:11,
  16,18 67:3,6
  82:22 102:5,20
```

**Zibolski**
```
  70:20
```

**Zoom**
```
  4:17
```